# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

KELLY ROARTY                                 :
                                             :
             Plaintiff,                       :
                                             :
       v.                                     :        C.A. No.  06-195 GMS
                                             :
TYCO INTERNATIONAL LTD. GROUP                 :
BUSINESS TRAVEL ACCIDENT                      :
INSURANCE PLAN, an employee                   :
welfare benefit plan, and                     :
LIFE INSURANCE COMPANY OF                     :
NORTH AMERICA, Plan Administrator,            :
                                             :
             Defendants.                      :

## PLAINTIFF'S ANSWERING BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS COUNTS II AND III OF THE COMPLAINT

Richard R. Wier, Jr. (#716)
Daniel W. Scialpi (#4146)
RICHARD R. WIER, JR., P.A.
Two Mill Road, Suite 200
Wilmington, DE 19806
(302)888-3222

Dated: May 30, 2006

## **TABLE OF CONTENTS**

TABLE OF CITATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

NATURE AND STAGE OF PROCEEDINGS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

        Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

I.      PLAINTIFF'S CLAIM AGAINST DEFENDANT LIFE INSURANCE COMPANY OF
        NORTH AMERICA FOR BREACH OF ITS FIDUCIARY DUTIES IS PROPER. . . . . 8

        A.     The relief requested by Plaintiff is equitable in nature . . . . . . . . . . . . . . . . . . . 9

              1.     The Plaintiff may be entitled for equitable restitution as a result of
                     Defendant LINA's breach of its fiduciary duties . . . . . . . . . . . . . . . . . . 9

              2.     As a result of the Defendant LINA's breach of its fiduciary duties
                     this Court may order other equitable relief . . . . . . . . . . . . . . . . . . . . . . 10

        B.     ERISA permits the Plaintiff to bring a claim for the wrongful denial of benefits
              and a separate claim for the breach of a fiduciary duty . . . . . . . . . . . . . . . . . 11

II.     A STATE LAW BREACH OF CONTRACT CLAIM IS PREEMPTED BY ERISA
        ONLY AFTER IT IS JUDICIALLY DETERMINED THAT THE PLAN IS COVERED
        BY ERISA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

UNREPORTED CASES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Attached

# **TABLE OF CITATIONS**

Great-West Life & Annuity Insurance Company v. Knudson, 534 U.S. 204 (U.S. 2002) . . . 9, 10

Harrow v. Prudential Insurance Co. of America, 279 F.3d 244 (3d Cir. 2002) . . . . . . . . . . . . 12

Hunter v. Federal Express Corp., 2006 U.S. App. LEXIS 4259 (3d Cir. 2006) . . . . . . . . . . . . . 8

Hishon v. King & Spalding, 467 U.S. 69 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Jackson v. Chevron Corporation Long-Term Disability Org., Inc., 2006 U.S. Dist. LEXIS 3590

    (D.N.J. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

Manchester v. Rzewnicki, 777 F. Supp. 319 (D. Del. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Minnis v. Baldwin Bros. Inc., 150 Fed. Appx. 118 (3d Cir. 2005) . . . . . . . . . . . . . . . . . . . . . 14

Oatway v. American Int'l Group, Inc., 2002 U.S. Dist. LEXIS 1771 (D. Del. 2002) . . . . . . . . 14

Pinto v. Reliance Standard Life Insurance Company, 214 F.3d 377 (3d Cir. 2000) . . . . . . . . . . 8

Sereboff v. Mid Atlantic Medical Services, Inc., 2006 U.S. LEXIS 3954 (U.S. 2006) . . . . . . 9, 10

Skretvedt v. E.I. duPont de Nemours, 372 F.3d 193 (3d Cir. 2004) . . . . . . . . . . . . . . . . . . . . . 11

Smith v. Sydnor, 184 F.3d 356 (4th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Varity Corporation v. Howe, 516 U.S. 489 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

## NATURE AND STAGE OF PROCEEDINGS

This action was filed on March 23, 2006 by Plaintiff, Kelly Roarty, against Defendants Tyco International Limited Group Business Travel Accident Insurance Plan ["Tcyo Plan"] and Life Insurance Company of North America [LINA].  (D.I. # 1).  In her Complaint, Plaintiff asserts three causes of action as a result of her husband's accidental death on August 8, 2004 and the Defendants' determination to deny insurance benefits.  Count I alleges that Defendants have wrongly denied her benefits under the Tyco Plan, which is a plan protected by the Employee Retirement Income Security Act of 1974, as amended (hereinafter "ERISA") .  Count II alleges that Defendant LINA breached its fiduciary duties owed to Plaintiff under ERISA.  Count III alleges a state law breach of contract claim against both defendants.

On May 10, 2006, Defendants filed an Answer to the Complaint to Count I (D.I. #4) and a Motion to Dismiss Counts II and III of the Complaint, along with a Memorandum of Law in support of their motion.  (D.I. 5 & 6).

This is Plaintiff's Answering Brief in Opposition to Defendants' Motion to Dismiss.

## **SUMMARY OF ARGUMENT**

1.  Count II states a claim upon which relief may be granted since ERISA permits a claim for equitable relief by a plan beneficiary under section 1132(a)(3) for the breach of a fiduciary duty.

2.  Count II states a claim upon which relief may be granted since ERISA permits claims for the wrongful denial of benefits and claims for a breach of fiduciary duties.

3.  Count III states a claim upon which relief may be granted because a state law breach of contract claim can only be preempted by ERISA when it is judicially determined that the plan is covered by ERISA and such determination has not been made.

## STATEMENT OF FACTS

Tyco International Ltd. (Tyco) is an international company that provides, *inter alia*, electronic security and fire protection solutions in over 100 countries.  Its products and services are used towards safeguarding firefighters, preventing fires, deterring thefts and protecting people and property.  Scott Instruments, a subdivision of Tyco, is one of the largest manufacturers of fixed and portable toxic and combustible gas, heat, and flame detectors in the world.  (Complaint ¶ 6).

In early 2004, Tyco contracted with a production plant in Pittsburgh, Pennsylvania (the Bacharach Plant) for production of sensor equipment.  The sensors were to be delivered to Tyco on April 20, 2004 so that it could distribute them to its customers.  (Complaint ¶ 7).

In late June 2004, one of Tyco's customers began complaining that the senors that had been ordered from the Bacharach Plant were overdue.  Although Tyco made repeated attempts, it was unable to obtain satisfactory answers from the Bacharach Plant about when the sensors would be available. In July 2004, the situation was brought to the attention of Bob Bierzynski, who was Mr. Roarty's supervisor, and who requested that Mr. Roarty attempt to rectify the problem. (Complaint ¶ 8).

By late July 2004, the delay was causing complaints to escalate, and other customers of Tyco, including the City of New York, began threatening to stop using Tyco's services. (Complaint ¶ 9).

On July 30, 2004, Mr. Roarty advised by e-mail, his supervisor and others in senior management that he would "go into the Bacharach Plant and find out why the sensor is taking so long to build."  Mr. Roarty made arrangements to visit the Bacharach Plant the following week

3

since he was beginning a vacation on July 30, 2004 and was going to be in Pittsburgh. (Complaint ¶ 10).

In order to visit the Bacharach Plant, Mr. Roarty altered his vacation plans. Originally, Mr. Roarty was going to drive with his wife and family in one car and leave sometime during the week of August 2, 2004. Instead, Mr. Roarty drove a separate car so that he could spend as much time as necessary at the Bacharach Plant dealing with this important business problem. He departed earlier than planned, departing for Pittsburgh on August 2, 2004 so he would have time to deal with the issues at the Bacharach Plant. Since he was traveling on business, Mr. Roarty brought with him his laptop, briefcase and cell phone. (Complaint ¶ 11).

Mr. Roarty arranged a meeting at the Bacharach Plant for August 3, 2004. This meeting was scheduled for himself, another Tyco employee and the Regional Manager for Scott Instruments, and two members of management at the Bacharach Plant, in order to discuss delivery and production of the sensors. While Mr. Roarty was driving to Pittsburgh, the meeting was rescheduled for August 5, 2004. (Complaint ¶ 12).

After Mr. Roarty arrived in Pittsburgh, an agreement was reached between Tyco and the Bacharach Plant, on August 4, 2004, on production dates, so the meeting was cancelled and Mr. Roarty was advised accordingly. Mr. Roarty, however, continued to make business phone calls. (Complaint ¶ 13).

Mr. Roarty remained in Pittsburgh and continued to conduct business on behalf of Tyco. After attending a wedding, which was on August 7, 2004, he began the journey home to Newark, Delaware on August 8, 2004. (Complaint ¶ 14).

On August 8, 2004, in the Commonwealth of Pennsylvania at approximately 3:48 p.m,

4

while traveling home, the driver of a small sport truck failed to stop for a stop sign and collided

with Mr. Roarty's vehicle, forcing Mr. Roarty's vehicle about seventy feet from the point of

impact. Mr. Roarty was pronounced dead at the scene of the collision. (Complaint ¶ 15).

## THE ADMINISTRATIVE PROCESS

Defendant Tyco International Ltd. Business Travel Accident Insurance Plan ("The Tyco

Plan") is an employee welfare benefit plan within the meaning of ERISA, which is provided by

Tyco.   As an employee of Tyco, Mr. Roarty was a participant in the Plan, which provided for a

$500,000 accidental death benefit for its employees who die accidentally while traveling on

business. (Complaint ¶ 4).

Defendant LINA is the Plan Administrator of the Plan, and the underwriting company for

the Plan. Claims under the Plan are administered through Cigna Group Insurance. Cigna Group

Insurance claim services are provided exclusively by underwriting subsidiaries, *inter alia*, LINA.

(Complaint ¶ 5). Defendants admit that LINA is the underwriting company of the Plan and the

Plan's Claims Fiduciary, and further admits that its claim services are provided exclusively

through its underwriting subsidiaries, including LINA. (Answer ¶ 5).

On September 3, 2004, as the named primary beneficiary in the Tyco Plan , Mrs. Roarty

filed a claim for benefits, and provided the necessary information and documentation, which

included, a certified copy of Mr. Roarty's Death Certificate, the police crash report and a

newspaper article reporting the crash and death. (Complaint ¶ 16).

On November 18, 2004, Felicia Johnson, the Life Claims Coordinator for Tyco, sent Mrs.

Roarty's claim to Cigna Group Insurance, along with the documentation provided by Mrs.

Roarty. (Complaint ¶ 17).

On December 17, 2004, Cigna wrongfully denied Mrs. Roarty's claim alleging that Mr. Roarty was not on an authorized business trip at the time of his death. Cigna stated that, Nicole Gibian, an employee in the Human Resources Department of Tyco, in Boca Raton, Florida, provided it with a brief letter stating "Please use this letter as clarification that Mr. Roarty was NOT on business travel at the time of the accident that caused his death." Cigna did no further investigation. (Complaint ¶ 18).

On February 12, 2005, Mrs. Roarty appealed Cigna's decision, and provided documentation, including Mr. Roarty's July 30, 2004 e-mail, that established that his trip to Pittsburgh was an authorized business trip. (Complaint ¶ 19).

After receiving Mrs. Roarty's appeal, Cigna attempted to contact Nicole Gibian, the HR representative in Tyco's Florida office, who originally had stated that Mr. Roarty was not on an authorized business trip. Ms. Gibian, however, was no longer employed with Tyco. Cigna, therefore, attempted "to reach another representative at the group to verify that they are comfortable with their original statement." (Complaint ¶ 20).

On March 11, 2005, Cigna received a phone call from Felicia Johnson, another employee in the Human Resources Department of Tyco, in Boca Raton, Florida. Ms. Johnson advised Cigna that Mr. Roarty was not on business travel at the time of his death, but she would have Mr. Roarty's office, Tyco, fax a statement confirming that he was on a personal vacation at the time of the accident and that Cigna would receive it the following week. (Complaint ¶ 20).

Cigna, however, never received any such statement. (Complaint ¶ 20).

On March 24, 2005, without any further investigation, and solely relying upon the Florida HR employee's incorrect and uncorroborated claim, LINA, acting through Cigna denied Mrs.

Roarty's appeal.  (Complaint ¶ 21).

## ARGUMENT

### STANDARD OF REVIEW

The standard under Rule 12(b)(6) is "whether, taking all factual allegations in the complaint as true, the complaint states a claim which would entitle the plaintiff to relief." Manchester v. Rzewnicki, 777 F. Supp. 319, 323 (D. Del. 1991). "The facts alleged in the complaint, and all reasonable factual inferences drawn from those facts, are construed in the plaintiff's favor." Id. Only if it appears beyond doubt that no relief could be granted may a court dismiss the complaint. See Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).

**I.    PLAINTIFF'S CLAIM AGAINST DEFENDANT LIFE INSURANCE COMPANY OF NORTH AMERICA FOR BREACH OF ITS FIDUCIARY DUTIES IS PROPER.**

Count II of the Complaint alleges that Defendant Life Insurance Company of North America, which is the Tyco Plan's fiduciary, breached the fiduciary duties it owed to Plaintiff, a beneficiary of the Tyco Plan, under the Employee Retirement Income Security Act by, inter alia, "summarily denying her claim without any full or adequate or proper evaluation or investigation and as a result of its inherent conflict of interest.[1]" (Complaint ¶ 28).

Section 502(a)(3) of the Employee Retirement Income Security Act of 1974, as amended, provides that a "civil action may be brought ... by a participant, beneficiary, or fiduciary ... (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan." 29 U.S.C. § 1132(a).

---

[1] The Third Circuit has held that an insurance company that both funds and administers an ERISA plan has an inherent conflict of interest. See Hunter v. Federal Express Corp., 2006 U.S. App. LEXIS 4259, *14 (3d Cir. 2006); Pinto v. Reliance Standard Life Insurance Company, 214 F.3d 377 (3d Cir. 2000).

In her Complaint, Plaintiff prays "that judgment be entered against the Defendants, jointly and severally, and that the Court declare, and she be specifically awarded, her entitlement to the benefits under the Plan, damages for violation of ERISA, pre and post judgment interest, costs and attorneys' fees, and for such other and further relief, legal or equitable, as may be just and appropriate". (Complaint, Wherefore clause).

Defendants argue that Plaintiff's claim for a breach of fiduciary duties under Count II must be dismissed in its entirety because (A) the relief requested by Plaintiff is not equitable; and (B) Plaintiff has already asserted a claim under Section 502(a)(1) for the wrongful denial of benefits.

**A.      The relief requested by Plaintiff is equitable in nature.**

**1.      The Plaintiff is entitled to equitable relief for restitution as a result of Defendant LINA's breach of its fiduciary duties.**

In their Opening Brief, Defendants, relying in part on <u>Great-West Life & Annuity Insurance Company v. Knudson</u>, 534 U.S. 204 (U.S. 2002), argue that a plaintiff is not permitted to seek equitable relief under § 502(a)(3)(B) where the relief sought equates to the payment of money. (Defendants' Brief at 4).

Two weeks ago, after Defendants filed their motion to dismiss, the United States Supreme Court, in <u>Sereboff v. Mid Atlantic Medical Services, Inc.</u>, 2006 U.S. LEXIS 3954 (U.S. 2006), expressly rejected Defendants' argument and clarified its holding in <u>Great-West</u>.

In <u>Great-West Life & Annuity Insurance Company v. Knudson</u>, 534 U.S. 204 (U.S. 2002), the plaintiff sought restitution of benefits paid after the defendant recovered money from a tort action against a third party. In considering whether § 502(a)(3)(B) authorized such relief, the

court asked itself whether the restitutionary remedy the plaintiff sought would have been equitable in "the days of the divided bench." In Great-West, the Court found it would not have been equitable solely because the funds Great-West sought were not in the defendant's possession, but rather, were held in trust under California law. See Sereboff v. Mid Atlantic Medical Services, Inc., 2006 U.S. LEXIS 3954, *3 (U.S. 2006)(citing Great-West Life & Annuity Insurance Company v. Knudson, 534 U.S. 204 (U.S. 2002)).

In Sereboff v. Mid Atlantic Medical Services, Inc., 2006 U.S. LEXIS 3954, *14 (U.S. 2006) the Court held that "ERISA provides for equitable remedies to enforce plan terms, so the fact that the action involves a breach of contract can hardly be enough to prove relief is not equitable; that would make § 502(a)(3)(B)(ii) an empty promise. This Court in Knudson did not reject Great-West's suit out of hand because it alleged a breach of contract and sought money, but because Great-West did not seek to recover a particular fund from the defendant." See id at *14. In Sereboff, unlike those found in Great-West, the funds that were sought were in the defendant's possession, and not held in trust; therefore, the claim for equitable restitution was held to be permissible. See id. at *3-4.

In this case, as in Sereboff, any funds sought by Plaintiff are in the Defendants' possession and, therefore, equitable restitution is a remedy available under §502(a) (3) (B). Accordingly, defendants' to dismiss should be denied.

### 2.  As a result of the Defendant LINA's breach of its fiduciary duties this Court may order other equitable relief

Plaintiff's request for "such other and further relief, legal or equitable, as may be just and appropriate" entitles her to recover other equitable relief that may be appropriate for Defendant's

breach of its fiduciary duties in addition to equitable restitution, i.e., the removal of the current

fiduciary, specific performance of the plan, an accounting for profits or a constructive trust.  See

Skretvedt v. E.I. duPont de Nemours, 372 F.3d 193 (3d Cir. 2004).

> **B.    ERISA permits the Plaintiff to bring a claim for the wrongful denial of benefits and a separate claim for the breach of a fiduciary duty.**

Defendants argue that a plaintiff may not seek equitable relief under § 502(a)(3) when she

also seeks legal relief under § 502(a)(1)(B).  (Defendants' Brief at 3).  Defendants wrongly cite to

Varity Corporation v. Howe, 516 U.S. 489 (1996) in support of their argument.   In Varity, an

amici curiae brief filed for the Chamber of Commerce of the United States argued that

> what will happen ... if a beneficiary can package his or her 'denial
> of benefits' claim as a claim for 'breach of fiduciary duty?'
> Wouldn't a court ... then have to forgo deference and hold the
> administrator to the 'rigid level of conduct' expected of
> fiduciaries?  And, as a consequence, would there not then be two
> 'incompatible legal standards for courts hearing benefit claim
> disputes' depending upon whether the beneficiary claimed simply
> 'denial of benefits,' or a virtually identical 'breach of fiduciary
> duty?

The Supreme Court rejected the argument of the amici.  See id. at 514-515.  In their brief,

Defendants cite to the language on page 515 of Varity, ("Thus, we should expect that where

Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no

need for further equitable relief, in which case such relief normally would not be appropriate"),

which is inapplicable to this case since the only section that permits a claim for a breach of

fiduciary duty that Plaintiff may file suit under is § 502(a)(3).  See Varity, 516 U.S. at 515

(permitting a claim under§ 502(a)(3) when there is no other remedy.).  Count I and II are not just

alternative claims.  Count II of the Complaint, which asserts a claim for breach of fiduciary

duties, addresses the wrongful actions, or non-actions, taken by the Defendant during its evaluation and investigation of Plaintiff's claim, while Count I of the Complaint only addresses the Defendant's decision itself. Regardless of whether Defendants' decision that Mr. Roarty was not on an authorized business trip at the time of his death is ultimately correct or incorrect, Plaintiff was entitled to a full, adequate and proper evaluation and investigation, which was not motivated by a conflict of interest.

Defendants' citation to Harrow v. Prudential Insurance Co. of America, 279 F.3d 244 (3d Cir. 2002) is misleading. In their brief, Defendants state that "the court found that the plaintiff's claim in that Harrow was simply based upon an allegation of a wrongful denial of benefit, which is properly brought as a claim pursuant to ERISA § 502(a)(1)(B), not as a claim for breach of fiduciary duty." (Opening Brief at 4). In Harrow, the plaintiffs failed to exhaust their administrative remedies before filing suit and attempted to circumvent the exhaustion requirement by pleading their claim for benefits as a breach of fiduciary duty claim. See id. The Third Circuit held that the "plaintiff is actually challenging a denial of benefits, and not conduct amounting to a statutory breach of fiduciary duty. Unlike the plaintiffs in Smith [v. Sydnor, 184 F.3d 356 (4th Cir. 1999)], Mrs. Harrow does not allege facts that, if proven, establish a breach of fiduciary duty independent of the denial of benefits." Harrow, 279 F.3d at 254. Contrary to Harrow, in this case, like in the case of in Smith v. Sydnor, 184 F.3d 356 (4th Cir. 1999), Plaintiff is asserting a claim for independent breaches of fiduciary duties.

Defendants attempted, but failed, to distinguish this case from Jackson v. Chevron Corporation Long-Term Disability Org., Inc., 2006 U.S. Dist. LEXIS 3590 (D.N.J. 2006) since the plaintiff did not specifically seek legal damages under her claim for breach of a fiduciary

duty. (Opening Brief at 7). In <u>Jackson</u>, however, the plaintiff did file a claim for monetary

benefits under § 1132(a)(1)(B) in her third count, and also alleged that Defendants breached their

fiduciary duties under ERISA in her fourth count. The plaintiff sought monetary damages and

"such other and further relief under ERISA as this Court may deem appropriate under the

circumstances." <u>See id</u>. at *8. <u>See id</u>. at *6. The District Court of New Jersey stated that

> The Supreme Court has held that a beneficiary who is denied
> benefits under an ERISA plan may seek equitable restitution under
> § 1132(a)(3)(B) for a breach of fiduciary duty. <u>See</u> <u>Great-West</u>
> <u>Life & Annuity Ins. v. Knudson</u>, 534 U.S. 204, 213, 122 S. Ct.
> 708, 151 L.Ed. 2d 635 (2002)(noting that equitable restitution is
> available to a plaintiff under § 1132(a)(3)(B)); <u>Michaels v.</u>
> <u>Breedlove</u>, 2004 U.S. App. LEXIS 25165, at *5-6 (3d Cir.
> 2004)(same); <u>Fox v. Herzog</u>, 2005 U.S. Dist. LEXIS 36414, *9
> (D.N.J. 2005)(same).

In that case, Defendants sought to dismiss the plaintiff's claims, but the District Court of New

Jersey permitted the plaintiff to proceed on both claims. <u>See id</u>. Similarly, in this case, as set

forth above, there is no reason that Plaintiff cannot proceed with her separate causes of action

against the Defendants.

II.    **A STATE LAW BREACH OF CONTRACT CLAIM IS PREEMPTED BY ERISA ONLY AFTER IT IS JUDICIALLY DETERMINED THAT THE PLAN IS COVERED BY ERISA.**

Count III of the Complaint alleges a breach of contract by Defendants under state common law.  Defendants argue that a breach of contract claim is preempted by ERISA.  (Defendants' Brief at 7).  Plaintiff does not dispute, and asserts, that ERISA preempts state law.  ERISA defines an "employee welfare benefit plan" as

> Any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care, or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services or (B) any benefit described in section 186(c) of this title (other than pensions on retirement or death, and insurance to provide such pensions).  29 U.S.C. § 1002(1).

ERISA applies to "any employee benefit plan if it is established or maintained...by any employer engaged in commerce." 29 U.S.C. § 1002(2)(A).  "Whether a plan exists within the meaning of ERISA is question of fact, to be answered in light of all the surrounding facts and circumstances and from the point of view of a reasonable person." Minnis v. Baldwin Bros. Inc., 150 Fed. Appx. 118, 119 (3d Cir. 2005).

In order for there to be preemption of Plaintiff's breach of contract claim, the Court must first determine whether an employer's plan is, in fact, an ERISA employee welfare benefit plan.  See Oatway v. American Int'l Group, Inc., 2002 U.S. Dist. LEXIS 1771, *7 (D. Del. 2002).

Therefore, until this Court judicially determines that the Tyco Plan is covered by ERISA,

14

her state law claim cannot be preempted.

## CONCLUSION

For the reasons stated above, and the facts and authorities that support those reasons, Plaintiff respectfully requests that Defendants' Motion to Dismiss be denied.

Respectfully submitted,

**RICHARD R. WIER, JR., P.A.**


    /s/ Richard R. Wier, Jr.
Richard R. Wier, Jr. (#716)
Daniel W. Scialpi (#4146)
Two Mill Road, Suite 200
Wilmington, DE 19806
(302)888-3222

16

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

KELLY ROARTY                                :
                                            :
          Plaintiff,                        :
                                            :
      v.                                    :      C.A. No.  06-195 GMS
                                            :
TYCO INTERNATIONAL LTD. GROUP               :
BUSINESS TRAVEL ACCIDENT                    :
INSURANCE PLAN, an employee                 :
welfare benefit plan, and                   :
LIFE INSURANCE COMPANY OF                   :
NORTH AMERICA, Plan Administrator,          :
                                            :
          Defendants.                       :

### CERTIFICATE OF SERVICE

I certify that on this 30 th day of May, 2006 that I caused the attached to be filed with the

Clerk of the Court by CM/ECF, which will send a copy to:

        Jeffrey K. Martin, Esq.
        1509 Gilpin Ave.
        Wilmington, DE 19806

and that a copy was sent to:

        Mark Stephenson, Esq.
        Nelson Levine de Luca.& Horst LLC
        Four Sentry Parkway, Suite 300
        Blue Bell, PA 19422

                              **RICHARD R. WIER, JR., P.A.**


                                  ___/s/ Daniel W. Scialpi_____
                                  Richard R. Wier, Jr. (#716)
                                  Daniel W. Scialpi (#4146)
                                  Two Mill Road, Suite 200
                                  Wilmington, DE 19806
                                  (302)888-3222

17

LEXSEE 2006 U.S. DIST. LEXIS 3590

**TRACY N. JACKSON, Plaintiff, v. CHEVRON CORPORATION LONG-TERM DISABILITY ORGANIZATION, INC., a Delaware Corporation, CHEVRON CORPORATION, a Delaware Corporation, and CONNECTICUT GENERAL LIFE INSURANCE COMPANY AND ITS CIGNA GROUP INSURANCE, John Does 1-10, and Mary Does 1-10, Defendants.**

**05-CV-3590 (WJM)**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY**

*2006 U.S. Dist. LEXIS 3590*

**January 30, 2006, Decided**

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff employee filed an action under the Employee Retirement Income Security Act (ERISA), *29 U.S.C.S. § 1001* et seq., alleging various violations by defendants, an ERISA plan and its administrators (the plan), with respect to the termination of her long term disability benefits. The plan filed a motion to dismiss.

**OVERVIEW:** For approximately five years, the employee had been considered disabled and entitled to long-term disability benefits by the plan. She was then notified that her benefits were being terminated because she no longer fell within the plan's definition of total disability. The employee's complaint alleged that the plan breached fiduciary duties and that she was due damages and benefits. The court agreed with the plan that the employee could not claim for damages under *29 U.S.C.S. § 1132(a)(2)*, and therefore dismissed that claim. However, the employee could claim equitable restitution under Part IV of Title I of ERISA, containing § 1132(a)(3)(B), for the plan's breach of its fiduciary duty. The court found that it was premature to determine whether any of the claims were barred by the applicable statute of limitations. Finally, the plan contended that the alleged violations of *29 U.S.C.S. §§ 1024 and 1025* could not proceed because the complaint made no reference to the employee making a written request for certain information from the plan. The court declined to dismiss on those grounds, noting that to do so would elevate form over substance.

**OUTCOME:** The court granted the plan's motion to dismiss the employee's claim for damages, and denied the plan's motion to dismiss as to all other portions of the employee's complaint.

**LexisNexis(R) Headnotes**

*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Failures to State Claims*
[HN1] In deciding a motion to dismiss under *Fed. R. Civ. P. 12(b)(6)*, all allegations in the complaint must be taken as true and viewed in the light most favorable to the plaintiff. In evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court may consider only the complaint, exhibits attached to the complaint, matters of public record, and undisputedly authentic documents if the plaintiff's claims are based upon those documents. If, after viewing the allegations in the complaint in the light most favorable to the plaintiff, it appears beyond doubt that no relief could be granted under any set of facts which could prove consistent with the allegations, a court may dismiss a complaint for failure to state a claim.

*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies > Causes of Action > Breach of Fiduciary Duty*
[HN2] It is well-established that where a plaintiff seeks to recover benefits allegedly owed to them in their individual capacities, their action is not authorized under *29 U.S.C.S. § 1132(a)(2)*.

*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies > Causes of Action > Breach of Fiduciary Duty*
[HN3] See *29 U.S.C.S. § 1132(a)(2)*.

*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies > Causes of Action > Breach of Fiduciary Duty*

Case 1:06-cv-00195-GMS    Document 8-2    Filed 05/30/2006    Page 2 of 19

Page 2
2006 U.S. Dist. LEXIS 3590, *

[HN4] See *29 U.S.C.S. § 1109(a)*.

*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies > Causes of Action > General Overview*
*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies > Equitable Relief > Restitution*
[HN5] A beneficiary who is denied benefits under a plan governed by the Employee Retirement Income Security Act (ERISA), *29 U.S.C.S. § 1001* et seq., may seek equitable restitution under *29 U.S.C.S. § 1132(a)(3)(B)* for a breach of fiduciary duty.

*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies > Causes of Action > General Overview*
*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies > Equitable Relief > Restitution*
[HN6] See *29 U.S.C.S. § 1132(a)(3)(B)*.

*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies > Statutes of Limitations*
[HN7] Under the Employee Retirement Income Security Act (ERISA), a claim for a breach of fiduciary duty must be brought: (1) six years after the date of the last action which constituted a part of the breach or violation, or (2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation. *29 U.S.C.S. § 1113(1)–(2)*.

*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies > Statutes of Limitations*
[HN8] *29 U.S.C.S. § 1113* sets a high standard for barring claims against fiduciaries prior to the expiration of the six year limitations period and thus courts have interpreted the actual knowledge requirement stringently. A two–prong test is used to determine whether a plaintiff possesses actual knowledge under § 1113(2), requiring a showing that plaintiffs knew not only of the events that occurred which constituted the breach or violation but also that those events supported a breach of fiduciary duty or violation under the Employee Retirement Income Security Act (ERISA). Because the statute of limitations is an affirmative defense, the burden of proving that the statute of limitations bars claims rests with defendants.

*Civil Procedure > Federal & State Interrelationships > Choice of Law > General Overview*
[HN9] Federal courts have relied on the Restatement (Second) of Conflict of Laws (the Restatement) as a source of federal common law choice of law principles. Section 142(2) of the Restatement provides that the forum will apply its own statute of limitations permitting a claim unless: (a) maintenance of the claim would serve no substantial interest of the forum; and (b) the claim would be barred under the statute of limitations of a state having a more significant relationship to the parties and the occurrence. When determining whether one state has a more significant relationship to the parties and the occurrence than another, a court must review: (1) the place of contracting; (2) the place of negotiation of the contract; (3) the place of performance; (4) the location of the subject matter of the contract; and (5) the domicile, residence, nationality, place of incorporation and place of business of the parties.

*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Affirmative Defenses*
*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Failures to State Claims*
[HN10] A court may grant a *Fed. R. Civ. P. 12(b)(6)* motion based on statute of limitations grounds only if the complaint on its face shows noncompliance with the limitations period.

*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies > General Overview*
[HN11] Coverage under the Employee Retirement Income Security Act (ERISA) is construed liberally to provide the maximum degree of protection to working men and women covered by private retirement programs.

**COUNSEL:** [*1] Robert Thomas Pickett, South Orange, NJ, for Plaintiff.

Jeffrey S. Leonard, Budd Larmer, Short Hill, NJ; Frederick A. Brodie, Pillsbury Winthrop Shaw Pittman LLP, New York, NY, for Defendants.

**JUDGES:** William J. Martini, U.S.D.J.

**OPINIONBY:** William J. Martini

**OPINION:**

   **OPINION**

**MARTINI, U.S.D.J.:**

   This matter comes before the Court on Defendants motion to dismiss Plaintiff's Amended Complaint pursuant to *Fed. R. Civ. P. 12(b)(6)*. There was no oral argument. *Fed. R. Civ. P. 78*. For the following reasons, Defendants' motion to dismiss is **GRANTED** as to Count

I, but **DENIED** as to Counts II–V.

## I. Background

Plaintiff Tracy N. Jackson ("Jackson") worked as a refinery process technician for Defendant Chevron Corporation from October 29, 1990 to February 24, 1994. (Amend. Compl. P 6). As a full-time employee, Jackson was entitled to long-term disability benefits under the Chevron Corporation Long-Term Disability Plan (the "LTD Plan"). (Amend. Compl. P 10). On or about March 28, 1994, Defendants determined that Jackson was disabled and entitled to long-term disability benefits. n1 (Amend. **[*2]** Compl. P 12).

> n1 The "Defendants" include Chevron Corporation, Chevron Corporation Long-Term Disability Plan, Inc., Connecticut General Life Insurance Company, CIGNA Group Insurance and various unnamed individuals and corporate entities.

On July 19, 1999, Defendants notified Jackson that she no longer fell within the definition of "total disability" under the LTD Plan and, therefore, was not entitled to benefits beyond July 22, 1999. (Amend. Compl. P 13). Jackson appealed this decision. (Amend. Compl. P 13). After Defendants denied her appeal, she filed suit in this Court on July 19, 2005. (*See* Amend. Compl. P 16).

Jackson's Amended Complaint contains three counts. n2 Count I alleges that Defendants breached their ERISA fiduciary duties under *29 U.S.C. § 1132(a)(2)* and requests $75,000.00 in damages. (Amend. Compl. PP 20, 21). Count II alleges a claim for ERISA benefits under *29 U.S.C. §§ 1132(a)(1)(B), 1132(a)(3)*. (Amend. Compl. PP 22). Count III also alleges **[*3]** a claim for ERISA benefits under *§ 1132(a)(1)(B)*. (*See* Amend. Compl. PP 28–32). Count IV seeks unspecified damages for Defendants breach of their fiduciary duties under "Part 4 of Title I of ERISA," *29 U.S.C. §§ 1101–1114*. (*See* Amend. Compl. PP 34–35). Finally, Count V alleges that Defendants violated *29 U.S.C. §§ 1024(b), 1025(b)* by failing to provide claims information and materials requested by Plaintiff on a timely basis. (Amend. Compl. P 37).

> n2 Jackson amended her complaint on November 18, 2005.

Defendants filed a motion to dismiss Jackson's Amended Complaint. In their motion, Defendants argue that: (1) Counts I and IV must be dismissed because an individual plaintiff cannot obtain monetary damages based on an alleged breach of fiduciary duty under ERISA; (2) Counts I and IV are untimely; (3) Counts II and III are

also untimely; and (4) Count V fails to state a claim upon which relief can be granted.

## II. Standard of Review

[HN1] In deciding a **[*4]** motion to dismiss under *Rule 12(b)(6)*, all allegations in the complaint must be taken as true and viewed in the light most favorable to the plaintiff. *Warth v. Seldin, 422 U.S. 490, 501, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975)*; *Trump Hotels & Casino Resorts, Inc., v. Mirage Resorts Inc., 140 F.3d 478, 483 (3d Cir. 1998)*. In evaluating a *Rule 12(b)(6)* motion to dismiss for failure to state a claim, a court may consider only the complaint, exhibits attached to the complaint, matters of public record, and undisputedly authentic documents if the plaintiff's claims are based upon those documents. *Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993)*. If, after viewing the allegations in the complaint in the light most favorable to the plaintiff, it appears beyond doubt that no relief could be granted "under any set of facts which could prove consistent with the allegations," a court may dismiss a complaint for failure to state a claim. *Hishon v. King & Spalding, 467 U.S. 69, 73, 104 S. Ct. 2229, 81 L. Ed. 2d 59 (1984)*; *Zynn v. O'Donnell, 688 F.2d 940, 941 (3d Cir. 1982)*.

## III. Discussion

### A. Count I Must be Dismissed Because **[*5]** an Individual Plaintiff Cannot State a Claim for Monetary Damages Under *§ 1132(a)(2)*.

Defendants argue that Count I must be dismissed because an individual plaintiff cannot state a claim for monetary damages under *§ 1132(a)(2)* of ERISA. n3 Defendants are correct. [HN2] It is well-established that where a plaintiff seeks to recover benefits allegedly owed to them in their individual capacities, their action is not authorized under *§ 1132(a)(2)*. *See Mass. Mut. Life Ins. Co. v. Russell, 473 U.S. 134, 144, 105 S. Ct. 3085, 87 L. Ed. 2d 96 (1985)* ("The entire text of *[§ 1109]* persuades us that Congress did not intend that section to authorize any relief *except for the plan itself*") (emphasis added); *see also Hozier v. Midwest Fasteners Inc., 908 F.2d 1155, 1162 n.7 (3d Cir. 1990)* ("Because plaintiffs here seek to recover benefits allegedly owed to them in their individual capacities, their action is plainly not authorized by either *§ [1109]* or *§ [1132](a)(2)*."). Accordingly, Count I must be dismissed.

> n3 *Section 1132(a)(2)* provides:
>
> > [HN3] A civil action may be brought... by the Secretary, or by a participant, beneficiary or fiduciary for appropri-

Case 1:06-cv-00195-GMS    Document 8-2    Filed 05/30/2006    Page 4 of 19

Page 4
2006 U.S. Dist. LEXIS 3590, *5

ate relief under *section 1109* of this title.

*29 U.S.C. § 1132(a)(2). Section 1109* provides, in relevant part:

> [HN4] Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach...

*29 U.S.C. § 1109(a).*

[*6]

**B. Count IV Must Not be Dismissed Because Individual Relief May be Available Under *29 U.S.C. § 1132(a)(3).***

Defendants argue that Count IV must also be dismissed because it constitutes an individual claim for damages based upon an alleged breach of fiduciary duty under *§ 1132(a)(2)*. Count IV, however, does not specifically rely on *§ 1132(a)(2)*. Instead, it alleges that Defendants breached their fiduciary duties under "Part 4 of Title 1 of ERISA" (*see* Amend. Compl. P 34), which contains all of the provisions regarding fiduciary duties. *See 29 U.S.C. §§ 1101-1114.* Furthermore, unlike Count I, Count IV does not request any monetary damages.

The Supreme Court has held that [HN5] a beneficiary who is denied benefits under an ERISA plan may seek equitable restitution under *§ 1132(a)(3)(B)* for a breach of fiduciary duty. n4 *See Great-West Life & Annuity Ins. v. Knudson, 534 U.S. 204, 213, 122 S. Ct. 708, 151 L. Ed. 2d 635 (2002)* (noting that equitable restitution is available to a plaintiff under *§ 1132(a)(3)(B)*); *Michaels v. Breedlove, No. 03-4891, 2004 U.S. App. LEXIS 25165, at \*5-6 (3d Cir. Dec. 8, 2004)* (same); *Fox v. Herzog, No. 01-1827, 2005 U.S. Dist. LEXIS 36414,* [*7] *\*9 (D.N.J. Dec. 27, 2005)* (same). Since Count IV seeks relief under Part IV of Title I of ERISA, which contains *§ 1132(a)(3)(B)*, we cannot hold that Plaintiff impermissibly requested individual relief under *§ 1132(a)(2)*. n5 Accordingly, since Defendants' may be entitled to relief under *§ 1132(a)(3)(B)*, we will not dismiss Count IV for failure to state a claim.

n4 *Section 1132(a)(3)(B)* provides:

> [HN6] A civil action may be brought

... by a participant, beneficiary, or fiduciary... to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

*29 U.S.C. § 1132(a)(3)(B).*

n5 Furthermore, that Jackson's complaint does not expressly request "equitable restitution" is not fatal to her claim. Her Amended Complaint specifically requests "such other and further relief under ERISA as this Court may deem appropriate under the circumstances (*See* Amend. Compl. P 37 *et seq.*)." *See Fed. R. Civ. P. 8(f)* (mandating construction of pleadings to do "substantial justice")

[*8]

**C. Defendants' Motion to Dismiss Counts I and IV as Barred Under the Appropriate Statute of Limitations is Also Denied.**

Defendants also moved to dismiss Counts I and IV as untimely. The statute of limitations for a breach of fiduciary duty claim is found in *29 U.S.C. § 1113*. [HN7] Under this statute, a claim for a breach of fiduciary duty must be brought:

> (1) six years after ... the date of the last action which constituted a part of the breach or violation, ... [or]

> (2) three years after the earliest date on which the plaintiff had *actual knowledge* of the breach or violation...

*29 U.S.C. § 1113(1)–(2)* (emphasis added). Defendants argue that Jackson's breach of fiduciary duty claims are untimely under *§ 1113(2)* because she possessed actual knowledge of such claims more than three years before she filed suit on July 19, 2005.

[HN8] "Section 1113 sets a 'high standard' for barring claims against fiduciaries prior to the expiration of the six year limitations period and thus [courts] have interpreted the actual knowledge requirement 'stringently.'" *Richard B. Roush, Inc. Profit Sharing Plan v. New Eng. Mut. Life Ins. Co., 311 F.3d 582, 587 (3d Cir. 2002)* [*9] (quoting *Gluck v. Unisys Corp., 960 F.2d 1168, 1176 (3d Cir. 1992)*). A two-prong test is used to determine whether a plaintiff possesses "actual knowledge" under *§ 1113(2)*, requiring a "showing that plaintiffs knew not only of the events that occurred which constituted the breach or violation but also that those events supported

a breach of fiduciary duty or violation under ERISA." *Inf'l Union of Elec., Elec., Salaried, Mach. and Furniture Workers v. Murata Erie N. Am., 980 F.2d 889, 900 (3d Cir. 1992); see also Richard B. Roush, Inc. Profit Sharing Plan, 311 F.3d at 585* (citing *Gluck, 960 F.2d at 1177*). Because the statute of limitations is an affirmative defense, the burden of proving that the statute of limitations bars Jackson's claims rests with Defendants. *Richard B. Roush, Inc. Profit Sharing Plan, 311 F.3d at 585.*

Since this matter was brought before the Court on a motion to dismiss, we are constrained in reviewing the record. Based upon Jackson's complaint, the exhibits attached to her complaint, and the documents referenced in her claims, we cannot discern what Jackson "knew and when" regarding [*10] Defendants' alleged breaches of fiduciary duty. *Gluck, 960 F.2d at 1171.* While it is clear that Jackson allegedly knew of the harmful consequences of Defendants' alleged breaches, and allegedly suffered actual harm, it is unclear at this stage of the proceedings whether Jackson was aware that the facts supported a cause of action under ERISA. This question is more appropriate for a motion for summary judgment. As such, it would be premature for the Court to dismiss Jackson's breach of fiduciary duty claims as time–barred.

### C. Counts II and III Must Not be Dismissed as Untimely.

Defendants also argue that Counts II and III, which contain claims for ERISA benefits under *29 U.S.C. §§ 1132(a)(1)(B), 1132(a)(3),* are barred under the applicable statute of limitations. The statute of limitations for such claims is the relevant statute of limitations governing contract actions. *See Minnis v. Baldwin Bros., 150 Fed. Appx. 118, 120 (3d Cir. 2005); Syed v. Hercules Inc., 214 F.3d 155, 159 (3d Cir. 2000).* The parties dispute, though, which state statute of limitations controls. Jackson argues that New Jersey's six–year [*11] statute of limitations for contract actions applies, thus making her complaint timely. Defendants, however, argue that California's four–year statute of limitations for contract actions governs, thereby resulting in Jackson's complaint being untimely.

Since the statute of limitations of a state other than the forum state is implicated in this case, federal choice of law principles govern which statute of limitations applies. *Gluck, 960 F.2d at 1179.* [HN9] Federal courts have relied on the Restatement (Second) of Conflict of Laws (the "Restatement") as a source of federal common law choice of law principles. *Pfizer, Inc. v. Elan Pharm. Research Corp., 812 F. Supp. 1352 (D. Del. 1993); SEC v. Infinity Group Co., 27 F. Supp. 2d 559, 565 (E.D. Pa. 1998).* n6 *Section 142(2) of the Restatement* provides:

The forum will apply its own statute of limitations permitting a claim unless:

(a) maintenance of the claim would serve no substantial interest of the forum; and

(b) the claim would be barred under the statute of limitations of a state having a more significant relationship to the parties and the occurrence.

*Restatement (Second) of Conflict of Laws § 142(2)* [*12] . When determining whether one state has a "more significant relationship to the parties and the occurrence" than another, a court must review: (1) the place of contracting; (2) the place of negotiation of the contract; (3) the place of performance; (4) the location of the subject matter of the contract; and (5) the domicile, residence, nationality, place of incorporation and place of business of the parties. *See Restatement (Second) of Conflict of Laws § 188(2).*

n6 The LTD Plan contains a provision stating that the contract is governed by California law. However, we note that "choice of law provisions in contracts do not apply to statutes of limitations, unless the reference is express." *Gluck, 960 F.2d at 1179* (citations omitted). No mention, however, is made in the clause dictating the application of California's statute of limitations. Accordingly, the choice of law clause is not controlling.

We cannot undertake a review of these factors at this [*13] time. [HN10] "A Court may grant a *Rule 12(b)(6)* motion based on statute of limitations grounds [only] if the complaint *on its face* shows noncompliance with the limitations period." *Viking Communs., Inc. v. AT&T Corp., No. 05-1078, 2005 U.S. Dist. LEXIS 24175, at *20 (D.N.J. Oct. 14, 2005)* (emphasis added); *see also Brody v. Hankin, 145 Fed. Appx. 768, 771–72 (3d Cir. 2005)* ("'If a statute of limitations 'bar is not apparent on the face of the complaint, then it may not afford the basis for a dismissal of a complaint under *Rule 12(b)(6).*'"") (quoting *Rycoline Prods. v. C & W Unlimited, 109 F.3d 883, 886 (3d Cir. 1997)* (citation omitted)); *Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.1 (3d Cir. 1994)* (noting that a complaint maybe dismissed pursuant to *Rule 12(b)(6)* on statute of limitations grounds if the untimeliness of the complaint is apparent on its face). The Court clearly would have to view documents outside the complaint, including documents not mentioned in or attached to Jackson's complaint, to determine whether California's or New Jersey's statute of limitation applies to this case. Undertaking [*14] such a review would be

inappropriate on a motion to dismiss. *See Brody, 145 Fed. Appx. at 772.* Therefore, Defendants' motion to dismiss Counts II and III as untimely will be denied.

**D. Defendants Motion to Dismiss Count V is Denied.**

Finally, Defendants argue that Count V, which alleges that Defendants violated *§ 1024(b)* and *§ 1025(a)* by "failing and refusing to provide the claims information requested by Plaintiff," does not state a claim upon which relief may be granted. (Amend. Compl. P 37). In particular, Defendants argue that Jackson improperly pleaded these claims, since *§ 1024(b)* and *§ 1025(a)* require the participant or beneficiary to have requested those documents in writing. *See 29 U.S.C. § 1024(b)(4)* ("The administrator shall, *upon written request* of any participant or beneficiary, furnish a copy of the latest updated summary, plan description, and the latest annual report....") (emphasis added); *29 U.S.C. § 1025(a)* ("Each administrator of an employee pension benefit plan shall furnish to any plan participant or beneficiary *who so requests in writing* a statement indicating. [*15] ...") (emphasis added).

Defendants' motion to dismiss Count V will be denied. Count V clearly alleges that Jackson "requested" the claims information stated under *§ 1024(b)* and *§ 1025(a)*. Dismissing Count V based solely on the lack of the word "written" in her complaint would unduly exalt form over substance and run counter to the long-standing principle that [HN11] "coverage under ERISA is construed liberally to provide the maximum degree of protection to working men and women covered by private retirement programs." *Colarusso v. Transcapital Fiscal Sys., 227 F. Supp. 2d 243, 251 (D.N.J. 2002).*

**IV. Conclusion**

For the foregoing reasons, Defendants motion to dismiss Count I is **GRANTED,** Defendants' motion to dismiss Count II is **DENIED,** Defendants' motion to dismiss Count III is **DENIED,** Defendants' motion to dismiss Count IV is **DENIED,** and Defendants' motion to dismiss Count V is **DENIED.**

Dated: January 30, 2006

s/ William J. Martini

**William J. Martini, U.S.D.J.**

**ORDER**

For the reasons stated in the accompanying Opinion, and for good cause shown,

**IT IS** on this 30th day of January 2006, hereby

**ORDERED [*16]** the Defendants Motion to Dismiss Count I of Plaintiff's Amended Complaint is **GRANTED;** and

**IT IS FURTHER ORDERED** that Defendants Motion to Dismiss Counts II, III, IV and V of Plaintiff's Amended Complaint is **DENIED.**

s/ William J. Martini

**William J. Martini, U.S.D.J.**

LEXSEE 2002 U.S. DIST. LEXIS 1771

**DEREK J. OATWAY, Plaintiff, v. AMERICAN INT'L GROUP, INC., Plan Administrator of Stock Option Plan, AMERICAN INT'L GROUP, INC., a Delaware Corporation, and 1987 EMPLOYEE STOCK OPTION PLAN, an Employee Welfare Benefit Plan, Defendants.**

**C.A. No. 01-033-GMS**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

*2002 U.S. Dist. LEXIS 1771; 27 Employee Benefits Cas. (BNA) 2404*

**February 5, 2002, Decided**

**SUBSEQUENT HISTORY:** *Affirmed by Oatway v. Am. Int'l Group, 2003 U.S. App. LEXIS 7051 (3d Cir. Del., Apr. 14, 2003)*

**DISPOSITION:** [*1] Defendants' Motion to Dismiss GRANTED; and Plaintiff's Motion for Summary Judgment declared MOOT.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Defendants moved to dismiss plaintiff's amended complaint on the ground that the complaint failed to state a claim under § 502(a)(1)(B) of the Employee Retirement Income Security Act. Plaintiff moved for summary judgment.

**OVERVIEW:** Plaintiff was given stock options as performance incentives. The stock options were good for 10 years. Plaintiff resigned and was told that the stock options had to be exercised by a certain date, well before the 10 year period. Plaintiff failed to exercise the stock option by the new deadline, but attempted to exercise within the 10 year period. However, defendants declined to honor the stock option, so plaintiff brought suit under § 502(a)(1)(B) of the Employee Retirement Income Security Act. Defendants moved to dismiss and plaintiff moved for summary judgment. The court granted defendants' motion to dismiss because under the plain language of the plan, the purpose of the stock plan was not to provide severance, retirement, death or disability benefits. Instead, its purpose was to provide a financial incentive for plaintiff to remain with defendants and to improve his work performance. Furthermore, the express purpose of the stock plan was a bonus plan. While plaintiff may have been individually permitted to exercise his options subsequent to retirement, the primary purpose of the stock plan was to provide additional benefits during the course of employment.

**OUTCOME:** Defendants' motion to dismiss was granted. Plaintiff's motion for summary judgment was declared moot.

**LexisNexis(R) Headnotes**

*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Failures to State Claims*
[HN1] A motion to dismiss pursuant to the provisions of *Fed. R. Civ. P. 12(b)(6)* should not be granted unless, accepting all allegations in the complaint as true and viewing them in a light most favorable to the plaintiff, the court rules that the plaintiff is not entitled to relief as a matter of law. A complaint should be dismissed only if, after accepting as true all of the facts alleged in the complaint, and drawing all reasonable inferences in the plaintiff's favor, no relief could be granted under any set of facts consistent with the allegations of the complaint. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.

*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > General Overview*
*Pensions & Benefits Law > Employee Benefit Plans > Welfare Benefit Plans*
*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies > Federal Jurisdiction & Removal*
[HN2] The Employee Retirement Income Security Act (ERISA) gives federal courts subject matter jurisdiction over claims brought pursuant to *29 U.S.C.S. § 1132*(a)(1)(B). This section authorizes a cause of action for benefits due under an employee benefit plan. Because an ERISA plan is necessary before ERISA's provisions apply, the court must first determine whether an employer's plan is, in fact, an ERISA employee welfare benefit plan. If the answer to this threshold question is

2002 U.S. Dist. LEXIS 1771, *1; 27 Employee Benefits Cas. (BNA) 2404

no, then the court may dismiss the plaintiff's claims that he is entitled to benefits under ERISA.

*Pensions & Benefits Law > Employee Benefit Plans > Welfare Benefit Plans*
*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Participation & Vesting > General Overview*
[HN3] See *29 U.S.C.S. § 1002(1).*

*Labor & Employment Law > Employment Relationships > At-Will Employment > Employees*
*Pensions & Benefits Law > Employee Benefit Plans > Welfare Benefit Plans*
*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Participation & Vesting > Qualified Domestic Relations Orders*
[HN4] *29 U.S.C.S. § 186*(c) includes within the definition of "employee welfare plan" those plans which provide holiday and severance benefits, and benefits which are similar. *29 C.F.R. § 2510.3-1(a)(3).*

*Labor & Employment Law > Disability & Unemployment Insurance > Disability Benefits > General Overview*
*Pensions & Benefits Law > Employee Benefit Plans > Welfare Benefit Plans*
*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Participation & Vesting > Qualified Domestic Relations Orders*
[HN5] To constitute an employee welfare plan, a plan must be designed specifically to provide employees with medical, unemployment, disability, death, vacation, or other specified benefits or to provide income following retirement in order to come within the purview of the Employee Retirement Income Security Act. The statutory definition does not embrace plans that may incidentally result in payment of benefits after retirement, death or disability. Thus, merely because a plan may in some circumstances continue to pay proceeds after an employee's death or disability does not make it a welfare benefit plan.

*Pensions & Benefits Law > Employee Benefit Plans > Welfare Benefit Plans*
*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Participation & Vesting > Qualified Domestic Relations Orders*
[HN6] The Employee Retirement Income Security Act applies only to an employee welfare benefit plan or to an employee pension benefit plan or a plan which is both.

*Labor & Employment Law > Disability & Unemployment Insurance > Disability Benefits > General Overview*

*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Participation & Vesting > Qualified Domestic Relations Orders*
[HN7] Plans that might incidentally result in payment of benefits after retirement, death or disability only fall under the Employee Retirement Income Security Act if they were established or maintained for the express purpose of doing so.

*Pensions & Benefits Law > Employee Benefit Plans > Pension Benefit Plans*
*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Participation & Vesting > Qualified Domestic Relations Orders*
[HN8] The Employee Retirement Income Security Act pension plans include any plan established or maintained by an employer that, by its express terms results in a deferral of income by employees for periods extending to the termination of covered employment or beyond, regardless of the method of calculating the contributions made to the plan, the method of calculating the benefits under the plan or the method of distributing benefits from the plan. *29 U.S.C.S. § 1002*(2)(A)(ii).

*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Participation & Vesting > Qualified Domestic Relations Orders*
[HN9] The Employee Retirement Income Security Act pension plans exclude bonuses for work performed, unless such bonuses are systematically deferred to termination of covered employment or beyond, or so as to provide retirement income to employees. *29 C.F.R. § 2510.3-2(c).*

COUNSEL: For DEREK J. OATWAY, plaintiff: Richard R. Wier, Jr., Law Offices of Richard R. Wier, Jr., Wilmington, DE.

For AMERICAN INTERNATIONAL GROUP, INC., AMERICAN INTERNATIONAL GROUP, INC., 1987 EMPLOYEE STOCK OPTION PLAN, defendants: Regina A. Iorii, Stephen E. Jenkins, Carolyn Shelly Hake, Ashby & Geddes, Wilmington, DE.

JUDGES: Gregory M. Sleet, UNITED STATES DISTRICT JUDGE.

OPINIONBY: Gregory M. Sleet

OPINION:

### MEMORANDUM AND ORDER

### I. INTRODUCTION

On January 17, 2001, the plaintiff, Derek J. Oatway

Page 3

2002 U.S. Dist. LEXIS 1771, *1; 27 Employee Benefits Cas. (BNA) 2404

("Oatway"), filed a complaint in the above-captioned action. He amended his complaint on February 13, 2001. In his amended complaint, he alleges that American International Group, Inc. ("AIG") wrongfully denied him benefits under the 1987 Employee Stock Option Plan (the "Plan"). He now seeks to recover those benefits pursuant to section 502(a)(1)(B) of the Employee Retirement Income Security Act of 1974 ("ERISA"). *See 29 U.S.C. § 1132*(a)(1)(B). He further claims that AIG, as the Plan ' administrator, breached its fiduciary duties by failing to [*2] properly administer the Plan in violation of *29 U.S.C. § 1133*. Finally, Oatway asserts state law claims against AIG based on breach of contract and estoppel.

Presently before the court are the defendants' motion to dismiss Oatway's amended complaint on the grounds that it fails to state a claim under ERISA and Oatway's motion for summary judgment. For the following reasons, the court will grant the defendants' motion to dismiss.

## II. BACKGROUND

Oatway was employed by AIG until approximately August 26, 1992. On various occasions from 1983 through 1990, AIG and Oatway entered into written Incentive Stock Option Agreements (the "Agreements"). These Agreements granted Oatway the right to purchase certain numbers of shares of AIG common stock at set exercise prices per share. Specifically, on January 18, 1990, AIG granted Oatway an Incentive Stock Option to purchase 200 shares at $96 per share. On October 11, 1990, AIG granted Oatway an Incentive Stock Option to purchase 200 shares at $58.625 per share. n1 These options were granted under the AIG Plan in consideration of Oatway's performance as an employee of AIG.

> n1 Oatway refers to the terms of the January 18, 1990 and October 11, 1990 Incentive Stock Option Agreements and the 1987 Employee Stock Option Plan throughout his Amended Complaint. He has therefore incorporated these documents by reference into his pleading. The court may rely on such documents in deciding a motion to dismiss. *See In re Rockefeller Ctr. Properties, Inc. Securities Litig., 184 F.3d 280, 287 (3d Cir. 1999)* (noting that, on a motion to dismiss, "a court can consider a document integral to or explicitly relied upon in the complaint."). Neither party objects to the court relying on these documents.

[*3]

AIG's Plan provides selected employees of AIG, including its parent or subsidiary corporations, with the options to purchase shares of AIG common stock. The purpose of the Plan is:

> To advance the interests of American International Group, Inc. ("AIG") by providing certain of the key employees of AIG and of any parent or subsidiary corporation of AIG, upon whose judgment, initiative and efforts the successful conduct of the business of AIG largely depends, with an additional incentive to continue their efforts on behalf of such corporations, as well as to attract to such corporations people of training, experience and ability.

Options granted under the Plan may normally be exercised beginning one year after they are granted, in set installments. AIG's board of directors determine the amount of the installments at the time of the grant. To the extent that an optionee does not purchase the maximum number of shares permitted under an option in any one year, he or she may purchase such shares in a subsequent year during the term of the option. Each of the option grants at issue provided that it expired ten years from the date of its issuance. Each of the option grants further [*4] specified that, in the event of termination of employment prior to the normal retirement age, the option must be exercised within three months after such termination.

On or about August 26, 1992, Oatway retired from AIG. Since he retired prior to the normal retirement age, AIG advised him that he was required to exercise all his remaining stock options by November 1992. Oatway alleges that after he complained about being denied the ten-year period to exercise his options, AIG agreed to allow him to exercise the options over the ten-year period, rather than within three months of his retirement.

On or about January 25, 2000, Oatway discovered that the option exercise date under the January 18, 1990 Incentive Stock Agreement had already expired. He claims that he immediately notified AIG via facsimile of his "intention and desire" to exercise this grant. AIG refused to allow him to do so.

On October 1, 2000, Oatway finally "exercised" the options under both the January 18, 1990 and October 11, 1990 Incentive Stock Option Agreements, but AIG refused to accept either exercise. He asserts that he appealed the denial to AIG as the "Plan Administrator." AIG rejected his appeal.

Oatway [*5] subsequently filed this complaint on January 17, 2001. On March 13, 2001, the defendants filed a motion to dismiss Oatway's Amended Complaint. On April 10, 2001, Oatway filed a motion for summary judgment.

2002 U.S. Dist. LEXIS 1771, *5; 27 Employee Benefits Cas. (BNA) 2404

## III. STANDARD OF REVIEW: MOTION TO DISMISS

[HN1] A motion to dismiss pursuant to the provisions of Rule 12(b)(6) should not be granted unless, accepting all allegations in the complaint as true and viewing them in a light most favorable to the plaintiff, the court rules that the plaintiff is not entitled to relief as a matter of law. *In re Fruehauf Trailer Corp.*, 250 B.R. 168, 183 (D. Del 2000) (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997); *see also Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts, Inc.*, 140 F.3d 478, 483 (3d Cir. 1998)* ("A complaint should be dismissed only if, after accepting as true all of the facts alleged in the complaint, and drawing all reasonable inferences in the plaintiff's favor, no relief could be granted under any set of facts consistent with the allegations of the complaint."). "The issue is not whether a plaintiff will ultimately prevail but whether [*6] the claimant is entitled to offer evidence to support the claims." *In re Burlington*, 114 F.3d at 1420.

## IV. DISCUSSION

[HN2] ERISA gives federal courts subject matter jurisdiction over claims brought pursuant to *29 U.S.C. § 1132*(a)(1)(B). This section authorizes a cause of action for benefits due under an employee benefit plan. *See 29 U.S.C. § 1132*(a)(1)(B). Because an ERISA "plan" is necessary before ERISA's provisions apply, the court must first determine whether AIG's 1987 Plan is, in fact, an ERISA "employee welfare benefit plan." *See Long v. Excel Telecommunications Corp., 2000 U.S. Dist. LEXIS 15479, 2000 WL 1562808*, at *2 (N.D. Tex. Oct. 18, 2000). If the answer to this threshold question is no, then the court may dismiss the plaintiff's claims that he is entitled to benefits under ERISA. *See Henglein v. Informal Plan for Plant Shutdown Benefits for Salaried Employees*, 974 F.2d 391, 395 (3d Cir. 1992) (noting that a plaintiff's failure to prove the existence of an employee benefit plan, though it results in the dismissal of the claim, does not deprive the district court of subject matter jurisdiction [*7] to enter a judgment on the merits.")

### A. Is the 1987 Plan an Employee Welfare Benefit Plan Under ERISA?

Oatway contends that the 1987 Plan is an "employee welfare benefit plan" under which he is entitled to benefits pursuant to *29 U.S.C. § 1132*(a)(1)(B). The court disagrees.

[HN3] ERISA defines an "employee welfare benefit plan" as:

Any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care, or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services or (B) any benefit described in section 186(c) of this title (other than pensions on retirement or death, and insurance to provide such pensions). n2

n2 [HN4] Section 186(c) includes within the definition of "employee welfare plan" those plans which provide holiday and severance benefits, and benefits which are similar. *See 29 C.F.R. § 2510.3-1(a)(3)*.

[*8]

*See 29 U.S.C. § 1002*(1).

[HN5] To constitute an employee welfare plan, a plan "must be designed specifically to provide employees with medical, unemployment, disability, death, vacation, or other specified benefits or to provide income following retirement in order to come within the purview of ERISA." *Long, 2000 U.S. Dist. LEXIS 15479, 2000 WL 1562808*, at *4; *see also 29 U.S.C. § 1002*(1) (requiring that an ERISA plan be "established or maintained . . . for the purpose of providing" the benefits listed in the statute.). The statutory definition does not embrace plans that may incidentally result in payment of benefits after retirement, death or disability. *See Long, 2000 U.S. Dist. LEXIS 15479, 2000 WL 1562808*, at *2; *Hagel v. United Land Co., 759 F. Supp. 1199, 1203 (E.D. Va. 1991)*. Thus, merely because a plan "may in some circumstances continue to pay . . . proceeds after an employee's death or disability does not make it a welfare benefit plan." *Murphy v. Inexco Oil Co.*, 611 F.2d 570, 574 (5th Cir. 1980).

Furthermore, these holdings are consistent with congressional findings and the declaration of policy that supported [*9] ERISA's enactment. In enacting ERISA, Congress did not intend "to control every aspect of the employer-employee relationship or every promise made to employees." *Murphy*, 611 F.2d at 574. Rather, Congress "intended to protect employees with many years of service

who were losing anticipated retirement benefits because of inadequate vesting provisions, lack of funding, or other problems." *Long, 2000 U.S. Dist. LEXIS 15479, 2000 WL 1562808,* *2. Because Congress "sought only to deal with those types of plans that had created the problems it sought to remedy . . . by its terms, [HN6] ERISA applies only to "an employee welfare benefit plan or to an employee pension benefit plan or a plan which is both." *See Murphy, 611 F.2d at 574* (quoting *29 U.S.C. § 1002(3)*).

Although the Third Circuit has not addressed the issue of whether an incentive stock option plan is an employee benefit plan within the meaning of ERISA, other courts that have considered the question have uniformly held that it is not. *See Long, 2000 U.S. Dist. LEXIS 15479, 2000 WL 1562808, at *3-4; Hahn v. National Westminster Bank, N.A., 99 F. Supp. 2d 275, 279-280 (E.D.N.Y. 2000);* [*10] *Goodrich v. CML Fiberoptics, Inc., 990 F. Supp. 48, 49-50 (D. Mass. 1998).* In *Long,* a former employee claimed that his employer terminated him for the purpose of depriving him of benefits under the company's stock option plan in violation of ERISA. *Long, 2000 U.S. Dist. LEXIS 15479, 2000 WL 1562808,* at *2. The court granted the former employer's motion for summary judgment, holding that the company's stock plan was not a benefit plan under ERISA. *See 2000 U.S. Dist. LEXIS 15479,* [WL] at *3-4. In its holding, the court examined the purpose of the company's stock option plan, which was:

> to provide a means by which selected Employees of and Consultants to the Company and its Affiliates may be given an opportunity to purchase stock of the Company. The Company, by means of the Plan, seeks to retain the services of the persons who are now Employees of or Consultants to the Company and its Affiliates, to secure and retain the services of new Employees and Consultants, and to provide incentives for such persons to exert maximum efforts for the success of the Company and its Affiliates.

*See 2000 U.S. Dist. LEXIS 15479, *9* [WL] at *3. The court further noted that, "nowhere does [the company's] Stock Option Plan indicate that its [*11] purpose is to defer compensation. In fact, the plan itself indicated that it was intended to operate as an incentive and bonus program. *See id.*

Finally, the Department of Labor, which is the agency charged with interpreting and enforcing ERISA, has also recognized that stock option plans are not necessarily employee welfare benefit plans. *See U.S. Dep't of Labor Opinion Letter 79-80 A, 1979* WL 7016 (Nov. 13, 1979) (stating that stock option plans were not employee welfare benefit plans within the meaning of ERISA § 3(1) because they were not established or maintained for the purpose of providing any of the benefits listed in § 3(1) or 302(c) of the Labor Management Relations Act, 1947).

The court finds that the Plan at issue here does not meet the statutory definition of an employee welfare plan. The Plan was not created for the purpose of providing retirement income. Rather, the stated purpose of the 1987 Plan is:

> to advance the interests of American International Group, Inc. ("AIG") by providing certain of the key employees of AIG and of any parent or subsidiary corporation of AIG, upon whose judgment, initiative and efforts the successful conduct [*12] of the business of AIG largely depends, with an additional incentive to continue their efforts on behalf of such corporations, as well as to attract to such corporations people of training, experience and ability.

Therefore, under the plain language of the Plan, its purpose is not to provide severance, retirement, death or disability benefits. Instead, its purpose is to provide a financial incentive for employees to remain with AIG and to improve their performance at AIG. Although the Plan provided that upon retirement, death, or disability, the option could still be exercised, subject to time restrictions, any payment of benefits at that time were merely incidental. Furthermore, it is clear that "[HN7] plans that might incidentally result in payment of benefits after retirement, death or disability . . . only fall under ERISA if they were established or maintained for the express purpose of doing so." *Long, 2000 U.S. Dist. LEXIS 15479, 2000 WL 1562808,* at *2 (citing *Murphy, 611 F.2d at 574-75*).

Accordingly, because the Plan itself is clearly an incentive plan, it is not an employee welfare benefit plan within the meaning of ERISA.

**B. Is the 1987 Plan an Employee Pension Benefit [*13] Plan Under ERISA?**

Oatway suggests that the Plan "can also be characterized under ERISA as a pension plan or an employee pension benefit plan." [HN8] ERISA pension plans include any plan established or maintained by an employer that, by its express terms "results in a deferral of income by employees for periods extending to the termination of covered employment or beyond, regardless of the method of calculating the contributions made to the plan, the

Case 1:06-cv-00195-GMS    Document 8-2    Filed 05/30/2006    Page 12 of 19

Page 6

2002 U.S. Dist. LEXIS 1771, *13; 27 Employee Benefits Cas. (BNA) 2404

method of calculating the benefits under the plan or the method of distributing benefits from the plan." *29 U.S.C. § 1002*(2)(A)(ii).

The Department of Labor has interpreted [HN9] ERISA pension plans to exclude bonuses for work performed, unless such bonuses are "systematically deferred to termination of covered employment or beyond, or so as to provide retirement income to employees." *29 C.F.R. § 2510.3-2(c)*. By the express purpose of the Plan itself, it is clear that this is a bonus plan. Although Oatway alleges that his ability to exercise his options continued after his retirement from AIG, this does not transform the bonus plan into "one whose payments are systematically deferred to the termination [*14] of employment or one whose purpose is to provide retirement income." *See Hahn v. National Westminster Bank, N.A., 99 F. Supp. 2d 275, 276 (E.D.N.Y. 2000)*. Rather, this is a plan were "post-retirement payments [are] only incidental to the goal of providing current compensation." *See Hahn, 99 F. Supp. 2d at 279*. Thus, the court recognizes that, while Oatway may have been individually permitted to exercise his options subsequent to retirement, the primary purpose of the Plan as a whole was to provide additional benefits to employees during the course of their employment. *See Lafian v. Electronic Data Systems Corp., 856 F. Supp. 339, 345 (E.D. Mich. 1994)*.

Accordingly, the court finds that the Plan at issue here is not an employee pension benefit plan within the meaning of ERISA.

### C. Does the Plan Administrator Owe Oatway a Fiduciary Duty Under ERISA?

Oatway next alleges that AIG, as the Plan's administrator, breached its fiduciary duties under ERISA § 503. *See 29 U.S.C. § 1133*. The basis for this claim is that AIG failed to set forth adequate factual reasons why it denied his benefits appeal. Oatway [*15] further claims that AIG failed to advise him of what further information

he needed to meet options pay status requirements under the Plan.

As the court discussed at some length above, the Plan does not fall within the definition of a qualified ERISA plan. Therefore, the court finds that AIG could not owe Oatway any ERISA fiduciary duties under the Plan.

### D. State Law Claims

Oatway next asserts state law claims for breach of contract and estoppel. He notes that, "if the court were to determine that there is an ERISA plan, then this court's supplemental jurisdiction over Count III is appropriate." However, because this Plan is not covered by ERISA, there is no federal question jurisdiction under ERISA. Moreover, the court has merely focused on the jurisdictional issues presented by these claims, and has not devoted any resources to the merits of the claims. *See Voege v. The Magnavox, Co., 439 F. Supp. 935, 943 (D. Del. 1977)*. The court, therefore, declines to exercise supplemental jurisdiction over Oatway's remaining state law claims. *See 28 U.S.C. § 1367*(c)(3). Accordingly, the court will dismiss them for lack of subject matter jurisdiction. [*16]

## V. CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. The Defendants' Motion to Dismiss (D.I. 7) is GRANTED; and

2. Oatway's Motion for Summary Judgment (D.I. 10) is declared MOOT.

Date: February 5, 2002

Gregory M. Sleet

UNITED STATES DISTRICT JUDGE

LEXSEE 2006 U.S. LEXIS 3954

**JOEL SEREBOFF, ET UX., PETITIONERS v. MID ATLANTIC MEDICAL SERVICES, INC.**

**No. 05–260.**

**SUPREME COURT OF THE UNITED STATES**

*2006 U.S. LEXIS 3954; 74 U.S.L.W. 4240; 37 Employee Benefits Cas. (BNA) 1929*

**March 28, 2006, Argued**
**May 15, 2006, Decided**

**NOTICE: [*1]**

The LEXIS pagination of this document is subject to change pending release of the final published version.

**PRIOR HISTORY:** ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT. *Mid Atl. Med. Servs., LLC v. Sereboff, 407 F.3d 212, 2005 U.S. App. LEXIS 7699 (4th Cir. Md., 2005)*

**DISPOSITION:** Affirmed in relevant part.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Respondent fiduciary sued petitioner beneficiaries under the Employee Retirement Income Security Act of 1974 (ERISA), *29 U.S.C.S. § 1001* et seq., seeking to collect the medical expenses it had paid on their behalf pursuant to a health insurance plan. The district court found in favor of the fiduciary. The United States Court of Appeals for the Fourth Circuit affirmed in relevant part. Certiorari was granted.

**OVERVIEW:** The beneficiaries were covered by a health insurance plan that contained an "Acts of Third Parties" provision, which required a beneficiary who received benefits under the plan for injuries caused by a third party to reimburse the fiduciary for those benefits from all recoveries from the third party. The beneficiaries were injured in an automobile accident, and the plan paid the medical expenses. The fiduciary asserted a lien on the anticipated proceeds from the beneficiaries' tort suit against third parties. When the beneficiaries settled their tort suit, the fiduciary sought reimbursement of medical expenses paid by the ERISA plan. The Court determined that ERISA § 502(a)(3), *29 U.S.C.S. § 1132(a)(3)*, authorized recovery in these circumstances. The fiduciary's action to enforce the "Acts of Third Parties" provision qualified as an equitable remedy because it was indistinguishable from an action to enforce an equitable lien established by agreement. A "familiar rule of equity" allowed the fiduciary to "follow" a portion of the recovery into the beneficiaries' hands as soon as the settlement fund was identified, and impose on that portion a constructive trust or equitable lien.

**OUTCOME:** The Court affirmed the appellate court's judgment in relevant part.

**LexisNexis(R) Headnotes**

*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies > General Overview*
[HN1] A fiduciary may bring a civil action under § 502(a)(3) of the Employee Retirement Income Security Act of 1974, *29 U.S.C.S. § 1001* et seq., (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan. *29 U.S.C.S. § 1132(a)(3)*.

*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies > Equitable Relief > General Overview*
[HN2] Section 502(a)(3)(B) (*29 U.S.C.S. § 1132(a)(3)(B)*) of the Employee Retirement Income Security Act of 1974, *29 U.S.C.S. § 1001* et seq., authorizes only those categories of relief that were typically available in equity.

*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies > Equitable Relief > Restitution*
[HN3] In the context of determining whether a claim

2006 U.S. LEXIS 3954, *1; 74 U.S.L.W. 4240;
37 Employee Benefits Cas. (BNA) 1929

is equitable under § 502(a)(3)(B) (*29 U.S.C.S. § 1132(a)(3)(B)*) of the Employee Retirement Income Security Act of 1974, *29 U.S.C.S. § 1001* et seq., not all relief falling under the rubric of restitution is available in equity. To decide whether the restitutionary relief sought is equitable or legal, the court examines cases and secondary legal materials to determine if the relief would have been equitable in the days of the divided bench. One feature of equitable restitution is that it sought to impose a constructive trust or equitable lien on particular funds or property in the defendant's possession.

***Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies > Equitable Relief > General Overview***
[HN4] The Employee Retirement Income Security Act of 1974, *29 U.S.C.S. § 1001* et seq., provides for equitable remedies to enforce plan terms, so the fact that the action involves a breach of contract can hardly be enough to prove relief is not equitable; that would make ERISA § 502(a)(3)(B)(ii), *29 U.S.C.S. § 1132(a)(3)(B)(ii)*, an empty promise.

***Civil Procedure > Equity > General Overview***
[HN5] Whether a remedy is legal or equitable depends on the basis for the plaintiff's claim and the nature of the underlying remedies sought.

***Civil Procedure > Equity > Maxims > General Overview***
***Contracts Law > Remedies > Equitable Relief > General Overview***
[HN6] In the context of equity, a contract to convey a specific object even before it is acquired will make the contractor a trustee as soon as he gets a title to the thing.

***Civil Procedure > Equity > Relief***
[HN7] An equitable lien sought as a matter of restitution and an equitable lien "by agreement" are different species of relief. No tracing requirement applies to equitable liens by agreement or assignment.

***Civil Procedure > Equity > General Overview***
[HN8] In contract cases, equity originally required identification at the time the contract was made of the fund to which a lien specified in the contract attached. But Barnes explicitly disapproved of this rule.

***Civil Procedure > Equity > Relief***
[HN9] The fund over which a lien is asserted need not be in existence when the contract containing the lien provision is executed. An agreement to charge, or to assign property not yet in existence, although creating no legal estate or interest in the things when they afterwards come into existence does constitute an equitable lien upon the

property just as would a lien upon specific things existing and owned by the contracting party at the date of the contract.

***Civil Procedure > Equity > Relief***
[HN10] To dedicate property to a particular purpose, to provide that a specified creditor and that creditor alone shall be authorized to seek payment of his debt from the property or its value, is unmistakably to create an equitable lien.

***Civil Procedure > Equity > Relief***
***Insurance Law > Claims & Contracts > Subrogation > General Overview***
[HN11] A subrogation lien is not an express lien based on agreement, but instead is an equitable lien impressed on moneys on the ground that they ought to go to the insurer.

**SYLLABUS:** Petitioner Sereboffs are beneficiaries under a health insurance plan administered by respondent Mid Atlantic and covered by the Employee Retirement Income Security Act of 1974 (ERISA). The plan provides for payment of covered medical expenses and has an "Acts of Third Parties" provision. This provision requires a beneficiary who is injured as a result of an act or omission of a third party to reimburse Mid Atlantic for benefits it pays on account of those injuries, if the beneficiary recovers for those injuries from the third party. The Sereboffs were involved in an automobile accident and suffered injuries. The plan [*2] paid the couple's medical expenses. The Sereboffs sought compensatory damages for the accident from third parties in state court. After the Sereboffs settled their tort suit, Mid Atlantic filed suit in District Court under § 502(a)(3) of ERISA, seeking to collect from the Sereboffs' tort recovery the medical expenses it had paid on the Sereboffs' behalf. The Sereboffs agreed to set aside from their tort recovery a sum equal to the amount Mid Atlantic claimed, and preserve this sum in an investment account pending the outcome of the suit. The court found in Mid Atlantic's favor and ordered the Sereboffs to turn over the amount set aside. The Fourth Circuit affirmed in relevant part, and observed that the Courts of Appeals are divided on the question whether § 502(a)(3) authorizes recovery in these circumstances. This Court granted review to resolve this disagreement.

*Held:* Mid Atlantic's action properly sought "equitable relief" under § 502(a)(3). Pp. 3–11.

(a) A fiduciary may bring a civil action under § 502(a)(3)(B) "to obtain . . . appropriate equitable relief . . . to enforce . . . the terms of the plan." The only question here is whether the relief requested was [*3] "equitable." In *Mertens v. Hewitt Associates, 508 U.S.*

248, 113 S. Ct. 2063, 124 L. Ed. 2d 161, this Court construed § 502(a)(3)(B) to authorize only "those categories of relief that were *typically* available in equity," and thus rejected a claim that this Court found sought "nothing other than compensatory *damages*." *Id., at 255, 113 S. Ct. 2063, 124 L. Ed. 2d 161*. This Court elaborated on this construction of § 502(a)(3) in *Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204, 122 S. Ct. 708, 151 L. Ed. 2d 635*, which involved a provision in an ERISA plan similar to the "Acts of Third Parties" provision in the Sereboffs' plan. Relying on such a provision, Great-West sought equitable restitution of benefits it had paid when Knudson recovered in tort from a third party. In considering whether § 502(a)(3)(B) authorized such relief, this Court asked whether the restitutionary remedy Great-West sought would have been equitable in "the days of the divided bench," *id., at 212, 122 S. Ct. 708, 151 L. Ed. 2d 635*. This Court found that it would not have been equitable, because the funds Great-West sought were not in Knudson's possession and had been placed in a trust under California law. That impediment is not present here. Mid Atlantic sought identifiable [*4] funds within the Sereboffs' possession and control — that part of the tort settlement due Mid Atlantic under the ERISA plan and set aside in the investment account. Pp. 3–5.

(b) This Court's case law from the days of the divided bench confirms that Mid Atlantic's claim is equitable. In *Barnes v. Alexander, 232 U.S. 117, 34 S. Ct. 276, 58 L. Ed. 530*, attorney Barnes promised two other attorneys "one-third of the contingent fee" he expected in a case, *id., at 119, 34 S. Ct. 276, 58 L. Ed. 530*. Based on "the familiar rule of equity that a contract to convey a specific object even before it is acquired will make the contractor a trustee as soon as he gets a title to the thing," *id., at 121, 34 S. Ct. 276, 58 L. Ed. 530*, the Court found that Barnes' undertaking "created a lien" upon the portion of the recovery due him from the client, *ibid.*, which the other attorneys could "follow . . . into [Barnes'] hands" "as soon as [the fund] was identified," *id., at 123, 34 S. Ct. 276, 58 L. Ed. 530*. The "Acts of Third Parties" provision in the Sereboffs' plan, like Barnes' promise, specifically identified a particular fund distinct from the Sereboffs' general assets, and a particular share of that fund to which Mid Atlantic was entitled. [*5] Thus, Mid Atlantic could rely on a "familiar rule of equity" to collect for the medical bills it had paid by following a portion of the recovery "into the [Sereboffs'] hands" "as soon as [the settlement fund] was identified," and imposing on that portion a constructive trust or equitable lien. *Ibid.*

The Sereboffs object that Mid Atlantic's suit would not have satisfied the strict tracing rules that they say accompanied equitable restitution at common law. But *Barnes*

confirms that no such tracing requirement applies to equitable liens imposed by agreement or assignment, like that in *Barnes* itself. And *Knudson* did not endorse application of all restitutionary conditions, like the tracing rules the Sereboffs identify, to every action for an equitable lien under § 502(a)(3). *Knudson* simply held that equitable restitution was unavailable because the funds Great-West sought were not in Knudson's possession.

The Sereboffs also argue that equitable relief is inappropriate, even under *Barnes*, because at the time they agreed to the plan terms, no fund existed in which they could grant Mid Atlantic an equitable interest. But *Barnes* explicitly disapproved [*6] of a rule requiring identification at the time a contract is made of the fund to which a lien specified in the contract attached.

The Sereboffs also claim that the rule announced in *Barnes* applies only to equitable liens claimed under an attorney's contingency fee arrangement. But *Barnes* did not attach any particular significance to the identity of the parties seeking recovery, and other cases of this Court, not involving attorneys' contingency fees, have applied the same "familiar rule of equity" that *Barnes* did. See, *e.g.*, *Walker v. Brown, 165 U.S. 654, 17 S. Ct. 453, 41 L. Ed. 865*. Pp. 5–10.

(c) The Sereboffs' contention that the lower courts erred in allowing enforcement of the "Acts of Third Parties" provision, without imposing limitations that would apply to an equitable subrogation action, is rejected. Mid Atlantic's claim is not considered equitable because it is a subrogation claim. Rather, it is considered equitable because it is indistinguishable from an action to enforce an equitable lien established by agreement, of the sort epitomized by *Barnes*. Pp. 10–11.

*407 F.3d 212*, affirmed in relevant part.

**JUDGES:** ROBERTS, C. J., delivered the opinion [*7] for a unanimous Court.

**OPINIONBY:** ROBERTS

**OPINION:**

CHIEF JUSTICE ROBERTS delivered the opinion of the Court.

In this case we consider again the circumstances in which a fiduciary under the Employee Retirement Income Security Act of 1974 (ERISA) may sue a beneficiary for reimbursement of medical expenses paid by the ERISA plan, when the beneficiary has recovered for its injuries from a third party.

I

Marlene Sereboff 's employer sponsors a health insurance plan administered by respondent Mid Atlantic Medical Services, Inc., and covered by ERISA, 88 Stat. 829, as amended, *29 U.S.C. § 1001 et seq. (2000 ed. and Supp. III).* Marlene Sereboff and her husband Joel are beneficiaries under the plan. The plan provides for payment of certain covered medical expenses and contains an "Acts of Third Parties" provision. This provision "applies when [a beneficiary is] sick or injured as a result of the act or omission of another person or party," and requires a beneficiary who "receives benefits" under the plan for such injuries to "reimburse [Mid Atlantic]" for those benefits from "all recoveries from a third party (whether by lawsuit, settlement, or otherwise)." App. to **[*8]** Pet. for Cert. 38a. The provision states that "[Mid Atlantic's] share of the recovery will not be reduced because [the beneficiary] has not received the full damages claimed, unless [Mid Atlantic] agrees in writing to a reduction." *Ibid.*

The Sereboffs were involved in an automobile accident in California and suffered injuries. Pursuant to the plan's coverage provisions, the plan paid the couple's medical expenses. The Sereboffs filed a tort action in state court against several third parties, seeking compensatory damages for injuries suffered as a result of the accident. Soon after the suit was commenced, Mid Atlantic sent the Sereboffs' attorney a letter asserting a lien on the anticipated proceeds from the suit, for the medical expenses Mid Atlantic paid on the Sereboffs' behalf. App. 87–90. On several occasions over the next 2 1/2 years, Mid Atlantic sent similar correspondence to the attorney and to the Sereboffs, repeating its claim to a lien on a portion of the Sereboffs' recovery, and detailing the medical expenses as they accrued and were paid by the plan.

The Sereboffs' tort suit eventually settled for $750,000. Neither the Sereboffs nor their attorney sent any **[*9]** money to Mid Atlantic in satisfaction of its claimed lien which, after Mid Atlantic completed its payments on the Sereboffs' behalf, totaled $74,869.37.

Mid Atlantic filed suit in District Court under § 502(a)(3) of ERISA, *29 U.S.C. § 1132(a)(3),* seeking to collect from the Sereboffs the medical expenses it had paid on their behalf. Since the Sereboffs' attorney had already distributed the settlement proceeds to them, Mid Atlantic sought a temporary restraining order and preliminary injunction requiring the couple to retain and set aside at least $74,869.37 from the proceeds. The District Court approved a stipulation by the parties, under which the Sereboffs agreed to "preserve $74,869.37 of the settlement funds" in an investment account, "until the [District] Court rules on the merits of this case and all appeals, if any, are exhausted." App. 69.

On the merits, the District Court found in Mid Atlantic's favor and ordered the Sereboffs to pay Mid Atlantic the $74,869.37, plus interest, with a deduction for Mid Atlantic's share of the attorney's fees and court costs the Sereboffs had incurred in state court. See *303 F. Supp. 2d 691, 316 F. Supp. 2d 265 (Md. 2004).* **[*10]** The Sereboffs appealed and the Fourth Circuit affirmed in relevant part. *407 F.3d 212 (2005).* The Fourth Circuit observed that the Courts of Appeal are divided on the question whether *§ 502(a)(3)* authorizes recovery in these circumstances. *See id., at 219–220, n. 7.* n1 We granted certiorari to resolve the disagreement. *546 U.S. ___, 126 S. Ct. 735, 163 L. Ed. 2d 567 (2005).*

> n1 Compare *Administrative Comm. of Wal-Mart Assoc. Health & Welfare Plan v. Willard, 393 F.3d 1119 (CA10 2004), Bombardier Aerospace Employee Welfare Benefits Plan v. Ferrer, Poirot & Wansbrough, 354 F.3d 348 (CA5 2003),* and *Administrative Comm. of Wal-Mart Stores, Inc. v. Varco, 338 F.3d 680 (CA7 2003),* with *Qualchoice, Inc. v. Rowland, 367 F.3d 638 (CA6 2004),* and *Westaff (USA) Inc. v. Arce, 298 F.3d 1164 (CA9 2002).*

II

A

[HN1] A fiduciary may bring a civil action under *§ 502(a)(3)* of ERISA "(A) to enjoin any act or practice which violates **[*11]** any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." *29 U.S.C. § 1132(a)(3).* There is no dispute that Mid Atlantic is a fiduciary under ERISA and that its suit in District Court was to "enforce . . . the terms of " the "Acts of Third Parties" provision in the Sereboffs' plan. The only question is whether the relief Mid Atlantic requested from the District Court was "equitable" under *§ 502(a)(3).*

This is not the first time we have had occasion to clarify the scope of the remedial power conferred on district courts by *§ 502(a)(3)(B).* In *Mertens v. Hewitt Associates, 508 U.S. 248, 113 S. Ct. 2063, 124 L. Ed. 2d 161 (1993),* we construed [HN2] the provision to authorize only "those categories of relief that were *typically* available in equity," and thus rejected a claim that we found sought "nothing other than compensatory *damages.*" *Id., at 255–256, 113 S. Ct. 2063, 124 L. Ed. 2d 161.* We elaborated on this construction of *§ 502(a)(3)(B)* in *Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204, 122 S. Ct. 708, 151 L. Ed. 2d 635 (2002),* **[*12]** which involved facts similar to

those in this case. Much like the "Acts of Third Parties" provision in the Sereboffs' plan, the plan in *Knudson* reserved "'a first lien upon any recovery, whether by settlement, judgment or otherwise,' that the beneficiary receives from [a] third party." *Id.*, at 207, 122 S. Ct. 708, 151 L. Ed. 2d 635. After Knudson was involved in a car accident, Great-West paid medical bills on her behalf and, when she recovered in tort from a third party for her injuries, Great-West sought to collect from her for the medical bills it had paid. *Id.*, at 207-209, 122 S. Ct. 708, 151 L. Ed. 2d 635.

In response to the argument that Great-West's claim in *Knudson* was for "restitution" and thus [HN3] equitable under *§ 502(a)(3)(B)* and *Mertens*, we noted that "not all relief falling under the rubric of restitution [was] available in equity." 534 U.S., at 212, 122 S. Ct. 708, 151 L. Ed. 2d 635. To decide whether the restitutionary relief sought by Great-West was equitable or legal, we examined cases and secondary legal materials to determine if the relief would have been equitable "in the days of the divided bench." *Ibid.* We explained that one feature of equitable restitution was that it sought to impose a constructive [*13] trust or equitable lien on "particular funds or property in the defendant's possession." *Id.*, at 213, 122 S. Ct. 708, 151 L. Ed. 2d 635. That requirement was not met in *Knudson*, because "the funds to which petitioners claimed an entitlement" were not in Knudson's possession, but had instead been placed in a "Special Needs Trust" under California law. *Id.*, at 207, 214, 122 S. Ct. 708, 151 L. Ed. 2d 635. The kind of relief Great-West sought, therefore, was "not equitable — the imposition of a constructive trust or equitable lien on particular property — but legal — the imposition of personal liability for the benefits that [Great-West] conferred upon [Knudson]." *Id.*, at 214, 122 S. Ct. 708, 151 L. Ed. 2d 635. We accordingly determined that the suit could not proceed under *§ 502(a)(3)*. *Ibid.*

That impediment to characterizing the relief in *Knudson* as equitable is not present here. As the Fourth Circuit explained below, in this case Mid Atlantic sought "specifically identifiable" funds that were "within the possession and control of the Sereboffs" — that portion of the tort settlement due Mid Atlantic under the terms of the ERISA plan, set aside and "preserved [in the Sereboffs'] investment accounts." 407 F.3d, at 218. [*14] Unlike Great-West, Mid Atlantic did not simply seek "to impose personal liability . . . for a contractual obligation to pay money." *Knudson*, 534 U.S., at 210, 122 S. Ct. 708, 151 L. Ed. 2d 635. It alleged breach of contract and sought money, to be sure, but it sought its recovery through a constructive trust or equitable lien on a specifically identified fund, not from the Sereboffs' assets generally, as would be the case with a contract action at law. [HN4] ERISA

provides for equitable remedies *to enforce plan terms*, so the fact that the action involves a breach of contract can hardly be enough to prove relief is not equitable; that would make *§ 502(a)(3)(B)(ii)* an empty promise. This Court in *Knudson* did not reject Great-West's suit out of hand because it alleged a breach of contract and sought money, but because Great-West did not seek to recover a particular fund from the defendant. Mid Atlantic does.

B

While Mid Atlantic's case for characterizing its relief as equitable thus does not falter because of the nature of the recovery it seeks, Mid Atlantic must still establish that the basis for its claim is equitable. See *id.*, at 213, 122 S. Ct. 708, 151 L. Ed. 2d 635 [HN5] (whether remedy "is legal or equitable depends [*15] on 'the basis for [the plaintiff 's] claim' and the nature of the underlying remedies sought"). Our case law from the days of the divided bench confirms that Mid Atlantic's claim is equitable. In *Barnes v. Alexander*, 232 U.S. 117, 34 S. Ct. 276, 58 L. Ed. 530 (1914), for instance, attorneys Street and Alexander performed work for Barnes, another attorney, who promised them a "one-third of the contingent fee" he expected in the case. *Id.*, at 119, 34 S. Ct. 276, 58 L. Ed. 530. In upholding their equitable claim to this portion of the fee, Justice Holmes recited "the familiar rule of equity that [HN6] a contract to convey a specific object even before it is acquired will make the contractor a trustee as soon as he gets a title to the thing." *Id.*, at 121, 34 S. Ct. 276, 58 L. Ed. 530. On the basis of this rule, he concluded that Barnes' undertaking "created a lien" upon the portion of the monetary recovery due Barnes from the client, *ibid.*, which Street and Alexander could "follow . . . into the hands of . . . Barnes," "as soon as [the fund] was identified," *id.*, at 123, 34 S. Ct. 276, 58 L. Ed. 530.

Much like Barnes' promise to Street and Alexander, the "Acts of Third Parties" provision in the Sereboffs' plan specifically identified [*16] a particular fund, distinct from the Sereboffs' general assets — "all recoveries from a third party (whether by lawsuit, settlement, or otherwise)" — and a particular share of that fund to which Mid Atlantic was entitled — "that portion of the total recovery which is due [Mid Atlantic] for benefits paid." App. to Pet. for Cert. 38a. Like Street and Alexander in *Barnes*, therefore, Mid Atlantic could rely on a "familiar rule of equity" to collect for the medical bills it had paid on the Sereboffs' behalf. *Barnes, supra*, at 121, 34 S. Ct. 276, 58 L. Ed. 530. This rule allowed them to "follow" a portion of the recovery "into the [Sereboffs'] hands" "as soon as [the settlement fund] was identified," and impose on that portion a constructive trust or equitable lien. 232 U.S., at 123, 34 S. Ct. 276, 58 L. Ed. 530.

The Sereboffs object that Mid Atlantic's suit would not

have satisfied the conditions for "equitable restitution" at common law, particularly the "strict tracing rules" that allegedly accompanied this form of relief. Reply Brief for Petitioners 8. When an equitable lien was imposed as restitutionary relief, it was often the case that an asset belonging to the plaintiff had been improperly acquired [*17] by the defendant and exchanged by him for other property. A central requirement of equitable relief in these circumstances, the Sereboffs argue, was the plaintiff 's ability to "'trace' the asset into its products or substitutes," or "trace his money or property to some particular funds or assets." 1 D. Dobbs, Law of Remedies § 4.3(2), pp. 591, n. 10, 592 (2d ed. 1993).

But as the Sereboffs themselves recognize, [HN7] an equitable lien sought as a matter of restitution, and an equitable lien "by agreement," of the sort at issue in *Barnes*, were different species of relief. See Brief for Petitioners 24–25; Reply Brief for Petitioners 11; see also 1 Dobbs, *supra*, § 4.3(3), at 601; 1 G. Palmer, Law of Restitution § 1.5, p. 20 (1978). *Barnes* confirms that no tracing requirement of the sort asserted by the Sereboffs applies to equitable liens by agreement or assignment: The plaintiffs in *Barnes* could not identify an asset they originally possessed, which was improperly acquired and converted into property the defendant held, yet that did not preclude them from securing an equitable lien. To the extent Mid Atlantic's action is proper under *Barnes*, therefore, its asserted [*18] inability to satisfy the "strict tracing rules" for "equitable restitution" is of no consequence. Reply Brief for Petitioners 8.

The Sereboffs concede as much, stating that they "do not contend — and have never suggested — that any tracing was historically required when an equitable lien was imposed *by agreement.*" *Id.,* at 11. Their argument is that such tracing was required when an equitable lien was "predicated on a theory of *equitable restitution.*" *Ibid.* The Sereboffs appear to assume that *Knudson* endorsed application of all the restitutionary conditions — including restitutionary tracing rules — to every action for an equitable lien under *§ 502(a)(3).* This assumption is inaccurate. *Knudson* simply described in general terms the conditions under which a fiduciary might recover when it was seeking equitable restitution under a provision like that at issue in this case. There was no need in *Knudson* to catalog all the circumstances in which equitable liens were available in equity; Great–West claimed a right to recover in restitution, and the Court concluded only that equitable restitution was unavailable because the funds sought were not in Knudson's [*19] possession. *534 U.S., at 214, 122 S. Ct. 708, 151 L. Ed. 2d 635.*

The Sereboffs argue that, even under *Barnes*, equitable relief would not have been available to fiduciaries relying on plan provisions like the one at issue here, because when the beneficiary agrees to such a provision "no third–party recovery" exists which the beneficiary can "place . . . beyond his control and grant [the fiduciary] a complete and present right therein." Brief for Petitioners 25–26 (internal quotation marks omitted). It may be true that, [HN8] in contract cases, equity originally required identification at the time the contract was made of the fund to which a lien specified in the contract attached. See, *e.g., Trist v. Child, 88 U.S. 441, 21 Wall. 441, 447, 22 L. Ed. 623 (1875)* ("[A] mere agreement to pay out of such fund is not sufficient. Something more is necessary. There must be an appropriation of the fund *pro tanto*"). But *Barnes* explicitly disapproved of this rule, observing that *Trist* addressed the issue only in dicta (since the contract containing the lien provision in *Trist* was illegal), and treating the "question as at large," even in light of earlier opinions that had dealt with it head on. *Barnes, supra, at 120, 34 S. Ct. 276, 58 L. Ed. 530* [*20] (citing *Trist, supra; Christmas v. Russell, 81 U.S. 69, 14 Wall. 69, 20 L. Ed. 762 (1872); Wright v. Ellison, 68 U.S. 16, 1 Wall. 16, 17 L. Ed. 555 (1864)).*

Apart from those cases, which *Barnes* discredited, the Sereboffs offer little to undermine the plain indication in *Barnes* that [HN9] the fund over which a lien is asserted need not be in existence when the contract containing the lien provision is executed. See 4 S. Symons, Pomeroy's Equity Jurisprudence § 1236, pp. 699–700 (5th ed. 1941) ("An agreement to charge, or to assign . . . property not yet in existence," although "creating no legal estate or interest in the things when they afterwards come into existence . . . does constitute an equitable lien upon the property" just as would "a lien upon specific things existing and owned by the contracting party at the date of the contract"); *Peugh v. Porter, 112 U.S. 737, 742, 5 S. Ct. 361, 28 L. Ed. 859 (1885)* ("In contemplation of equity, [it] is not material" that the "very fund now in dispute" was "not . . . in existence" when an equitable lien over that fund was created). Indeed, the most they can muster in this regard are several state cases predating *Barnes* and a single [*21] decision that rests, contrary to the Sereboffs' characterization, on the simple conclusion that a contractual provision purporting to secure an equitable lien did not properly do so. See Brief for Petitioners 26; Reply Brief for Petitioners 12; *Taylor v. Wharton, 43 App. D.C. 104, 1915 U.S. App. LEXIS 2577 (1915).*

The Sereboffs finally fall back on the argument that *Barnes* announced a special rule for attorneys claiming an equitable lien over funds promised under a contingency fee arrangement. Outside of this context, they say, the "typical rules regarding equitable liens by assignment" persisted and would have prevented recovery here. Reply Brief for Petitioners 13.

But *Barnes* did not attach any particular significance to the identity of the parties seeking recovery. See *232 U.S., at 119, 34 S. Ct. 276, 58 L. Ed. 530.* And as *Barnes* itself makes clear, other cases of this Court — not involving attorneys' contingency fees — apply the same "familiar rule of equity that a contract to convey a specific object even before it is acquired will make the contractor a trustee as soon as he gets a title to the thing." *Id., at 121, 34 S. Ct. 276, 58 L. Ed. 530.* In *Walker v. Brown, 165 U.S. 654, 17 S. Ct. 453, 41 L. Ed. 865 (1897),* [*22] for instance, the Court approved an equitable lien over municipal bonds transferred to a company to facilitate its business. When a supplier of the company suspended shipments because of delinquent debts, the individual who had transferred the bonds assured the supplier that "'any indebtedness that they may be owing you at any time, shall be paid before the return to me of these bonds . . . and that these bonds . . . are at the risk of the business of [the company], so far as any claim you may have against [it]." *Id., at 663, 17 S. Ct. 453, 41 L. Ed. 865.* The Court found that this undertaking created an equitable lien on the bonds, which the supplier could enforce against the individual after the bonds had been returned to him when the company became insolvent. *Id., at 666, 17 S. Ct. 453, 41 L. Ed. 865.* As in *Barnes,* the Court resolved the case by applying general equitable principles, stating that [HN10] "to dedicate property to a particular purpose, to provide that a specified creditor and that creditor alone shall be authorized to seek payment of his debt from the property or its value, is unmistakably to create an equitable lien." *165 U.S., at 666, 17 S. Ct. 453, 41 L. Ed. 865.*

## C

Shifting gears, the Sereboffs contend [*23] that the lower courts erred in allowing enforcement of the "Acts of Third Parties" provision, without imposing various limitations that they say would apply to "truly equitable relief grounded in principles of subrogation." Reply Brief for Petitioners 5. According to the Sereboffs, they would in an equitable *subrogation* action be able to assert certain equitable defenses, such as the defense that subrogation may be pursued only after a victim had been made whole for his injuries. *Id.,* at 5–6. Such defenses should be available against Mid Atlantic's action, the Sereboffs claim,

despite the plan provision that "[Mid Atlantic's] share of the recovery will not be reduced because [the beneficiary] has not received the full damages claimed, unless [Mid Atlantic] agrees in writing to a reduction." App. to Pet. for Cert. 38a.

But Mid Atlantic's claim is not considered equitable because it is a subrogation claim. As explained, Mid Atlantic's action to enforce the "Acts of Third Parties" provision qualifies as an equitable remedy because it is indistinguishable from an action to enforce an equitable lien established by agreement, of the sort epitomized by our decision in *Barnes* [*24] . See 4 Palmer, Law of Restitution § 23.18(*d*), at 470 [HN11] (A subrogation lien "is not an express lien based on agreement, but instead is an equitable lien impressed on moneys on the ground that they ought to go to the insurer"). Mid Atlantic need not characterize its claim as a freestanding action for equitable subrogation. Accordingly, the parcel of equitable defenses the Sereboffs claim accompany any such action are beside the point. n2

> n2 The Sereboffs argue that, even if the relief Mid Atlantic sought was "equitable" under *§ 502(a)(3),* it was not "appropriate" under that provision in that it contravened principles like the make-whole doctrine. Neither the District Court nor the Court of Appeals considered the argument that Mid Atlantic's claim was not "appropriate" apart from the contention that it was not "equitable," and from our examination of the record it does not appear that the Sereboffs raised this distinct assertion below. We decline to consider it for the first time here. See *NCAA v. Smith, 525 U.S. 459, 470, 119 S. Ct. 924, 142 L. Ed. 2d 929 (1999).*

[*25]

* * *

Under the teaching of *Barnes* and similar cases, Mid Atlantic's action in the District Court properly sought "equitable relief " under *§ 502(a)(3);* the judgment of the Fourth Circuit is affirmed in relevant part.

It is so ordered.