## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

KELLY ROARTY                               :
                                           :
        Plaintiff,                         :
                                           :
    v.                                     :        C.A. No.  06-195 GMS
                                           :
TYCO INTERNATIONAL LTD. GROUP      :
BUSINESS TRAVEL ACCIDENT                   :
INSURANCE PLAN, an employee                :
welfare benefit plan, and                  :
LIFE INSURANCE COMPANY OF                  :
NORTH AMERICA, Plan Administrator,    :
                                           :
        Defendants.                        :

## PLAINTIFF'S ANSWERING BRIEF IN OPPOSITION TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER TO LIMIT DISCOVERY TO THE ADMINISTRATIVE RECORD

Richard R. Wier, Jr. (#716)
RICHARD R. WIER, JR., P.A.
Two Mill Road, Suite 200
Wilmington, DE 19806
(302)888-3222

Dated: October 27, 2006

## <u>TABLE OF CONTENTS</u>

TABLE OF CITATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ii

NATURE AND STAGE OF PROCEEDINGS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

## TABLE OF CITATIONS

**Cases**

*Bill Gray Enterprises, Inc. Health and Welfare Plan v. Gourley,*
2001 U.S. App. LEXIS 7922 (3d Cir. April 26, 2001)..................................................................10

*Dinote v. United of Omaha,* 1991 U.S. Dist. LEXIS 14429
(E.D. Pa. July 29, 2004).............................................................................................................15

*Freccia v. Conectiv,* 2004 U.S. Dist. LEXIS 23894
(D. Del. Nov. 29, 2004).........................................................................................................15, 16

*Geddes v. United Staffing,* 2005 U.S. Dist. LEXIS 4758
(U.S. Dist. Utah. Mar. 23, 2005)........................................................................................10, 14, 15

*Koshiba v. Merck,* 2004 U.S. App. LEXIS 19164 (3d Cir. Sept. 13, 2004)..................................17

*Pinto v. Reliance Standard Life Insurance Company,*
2000 U.S. App. LEXIS 11983 ( 3d Cir. May 31, 2000).........................................................15, 17

**Rules**

FED. R. CIV. P. 26 (c)..............................................................................................................8, 9

D. Del. LR. 37.1 .............................................................................................................................8

## NATURE AND STAGE OF PROCEEDINGS

This action was filed on March 23, 2006 by Plaintiff, Kelly Roarty, against Defendants Tyco International Limited Group Business Travel Accident Insurance Plan ["Tcyo Plan"] and Life Insurance Company of North America [LINA].  (D.I. # 1).  In her Complaint, Plaintiff asserts three causes of action as a result of her husband's accidental death on August 8, 2004 and the Defendants' determination to deny insurance benefits.  Count I alleges that Defendants have wrongly denied her benefits under the Tyco Plan, which is a plan protected by the Employee Retirement Income Security Act of 1974, as amended (hereinafter "ERISA") .  Count II alleges that Defendant LINA breached its fiduciary duties owed to Plaintiff under ERISA.  Count III alleges a state law breach of contract claim against both defendants.

On August 31, 2006, this Court entered a Scheduling Order, which set, inter alia, discovery to be completed by February 28, 2007 and trial to begin on July 30, 2007.

On September 15, 2006, Defendants filed a Motion for Protective Order to Limit Discovery to the Administrative Record.

This is Plaintiff's Answering Brief in opposition to that motion.

## SUMMARY OF ARGUMENT

1.  Defendants' Motion to prevent any discovery should be denied because it is not in accordance with the Federal Rules or this Court's Local Rules which favor broad discovery and which require that the person seeking to prevent discovery identify the request(s) to which there is an objection and the reasons for the objection.

2.  Defendants' Motion to prevent discovery should be denied because it erroneously alleges that the standard of review is not de novo. The standard of review is de novo because the terms of the Plan are ambiguous and LINA delegated its fiduciary responsibilities under the Plan to Tyco to determine eligibility for the Plan benefit. Under the de novo standard, the administrative record may be supplemented.

3.  Defendants' Motion to prevent discovery should be denied because even under a heightened arbitrary and capricious standard discovery is permissible to review and discover the evidence that was available and/or accessible to the Plan Administrator.

4.  Defendants' Motion to prevent discovery should be denied because there are independent claims against Tyco which warrant discovery.

## STATEMENT OF FACTS

Tyco International Ltd. (Tyco) is an international company that provides, *inter alia*, electronic security and fire protection solutions in over 100 countries. Its products and services are used towards safeguarding firefighters, preventing fires, deterring thefts and protecting people and property. Scott Instruments, a subdivision of Tyco, is one of the largest manufacturers of fixed and portable toxic and combustible gas, heat, and flame detectors in the world. (Complaint ¶ 6).

In early 2004, Tyco contracted with a production plant in Pittsburgh, Pennsylvania (the Bacharach Plant) for production of sensor equipment. The sensors were to be delivered to Tyco on April 20, 2004 so that it could distribute them to its customers. (Complaint ¶ 7).

In late June 2004, one of Tyco's customers began complaining that the senors that had been ordered from the Bacharach Plant were overdue. Although Tyco made repeated attempts, it was unable to obtain satisfactory answers from the Bacharach Plant about when the sensors would be available. In July 2004, the situation was brought to the attention of Bob Bierzynski, who was Mr. Roarty's supervisor, and who requested that Mr. Roarty attempt to rectify the problem. (Complaint ¶ 8).

By late July 2004, the delay was causing complaints to escalate, and other customers of Tyco, including the City of New York, began threatening to stop using Tyco's services. (Complaint ¶ 9).

On July 30, 2004, Mr. Roarty advised by e-mail, his supervisor and others in senior management that he would "go into the Bacharach Plant and find out why the sensor is taking so long to build." Mr. Roarty made arrangements to visit the Bacharach Plant the following week

since he was beginning a vacation on July 30, 2004 and was going to be in Pittsburgh. (Complaint ¶ 10).

In order to visit the Bacharach Plant, Mr. Roarty altered his vacation plans. Originally, Mr. Roarty was going to drive with his wife and family in one car and leave sometime during the week of August 2, 2004. Instead, Mr. Roarty drove a separate car so that he could spend as much time as necessary at the Bacharach Plant dealing with this important business problem. He departed earlier than planned, departing for Pittsburgh on August 2, 2004 so he would have time to deal with the issues at the Bacharach Plant. Since he was traveling on business, Mr. Roarty brought with him his laptop, briefcase and cell phone. (Complaint ¶ 11).

Mr. Roarty arranged a meeting at the Bacharach Plant for August 3, 2004. This meeting was scheduled for himself, another Tyco employee and the Regional Manager for Scott Instruments, and two members of management at the Bacharach Plant, in order to discuss delivery and production of the sensors. While Mr. Roarty was driving to Pittsburgh, the meeting was rescheduled for August 5, 2004. (Complaint ¶ 12).

After Mr. Roarty arrived in Pittsburgh, an agreement was reached between Tyco and the Bacharach Plant, on August 4, 2004, on production dates, so the meeting was cancelled and Mr. Roarty was advised accordingly. Mr. Roarty, however, continued to make business phone calls. (Complaint ¶ 13).

Mr. Roarty remained in Pittsburgh and continued to conduct business on behalf of Tyco. After attending a wedding, which was on August 7, 2004, he began the journey home to Newark, Delaware on August 8, 2004. (Complaint ¶ 14).

On August 8, 2004, in the Commonwealth of Pennsylvania at approximately 3:48 p.m,

4

while traveling home, the driver of a small sport truck failed to stop for a stop sign and collided

with Mr. Roarty's vehicle, forcing Mr. Roarty's vehicle about seventy feet from the point of

impact.  Mr. Roarty was pronounced dead at the scene of the collision.  (Complaint ¶ 15).

## THE ADMINISTRATIVE PROCESS

Defendant Tyco International Ltd. Business Travel Accident Insurance Plan ("The Tyco

Plan") is an employee welfare benefit plan within the meaning of ERISA, which is provided by

Tyco.  As an employee of Tyco, Mr. Roarty was a participant in the Plan, which provided for a

$500,000 accidental death benefit for its employees who die accidentally while traveling on

business.  (Complaint ¶ 4).

Defendant LINA is the Plan Administrator of the Plan, and the underwriting company for

the Plan.  Claims under the Plan are administered through Cigna Group Insurance.  Cigna Group

Insurance claim services are provided exclusively by underwriting subsidiaries, *inter alia*, LINA.

(Complaint ¶ 5).  Defendants admit that LINA is the underwriting company of the Plan and the

Plan's Claims Fiduciary, and further admits that its claim services are provided exclusively

through its underwriting subsidiaries, including LINA.  (Answer ¶ 5).

On September 3, 2004, as the named primary beneficiary in the Tyco Plan , Mrs. Roarty

filed a claim for benefits, and provided the necessary information and documentation, which

included, a certified copy of Mr. Roarty's Death Certificate, the police crash report and a

newspaper article reporting the crash and death.  (Complaint ¶ 16).

On November 18, 2004, Felicia Johnson, the Life Claims Coordinator for Tyco, sent Mrs.

Roarty's claim to Cigna Group Insurance, along with the documentation provided by Mrs.

Roarty.  (Complaint ¶ 17).

On December 17, 2004, Cigna wrongfully denied Mrs. Roarty's claim alleging that Mr. Roarty was not on an authorized business trip at the time of his death. Cigna stated that, Nicole Gibian, an employee in the Human Resources Department of Tyco, in Boca Raton, Florida, provided it with a brief letter stating "Please use this letter as clarification that Mr. Roarty was NOT on business travel at the time of the accident that caused his death." Cigna did no further investigation. (Complaint ¶ 18).

On February 12, 2005, Mrs. Roarty appealed Cigna's decision, and provided documentation, including Mr. Roarty's July 30, 2004 e-mail, that established that his trip to Pittsburgh was an authorized business trip. (Complaint ¶ 19).

After receiving Mrs. Roarty's appeal, Cigna attempted to contact Nicole Gibian, the HR representative in Tyco's Florida office, who originally had stated that Mr. Roarty was not on an authorized business trip. Ms. Gibian, however, was no longer employed with Tyco. Cigna, therefore, attempted "to reach another representative at the group to verify that they are comfortable with their original statement." (Complaint ¶ 20).

On March 11, 2005, Cigna received a phone call from Felicia Johnson, another employee in the Human Resources Department of Tyco, in Boca Raton, Florida. Ms. Johnson advised Cigna that Mr. Roarty was not on business travel at the time of his death, but she would have Mr. Roarty's office, Tyco, fax a statement confirming that he was on a personal vacation at the time of the accident and that Cigna would receive it the following week. (Complaint ¶ 20).

Cigna, however, never received any such statement. (Complaint ¶ 20).

On March 24, 2005, without any further investigation, and solely relying upon the Florida HR employee's incorrect and uncorroborated claim, LINA, acting through Cigna denied Mrs.

Roarty's appeal.  (Complaint ¶ 21).

# ARGUMENT

## I. THE MOTION FOR A PROTECTIVE ORDER IS WITHOUT MERIT

### A. THE MOTION IS PROHIBITED BY THIS COURT'S RULES

The Defendants Tyco International, Ltd. Group Business Travel Accident Insurance Plan ("Tyco") and Life Insurance Company of North America ("LINA") Motion for a Protective Order seeks to prohibit any and all discovery, before any has been filed. *See* Defendants' Brief at 5-8, *Roarty* (No. 06-0195-GMS). Defendants' Motion is prohibited by Federal Rule of Civil Procedure 26 (c). It, therefore, fails to meet the requirements of Fed. R. Civ. P. 26 (c) which requires that the party "from whom discovery is sought" submit " a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action." There is no basis in the Federal Rules to prevent discovery <u>in toto or in futuro</u> . This Court's Local Rules require that in a motion under Fed. R. Civ. P. 26 that the motion "shall include, in the motion itself or in a memorandum, a verbatim recitation of each interrogatory, request, answer, response, and objection which is the subject of the motion or shall have attached a copy of the actual discovery document which is the subject of the motion." D. Del. LR. 37.1.

The Defendants claim that "the discovery that Plaintiff appears to seek now" is irrelevant. Def. Br. at 7. Defendants claim that "Plaintiff does not seek the type of highly limited discovery that the Third Circuit would allow." *Id.* This Court entered a Scheduling Order and the parties identified in their mandatory disclosures persons who might have discoverable information. In

addition, this Court entered a Scheduling Order which specifically addressed the mechanism for handling discovery disputes.  Filing a blanket, unsupported, motion to prevent discovery is not part of that mechanism and ignores the provisions of the Federal Rules that "parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party, including the existence, description, nature, custody, condition, and location of any books, documents, or tangible things and the identity and location of person having knowledge of any discoverable matter." Fed. R. Civ. P. 26 (c).

Defendants have not, and cannot, establish any undue burden or expense as required by Fed. R. Civ. P. 26 (c).  As will be discussed, discovery is permitted whether the standard of review is a _de novo_ standard or a heightened arbitrary or capricious standard.  Under a _de novo_ standard evidence outside the record is considered by the Court.

**H. DE NOVO REVIEW IS THE APPROPRIATE STANDARD OF REVIEW AND EVIDENCE OUTSIDE THE ADMINISTRATIVE RECORD IS RELEVANT.**

Tyco International Ltd. contracted with the Life Insurance Company of North America (LINA) to provide benefits to its employees who were involved in accidents while traveling on business away from the premises of Tyco. *See* Exhibit A, B (AR0001, AR0022).

The Plan is ambiguous because it does not define when a trip is "authorized" by Tyco which was a qualification for benefits under the Plan. *See* Exhibit A (AR0002).

"Under the de novo standard of review, the Court considers the relevant documents in the record to determine the proper interpretation of the disputed provision in [the Plan]. The Supreme Court has held that any ambiguities in an ERISA plan must be construed against the employer, as the drafter of the disputed document, in accordance with trust and contract principles of construction." *Geddes v. United Staffing*, 2005 U.S. Dist. LEXIS 4758, at * 30 ( U.S. Dist. Utah. Mar. 23, 2005).

"Whether terms in an ERISA Plan document are ambiguous is a question of law. A term is 'ambiguous if it is subject to reasonable alternative interpretations.'"*Bill Gray Enterprises, Inc. Health and Welfare Plan v. Gourley,* 2001 U.S. App.. LEXIS 7922, at *26 (3d Cir. 2001). [I]f the plain language leads to two reasonable interpretations, courts may look to extrinsic evidence to resolve any ambiguities in the plan document."*Id.*

The Plan covers the employee "for any accident which occurs anywhere in the world while a covered person, on a business trip, is traveling... away from your premises and on business for you and in the course of your business.  All such trips must be authorized by you." *See* Exhibit B (AR0002).  It does not cover "personal deviations"...which "means an activity that

10

is not reasonably related to your business, and not incidental to the business trip." *Id.*

"Authorized" is not defined nor does  the definition of "covered accident" or "covered loss" require or state that the business trip must be authorized by the employer, Tyco. *See* Exhibit C (AR0014).  The definition of covered accident is ambiguous because it says that the accident "is not otherwise excluded under the terms of this Policy." *Id.*

The Plan provides that "the Plan Administrator...has appointed the Insurance Company as the Plan fiduciary under federal law for the review of claims for benefits provided by this Policy and for deciding appeals of denied claims. In this role the Insurance Company shall have the authority, in its discretion, to interpret the terms of the Plan documents, to decide questions of eligibility for coverage or benefits under the Plan, and to make any related findings of fact.  All decisions made by the Insurance Company in this capacity shall be final and binding on Participants and Beneficiaries of The Plan to the full extent permitted by law... The Insurance Company has no fiduciary responsibility with respect to the administration of The Plan except as described above."*See* Exhibit D (AR0022).

LINA mistakenly cites to (AR0036), Exhibit Two, as the Plan language which is not applicable to this claim because that page only applies to residents of New Hampshire. *See* Exhibit E (AR0035 and AR0036).

In this case, LINA delegated its fiduciary responsibilities to  Tyco in determining whether the accident which took Daniel Roarty's life was "authorized." In its initial denial of the claim it relied exclusively upon a statement from Tyco. "We contacted Tyco, Mr. Roarty's employer, to verify that he was on an authorized business trip at the time of his death as required by policy ABL 661690. We received a brief letter dated 12/15/04 from Nicole Gibian, Human

Resources, stating 'Please use this letter as clarification that Mr. Roarty was NOT on business travel at the time of the accident that caused his death." *See* Exhibit F (AR0116). LINA did not receive any basis for that position and all of the evidence submitted to it on the appeal established that he traveled in his own car for purposes of business. Indeed, LINA failed to follow up on the statement in that December 15, 2004 "Interoffice Memorandum: that "If you need additional information, please contact Felicia Johnson at the HRSC, 800-924-8518." *See* Exhibit G (AR0130).

On February 12, 2005 Plaintiff, the widow of Mr. Roarty and a beneficiary of the Plan (AR0084) et. seq., filed an appeal of the above denial. She was not provided any other basis for the denial other than the position of Tyco that "Mr.Roarty was not on a business travel at the time of the accident that caused his death." *See* Exhibit H (AR0084). The denial and position of Tyco, did not address the claim and misled the Plaintiff as to what she needed to submit on appeal. The letter from Tyco did not say that the trip was unauthorized. Nor did the letter from Tyco (AR0130) even address the circumstances of the trip or provide any evidence as to whether the initial trip was a business trip- he went out on business in a separate car and had to return from that trip when the accident occurred. *See* Exhibit G (AR0130). The unsupported statement that he was not on business travel "at the time of the accident that caused his death" did not focus on the business reasons for the initial trip in his own car. LINA simply took Tyco's ambiguous one line statement as dispositive. *Id.*

On February 28, 2005 the LINA decision maker in an in-house e-mail (AR0079), stated that "we denied this claim originally as the employer stated that our insured was not on a business trip. However, the person who provided that statement to us is no longer employed with

the group. I am attempting to reach another representative at the group to verify that they are comfortable with their original statement:" *See* Exhibit I (AR0079). [Emphasis].

In response to that e-mail Robert Killmer, who handled the claim on behalf of LINA was told that "the other test for 'travel' is whether or not this trip was eligible for expense reimbursement from his employer (including miles and lodging)."*Id*. LINA did not address this issue and never asked Tyco whether Mr. Roarty's trip was eligible for reimbursement.

On March 1, 2005 the LINA representative, Robert Killmer, prepared an intra office telephone log stating that " I called her [Felicia Johnson] to verify that Tyco continues to maintain that Daniel Roarty was not on a company authorized business trip at the time of the claimed accident. I reached her voice mail. She is out of the office until 3/3. I left a message for a return call." *See* Exhibit J (AR0078).[Emphasis].

On March 11, 2005 Mr. Killmer prepared another telephone log stating that "She [Felicia Johnson] called me regarding my request for confirmation that Mr. Roarty was not on an approved business trip at the time of his automobile crash and death. She stated again that Mr. Roarty was not on business travel at that time. However, she stated that she has contacted the office where he worked and has asked that they fax another statement to confirm the fact that he was on a personal vacation at the time of the claimed. accident. She stated that I should expect to receive that letter within the next week or so." *See* Exhibit K (AR0076). [Emphasis].

On that same day, Mr. Killmer wrote to Plaintiff and said that "Currently, I am awaiting some additional information from Tyco International regarding Daniel Roarty's status as of the date of the claimed accident that took his life. Once I have the requested information, I will again review the information in your file and the applicable policy." *See* Exhibit L

(AR0075).[Emphasis].

LINA never received any other information from Tyco and did not receive any information from Tyco that was referenced in the March 11, 2205 telephone log or in the March letter to Mrs. Roarty. *Id.*, *See also* Exhibit K (AR0076). LINA never received any information from Tyco as to whether the trip was eligible for reimbursement.

On March 24, 2005 LINA deliberately misled Mrs. Roarty when it denied her appeal. It had advised her that it was waiting for information from Tyco. *See* Exhibit M (AR0065). It did not receive or inquire about that information. It did not receive, as Tyco said it would obtain, "another statement to confirm the fact that he was on a personal vacation at the time of the claimed accident." *See* Exhibit K (AR0076). It did not receive any information from Tyco as to whether the trip was eligible for reimbursement. It denied her claim, falsely stating: "Felicia Johnson from Tyco verified once more, on March 11, 2005, that Mr. Roarty was not considered to be on business travel from Tyco International at the time of his motor vehicle accident, on August 8, 2004. No expenses or accommodations appear to have been reimbursed to Mr. Roarty by Tyco for his travel." *See* Exhibit N (AR0066). [Emphasis].

In this case de novo review of LINA's decision is appropriate because it delegated its fiduciary responsibilities to Tyco to determine whether Mr. Roarty's trip was a business trip in accordance with the plan. "If a trustee fails to act or to exercise his or her discretion, de novo review is appropriate because the trustee has forfeited the privilege to apply his or her discretion; it is the trustee's analysis, not his or her right to use discretion or a mere arbitrary denial, to which a court should defer." *Geddes*, 2005 U.S. Dist. LEXIS 4758, at *13.

14

"The court may, when reviewing a plan administrator's decision under a <u>de novo</u> standard,'supplement the administrative record ' when circumstances clearly establish that additional evidence is necessary to conduct an adequate de novo review of the benefit decision.'" *Id* at *31.

## C   UNDER A HEIGHTENED ARBITRARY AND CAPRICIOUS STANDARD DISCOVERY IS PERMITTED

Even under an arbitrary and capricious standard "in measuring the degree of scrutiny, courts may take into account the following factors: (1) sophistication of the parties, (2) the information <u>accessible to the parties</u>, (3) the exact financial arrangement between the insurer and the company, and(4) the current financial status of the fiduciary." *Dinote v. United of Omaha,* 1991 U.S. Dist. LEXIS 14429, at *12 ( E.D. Pa. July 29, 2004).

This Court has reviewed discovery in reviewing a decision under the heightened arbitrary and capricious standard., *Freccia v. Conectiv,* 2004 U.S. Dist. LEXIS 23894, at *12 ( D. Del. 2004).  That standard applies "where the administrator's decision is potentially clouded by a conflict of interest , such as where a plan administrator also funds the plan it administers," *Id.* at *8.  Even under that standard, which is applicable to this case, since LINA had a conflict of interest in that it funded the plan and administered the plan, *Pinto v. Reliance Standard Life Insurance Company,* 2000 U.S. App. LEXIS 11983, at *3 ( 3d Cir. 2000), assuming <u>arguendo</u> that the <u>de novo</u> standard does not apply, " the court...must 'look not only at the result-whether it is supported by reasons- but at the process by which the result was achieved.'" *Freccia,* 2004 U.S. Dist. LEXIS 23894, at *11.

"The court may consider all evidence available to Conectiv during the entire appeals process." *Id.* at *12. [emphasis].  Part of the inquiry is to review what evidence was available that supported the decision and what evidence supported a denial of the decision, *Id* "the court need not accept the decision if the administrator uses a self-serving approach to the evidence that selectively relies upon the evidence that supports a denial of benefits, but rejects the evidence that supports the granting of benefits."*Id.*  "Ultimately, however, the inquiry is fact specific and must be considered under the totality of the circumstances,"*Id.* at *13.  "If a term is vague, however, the court may look to evidence that was not before the administrator for assistance in interpreting the plan..." *Id.* at *15.  As discussed, the terms of the Plan are ambiguous since "authorized"  is not defined and since a different interpretation of a business trip, such as whether it was eligible for reimbursement, was available to the administrator but he failed to consider or inquire into it.

In this case, the administrator advised the Plaintiff that he was waiting for additional information from Tyco and Tyco advised him that it would obtain that information.  The administrator not only did not obtain that information, he lied to the Plaintiff about the information he had received.  He advised her that he was waiting for that information and then he went ahead and denied her claim without reviewing that information; falsely stating that he had received information from Tyco that confirmed he was not on a business trip and that the trip was not eligible for reimbursement. The information was "accessible" to him and Plaintiff is entitled to conduct discovery into the circumstances of the business trip and its authorization. The Court's "heightened degree of scrutiny because of the financial conflict... allows [the court] to take notice of discrete factors suggesting that a conflict may have influenced the administrator's

16

decision" such as selectively manipulating or considering the evidence to justify a denial. *Pinto*,

2000 U.S. App. LEXIS 11983, at *5. This demonstrated procedural irregularity, bias or

unfairness in the review of this claim provides a basis for heightened review, *Koshiba v. Merck*,

2004 U.S. App. LEXIS 19164, at *1 (3d Cir. Sept. 13, 2004).

## D.  DEFENDANT'S MOTION IS WITHOUT MERIT BECAUSE DISCOVERY IS RELEVANT TO CLAIMS AGAINST TYCO.

Defendants LINA ignores the fact that there are claims against Tyco under ERISA and the

Covenant of Good Faith and Fair Dealing and Plaintiff is entitled to discovery from those at Tyco

as it relates to their investigation into whether the trip was authorized and the information they

supplied or withheld from LINA.   For example, the communications with LINA were not based

upon any review or elaboration of the facts as it relates to the trip.  There was no evidence

submitted to LINA by Tyco justifying the terse and ambiguous statements second hand from an

HR representative.  In addition, Tyco advised LINA that it was going to provide information to it

from its HR department and either it did not do so or it did so and LINA selectively ignored it.

Since Tyco is the Plan Sponsor it owed a fiduciary responsibility to Plaintiff and its

deceased employee, to do a due diligence into the issue as to whether he was on a covered

business trip at the time of his death.  Discovery into what happened in Pittsburgh and

communications with the plant and the emails and phone calls he made to and from work would

all apply to whether he was on a covered trip. In addition, whether the trip was eligible for

reimbursement and the procedures at Tyco for approval of such business trips and its past

17

practices in authorizing business trips are all matters relevant to the claims against Tyco.

Under ERISA,  Tyco as the Plan Sponser had a fiduciary obligation to investigate the circumstances of the business trip and to provide complete and accurate conclusions as to whether the trip complied with the Plan and/or with its procedures and practices for such trips.  It knew that he went out to work on its business and that he worked on that business.  He went in his own separate car for that purpose and used his phone and computer on its business during that trip. His trip was authorized by his superiors who knew he was making the trip.  Any deviation for a wedding was in the middle of the business trip and he returned to the business trip when he drove home. The purpose of going out was business-related; otherwise, he would not have needed to take his own car.  Discovery is relevant to claims against Tyco as well as claims against LINA.

## **CONCLUSION**

For the foregoing reasons and the authorities which support those reasons, Defendants

Tyco International, Ltd. Group Business Travel Accident Insurance Plan and Life Insurance

Company of North America's Motion for a Protective Order should be denied.  .

Respectfully submitted,

**RICHARD R. WIER, JR., P.A.**

____/s/ Richard R. Wier, Jr._____
Richard R. Wier, Jr. (#716)
Two Mill Road, Suite 200
Wilmington, DE 19806
(302)888-3222

19

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

KELLY ROARTY                                    :
                                                :
      Plaintiff,                           :
                                                :
      v.                                   :          C.A. No.  06-195 GMS
                                                :
TYCO INTERNATIONAL LTD. GROUP                   :
BUSINESS TRAVEL ACCIDENT                        :
INSURANCE PLAN, an employee                     :
welfare benefit plan, and                       :
LIFE INSURANCE COMPANY OF                       :
NORTH AMERICA, Plan Administrator,              :
                                                :
      Defendants.                          :

### CERTIFICATE OF SERVICE

I certify that on this *27th* day of *October* , 2006 that I caused the attached to be filed

with the Clerk of the Court by CM/ECF, which will send a copy to:

      Jeffrey K. Martin, Esq.
      1509 Gilpin Ave.
      Wilmington, DE 19806

and that a copy was sent to:

      Mark Stephenson, Esq.
      Nelson Levine de Luca.& Horst LLC
      Four Sentry Parkway, Suite 300
      Blue Bell, PA 19422

                      **RICHARD R. WIER, JR., P.A.**

                        /s/  Richard R. Wier, Jr.
                    Richard R. Wier, Jr. (#716)
                    Two Mill Road, Suite 200
                    Wilmington, DE 19806
                    (302)888-3222

20

# EXHIBIT A

1

**LIFE INSURANCE COMPANY**
**OF NORTH AMERICA**
1601 CHESTNUT STREET,
PHILADELPHIA, PENNSYLVANIA, 19192
A STOCK INSURANCE COMPANY

ABL 661690
BLANKET ACCIDENT POLICY

### THIS IS AN ACCIDENT ONLY POLICY.
### IT DOES NOT PAY BENEFITS FOR LOSS CAUSED BY SICKNESS.
### THIS IS A LIMITED POLICY.
### READ IT CAREFULLY.

This is a contract between us, the Life Insurance Company of North America, and you:

**Name, Address And**          Tyco International Ltd.
**Nature of Business of**       One Tyco Park
**Policyholder:**               Exeter, NH 03833

                                Communications Equipment

**Policy Term**—This policy will go into effect on July 1, 2002, and will expire on July 1, 2005, at 12:01 a.m. standard time at your address. The policy anniversary will be July 1. Unless this policy is terminated by you or us (see General Provisions), this policy may be renewed for additional terms at the premium rates in effect at time of renewal.

**Scope Of Coverage**—In exchange for the payment of premiums (as set forth in Schedule III), we agree to pay benefits to all eligible persons (as defined in Schedule I):

    a)    who suffer injury to the body in any of the types of accidents described in Schedule IV, which happens while he is covered by this policy; and

    b)    who, as a direct result of the injuries, and from no other cause, suffer a covered loss (as defined in Description of Coverage).

This coverage is subject to the exclusions shown on a later page, and to all of the other terms of this policy. This is an accident only policy. It does not pay benefits for loss caused by sickness. Read your policy with care.

This policy shall be governed by the laws of the state in which it is delivered. As used in this policy, "he" and "his" includes "she" and "her."

**IN WITNESS WHEREOF,** we have signed this policy at Philadelphia, Pennsylvania.

Robert J. Upton, Secretary

Michael W. Bell, President

Countersigned_____

## PITTSBURGH

### OCT 3 0 2002

Group Life & Disability
Coverage Unit

LM-9359

AR0001

# EXHIBIT B

10

**BLANKET ACCIDENT POLICY**

---

Policyholder: Tyco International Ltd.

Part of Policy No. ABL 661690

Schedule Date: July 1, 2002

Applies To Classes: 1, 2 & 3

---

**SCHEDULE IV**
**HAZARDS INSURED AGAINST**

**24 HOUR COVERAGE WHILE TRAVELING ON BUSINESS AWAY FROM THE PREMISES OF THE POLICYHOLDER (Owned Aircraft Not Covered)**

We will pay the benefits described in the policy for any accident which occurs anywhere in the world while a covered person, on a business trip, is traveling or making a short stay:

    a)     away from your premises in his city of permanent assignment; and
    b)     on business for you, and in the course of your business.

All such trips must be authorized by you.

This coverage does not include:

    a)     commuting between the covered person's home and place of work; or
    b)     during personal deviations made by the covered person.

"Personal deviation" as used here, means an activity that is not reasonably related to your business, and not incidental to the business trip.

This coverage will start at the actual start of a trip. It does not matter whether the trip starts at the covered person's home, place of work, or other place. This coverage will end when the covered person:

    a)     arrives at his home or place of work, whichever happens first; or
    b)     makes a personal deviation.

If a covered person travels to another city, and is expected to remain there for more than 60 days, this shall be deemed a change in his city of permanent assignment.

**Exposure And Disappearance**—This coverage includes exposure to the elements, after the forced landing, stranding, sinking, or wrecking of a vehicle in which the covered person was traveling on business for you.

A covered person will be presumed to have died, for purposes of this coverage, if:

    a)     he is in a vehicle which disappears, sinks, or is stranded or wrecked, in the course of a trip which would be covered by the policy; and
    b)     his body is not found within a year of the accident.

**Aircraft Restrictions**--If the accident happens while a covered person is riding in, or getting on or off of, an aircraft, we will pay benefits, but only if:

    a)     he is riding as a passenger only, and not as a pilot or member of the crew; and
    b)     the aircraft has a valid certificate of airworthiness; and
    c)     the aircraft is flown by a pilot with a valid license; and
    d)     the aircraft is not being used for: (i) crop dusting, spraying, or seeding; fire fighting; sky writing; sky diving or hang gliding; pipeline or power line inspection; aerial photography or exploration; racing, endurance tests, stunt or acrobatic flying; or (ii) any operation which requires a special permit from the FAA, even if it is granted (this does not apply if the permit is required only because of the territory flown over or landed on).

**Owned Aircraft Not Covered**—We will not pay benefits if the aircraft is owned, leased or controlled by you, or any of your subsidiaries or affiliates. An aircraft will be deemed to be "controlled" by you if you may use it as you wish for more than 10 straight days, or more than 15 days in any year.

Unless otherwise provided, we will pay benefits only once for any one covered loss, even if it was caused by more than one covered hazard.

LM-9D84

[2229]

AR0002

# EXHIBIT C

## GENERAL DEFINITIONS

Please note that certain words used in this Policy have specific meanings. The words defined below and capitalized within the text of this Policy have the meanings set forth below.

**Active Service**

An Employee will be considered in Active Service with his employer on any day that is either of the following:

1. one of the Employer's scheduled work days on which the Employee is performing his regular duties on a full-time basis, either at one of the Employer's usual places of business or at some other location to which the Employer's business requires the Employee to travel;
2. a scheduled holiday, vacation day or period of Employer-approved paid leave of absence, other than sick leave, only if the Employee was in Active Service on the preceding scheduled workday.

A person other than an Employee is considered in Active Service if he is none of the following:

1. an Inpatient in a Hospital or receiving Outpatient care for chemotherapy or radiation therapy;
2. confined at home under the care of Physician for Sickness or Injury;
3. Totally Disabled.

**Age**

A Covered Person's Age, for purposes of initial premium calculations, is his Age attained on the date coverage becomes effective for him under this Policy. Thereafter, it is his Age attained on his last birthday.

**Aircraft**

A vehicle which:

1. has a valid certificate of airworthiness; and
2. is being flown by a pilot with a valid license to operate the Aircraft.

**Annual Compensation**

An Employee's annual earnings for normal work established by the Subscriber for his job classification.

**Covered Accident**

A sudden, unforeseeable, external event that results, directly and independently of all other causes, in a Covered Injury or Covered Loss and meets all of the following conditions:

1. occurs while the Covered Person is insured under this Policy;
2. is not contributed to by disease, Sickness, mental or bodily infirmity;
3. is not otherwise excluded under the terms of this Policy.

**Covered Injury**

Any bodily harm that results directly and independently of all other causes from a Covered Accident.

**Covered Loss**

A loss that is all of the following:

1. the result, directly and independently of all other causes, of a Covered Accident;
2. one of the Covered Losses specified in the *Schedule of Covered Losses*;
3. suffered by the Covered Person within the applicable time period specified in the *Schedule of Benefits*.

**Covered Person**

An eligible person, as defined in the *Schedule of Benefits*, for whom an enrollment form has been accepted by Us and required premium has been paid when due and for whom coverage under this Policy remains in force. The term Covered Person shall include, where this Policy provides coverage, an eligible Spouse and eligible Dependent Children.

GA-00-1200.00                         12

AR0014

# EXHIBIT D

## CLAIM PROVISIONS

**Notice of Claim**

Written or authorized electronic/telephonic notice of claim must be given to Us within 31 days after a Covered Loss occurs or begins or as soon as reasonably possible. If written or authorized electronic/telephonic notice is not given in that time, the claim will not be invalidated or reduced if it is shown that written or authorized electronic/telephonic notice was given as soon as was reasonably possible. Notice can be given to Us at Our Home Office in Philadelphia, Pennsylvania, such other place as We may designate for the purpose, or to Our authorized agent. Notice should include the Subscriber's name and policy number and the Covered Person's name, address, policy and certificate number.

**Claim Forms**

We will send claim forms for filing proof of loss when We receive notice of a claim. If such forms are not sent within 15 days after We receive notice, the proof requirements will be met by submitting, within the time fixed in this Policy for filing proof of loss, written or authorized electronic proof of the nature and extent of the loss for which the claim is made.

**Claimant Cooperation Provision**

Failure of a claimant to cooperate with Us in the administration of the claim may result in termination of the claim. Such cooperation includes, but is not limited to, providing any information or documents needed to determine whether benefits are payable or the actual benefit amount due.

**Proof of Loss**

Written or authorized electronic proof of loss satisfactory to Us must be given to Us at Our office, within 90 days of the loss for which claim is made. If (a) benefits are payable as periodic payments and (b) each payment is contingent upon continuing loss, then proof of loss must be submitted within 90 days after the termination of each period for which We are liable. If written or authorized electronic notice is not given within that time, no claim will be invalidated or reduced if it is shown that such notice was given as soon as reasonably possible. In any case, written or authorized electronic proof must be given not more than one year after the time it is otherwise required, except if proof is not given solely due to the lack of legal capacity.

The Plan Administrator of the Employer's employee welfare benefit plan (the Plan) has appointed the Insurance Company as the Plan fiduciary under federal law for the review of claims for benefits provided by this Policy and for deciding appeals of denied claims. In this role the Insurance Company shall have the authority, in its discretion, to interpret the terms of the Plan documents, to decide questions of eligibility for coverage or benefits under the Plan, and to make any related findings of fact. All decisions made by the Insurance Company in this capacity shall be final and binding on Participants and Beneficiaries of The Plan to the full extent permitted by law.

The Insurance Company has no fiduciary responsibility with respect to the administration of The Plan except as described above. It is understood that the Insurance Company's sole liability to the Plan and to Participants and Beneficiaries under The Plan shall be for the payment of benefits provided under this Policy.

**Time of Payment of Claims**

We will pay benefits due under this Policy for any loss other than a loss for which this Policy provides any periodic payment immediately upon receipt of due written or authorized electronic proof of such loss. Subject to due written or authorized electronic proof of loss, all accrued benefits for loss for which this Policy provides periodic payment will be paid monthly unless otherwise specified in the benefits descriptions and any balance remaining unpaid at the termination of liability will be paid immediately upon receipt of proof satisfactory to Us.

**Payment of Claims**

All benefits will be paid in United States currency. Benefits for loss of life will be payable in accordance with the Beneficiary provision and these Claim Provisions. All other proceeds payable under this Policy, unless otherwise stated, will be payable to the covered Employee or to his estate.

If We are to pay benefits to the estate or to a person who is incapable of giving a valid release, We may pay $1,000 to a relative by blood or marriage whom We believe is equitably entitled. Any payment made by Us in good faith pursuant to this provision will fully discharge Us to the extent of such payment and release Us from all liability.

GA-00-1600.00                                  20

AR0022

# EXHIBIT E

Life Insurance Company of North America
1601 Chestnut Street
Philadelphia, Pennsylvania 19192-2235

## MODIFYING PROVISIONS AMENDMENT

Subscriber: Tyco International (US) Inc.                     Policy No.: OK 826564

Amendment Effective Date:   July 1, 2002

This amendment is attached to and made part of the Policy specified above and the Certificates issued under it. Its provisions are intended to conform them to the laws of the state of New Hampshire and apply only to insureds under this Policy who reside in New Hampshire.

Subscriber and We hereby agree that the Policy and any Certificates delivered under the Group Policy are amended as follows:

1.  Under the *General Definitions* section, the following changes are made.

    A.  The definition of Covered Accident is replaced with the following.

    Covered Accident          A sudden, unforeseeable event that results, directly and independently of all other causes, in a Covered Injury or Covered Loss and meets all of the following conditions:
    1.  occurs while the Covered Person is insured under this Policy;
    2.  is not contributed to by disease, Sickness, mental or bodily infirmity;
    3.  occurs while the Covered Person is insured under this Policy;
    4.  is not otherwise excluded under the terms of this Policy.

    B.  The definition of Hospital is replaced with the following.

    Hospital                  An institution that meets all of the following:
    1.  it is operated pursuant to applicable law;
    2.  it is primarily and continuously engaged in providing medical care and treatment to sick and injured persons;
    3.  it is managed under the supervision of a staff of medical doctors;
    4.  it provides 24-hour nursing services by or under the supervision of a graduate registered nurse (R.N.);
    5.  it has medical, diagnostic and treatment facilities, with major surgical facilities on its premises, or available on a prearranged basis;
    6.  it charges for its services.

    The term Hospital does not include a clinic, facility, or unit of a Hospital for:
    1.  rehabilitation, convalescent, custodial, educational or nursing care;
    2.  the aged, drug addicts or alcoholics;
    3.  a Veteran's Administration Hospital or Federal Government Hospital unless the Covered Person incurs an expense.

    C.  The definition of Hospital Stay is replaced with the following.

    Hospital Stay             A confinement in a Hospital, ordered by a Physician, over a period of time when room and board and general nursing care are provided at a per diem charge made by the Hospital. The Hospital Stay must result directly and independently of all other causes from a Covered Accident. Separate Hospital Stays due to the same Covered Accident will be treated as one Hospital Stay unless separated by at least 180 days.

AR0035

2.  Under the *Claim Provisions* section, the following changes are made.

   A.  The provision titled Proof of Loss is replaced with the following.

**Proof of Loss**
Written or authorized electronic proof of loss satisfactory to Us must be given to Us at Our office, within 90 days of the loss for which claim is made. If (a) benefits are payable as periodic payments and (b) each payment is contingent upon continuing loss, then proof of loss must be submitted within 90 days after the termination of each period for which We are liable. If written or authorized electronic notice is not given within that time, no claim will be invalidated or reduced if it is shown that such notice was given as soon as reasonably possible.

The Plan Administrator of the Employer's employee welfare benefit plan (the Plan) has selected the Insurance Company as the Plan fiduciary under federal law for the review of claims for benefits provided by this Policy and for deciding appeals of denied claims. In this role the Insurance Company shall have the authority, in its discretion, to interpret the terms of the Plan documents, to decide questions of eligibility for coverage or benefits under the Plan, and to make any related findings of fact. All decisions made by the Insurance Company in this capacity shall be final and binding on Participants and Beneficiaries of The Plan to the full extent permitted by law.

The Insurance Company has no fiduciary responsibility with respect to the administration of The Plan except as described above. It is understood that the Insurance Company's sole liability to the Plan and to Participants and Beneficiaries under The Plan shall be for the payment of benefits provided under this Policy.

   B.  The provision titled Payment of Claims is replaced with the following.

**Payment of Claims**
All benefits will be paid in United States currency. Benefits for loss of life will be payable in accordance with the Beneficiary provision and these Claim Provisions. All other proceeds payable under this Policy, unless otherwise stated, will be payable to the covered Employee or to his estate.

If We are to pay benefits to the estate or to a person who is incapable of giving a valid release, We may pay up to an amount not exceeding $1,000 to a relative by blood or marriage whom We believe is equitably entitled. Any payment made by Us in good faith pursuant to this provision will fully discharge Us to the extent of such payment and release Us from all liability.

3.  Under the *General Provisions* section, the following changes are made.

   A.  The provision titled Incontestability is replaced with the following.

**Incontestability**
1.  Of This Policy or Participation Under This Policy
All statements made by the Subscriber to participate under this Policy are considered representations and not warranties. No statement will be used to deny or reduce benefits or be used as a defense to a claim, or to deny the validity of this Policy or of participation under this Policy unless a signed copy of the instrument containing the statement is, or has been, furnished to the Subscriber.

After two years from the Policy Effective Date, no such statement will cause this Policy to be contested except for fraud.

2.  Of A Covered Person's Insurance
All statements made by a Covered Person are considered representations and not warranties. No statement will be used to deny or reduce benefits or be used as a defense to a claim, unless a signed copy of the instrument containing the statement is, or has been, furnished to the claimant.

GA-00-3000.30                                    35

AR0036

# EXHIBIT F

## Evidence Evaluated

I have reviewed the following documents and the file as a whole in making this determination:
- Group Business Travel Accident insurance policy, ABL 661690
- Proof of Loss claim form signed by Kelly Roarty on 09/03/04.
- Commonwealth of Pennsylvania Certificate of Death
- Police Crash Reporting Form
- Letter from Tyco Fire and Safety Human Resources dated 12/15/04.

## Summary

According to the death certificate, Daniel Roarty died on 08/08/04 due to blunt force injuries sustained in a motor vehicle accident. On the Proof of Loss claim form, you indicated that "Vehicle accident at intersection of Rt. 896 and Bartville Rd. Driver of truck ran a stop sign and hit our van on L front side. Dan died and our 3 boys have broken bones."

The police incident report submitted with the claim confirms that the driver of a blue truck failed to stop at a stop sign and struck your minivan causing the injuries to Mr. Roarty and your children.

We contacted Tyco, Mr. Roarty's employer, to verify that he was on an authorized business trip at the time of his death as required by policy ABL 661690. We received a brief letter dated 12/15/04 from Nicole Gibian, Human Resources, stating "Please use this letter as clarification that Mr. Roarty was NOT on business travel at the time of the accident that caused his death."

Mrs. Roarty, I extend my condolences to you for the loss of your husband. Please understand that I must evaluate this claim based upon the information available in the file and the stipulations of the policy.

This is a Business Travel Accident insurance policy that provides benefits for losses which occur during the course of authorized business trips. Mr. Roarty's employer has clearly stated that he was not on an authorized trip at the time of the car accident and therefore, no benefits can be issued under policy ABL 661690.

## Appeal Rights

This action is based on the information in our file. If you are not satisfied or do not agree with the reason(s) for the denial of your claim, you may appeal the decision to:

CIGNA Group Insurance
PO Box 22328
Pittsburgh, PA  15222-0328
Attn: Lynne George

The appeal must be in writing, submitted within 60 days of the date you receive this letter and must contain the following information:

- the reason for the appeal and/or disagreement,
- the insured's name and social security number, and

CIGNA Group Insurance products and services are provided exclusively by underwriting subsidiaries of CIGNA Corporation, including Life Insurance Company of North America, CIGNA Life Insurance Company of New York, and Connecticut General Life Insurance Company. "CIGNA" is used to refer to these subsidiaries and is a registered service mark.

AR0116

# EXHIBIT G



**Fire & Security**

ı, ₋0 *Fire and Security*
*One Town Center Road*
*Boca Raton, FL 33486*

*Telephone: 561-988-3600*
*Fax: 561-988-3631*

## Interoffice Memorandum

*This correspondence may contain confidential information intended for the use of the individual or entity to whom it is addressed. If the reader is no the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination of copying is strictly prohibited.*

*Date*       12/15/04

To         Cigna

From       Nicole Gibian

Subject    Daniel Roarty

Please use this letter as clarification that Mr. Roarty was NOT on business travel at the time of the accident that caused his death.    If you need additional information, please contact Felicia Johnson at the HRSC, 800-924-8518.

# EXHIBIT H

Roarty
319 Palomino Drive
Newark, DE  19711
302-292-8866
deroarty@msn.com
February 12, 2005

CIGNA Group Insurance
PO Box 22328
Pittsburgh, PA  15222-0328
Attn:  Lynne George

RE:  Policy Number:          ABL 661690
Underwriting Company:     Life Insurance Company of North America
Insured Name:              Daniel Roarty
Date of Birth:             04/05/1961
Date of Death:             08/08/04
Social Security Number:    189583764

PITTSBURGH
FEB 1 5 2005
GROUP LIFE & DISABILITY
BENEFITS OFFICE

Dear Ms. George:

Please be advised that this letter is to be considered an appeal to CIGNA's/TYCO's decision dated 12/17/04 denying my claim for the funds from the Business Travel Accident policy for my deceased husband, the insured, Daniel Roarty a TYCO/Scott Instruments employee.

Daniel Roarty was in fact returning from an authorized business trip when his vehicle was struck at an intersection, during which Dan sustained fatal blunt trauma injuries. Objective proof exists that a visit was required and authorized and details of the reason Dan's presence was required in Pittsburgh, also included is information indicating the immediacy of that need.

Please also be advised that efforts to reach Nicole Gibian, the Human Resources person who sent the letter to Cigna denying the claim based on the fact "Mr. Roarty was NOT on business travel," were unsuccessful.  My sister-in-law, Janet Roarty, had hoped to reach her for clarification.  Janet subsequently learned (02/07/05) that Nicole Gibian no longer worked for TYCO.  And Nancy in Boca Raton, fielding Nicole's call, could not answer any of Janet's questions.

The following summarizes the basis for this appeal.

As the policy states, the policy applies if Dan was on a business trip and if that trip was "authorized."  Below is a summary of documentation that describes the reasons Dan needed to travel to Pittsburgh.  It is not clear why TYCO has stated that this was not an "authorized business trip," but it is likely that they were not aware of Dan's efforts at resolving a critical problem with Bacharach's sensor production.

AR0084

# EXHIBIT I

Killmer, Robert A (Bob)    250

| | |
|---|---|
| **From:** | Berenbaum, Daniel R (Dan)    TL25D |
| **Sent:** | Monday, February 28, 2005 9:15 AM |
| **To:** | Killmer, Robert A (Bob)    250 |
| **Cc:** | Mitchell, Timothy S (Tim)    TL25D; Billeter, Brian W    250 |
| **Subject:** | RE: BTA Question  ABL 661690 |

Bob:

I agree with the initial claim decision.  The claim did not occur while the employee was participating in business of the policyholder, rather his return trip from vacation.  If these meetings took place, coverage would have only been extended while traveling to and from these meetings and not the entire course of his vacation.

The other test for "travel" is whether or not this trip was eligible for expense reimbursement from his employer (including miles and lodging).

**Dan Berenbaum**
AVP, Accident Underwriting
CIGNA Group Insurance
215-761-4080 (ph)
215-761-5070 (fax)
daniel.berenbaum@cigna.com

-----Original Message-----
**From:** Killmer, Robert A (Bob) 250
**Sent:** Monday, February 28, 2005 9:02 AM
**To:** Berenbaum, Daniel R (Dan) TL25D; Burk, Elizabeth 2134; Mitchell, Timothy S (Tim) TL25D
**Cc:** Billeter, Brian W 250
**Subject:** BTA Question ABL 661690
**Importance:** High

Hello,

I am hoping that one of you can assist me with a clarification on a BTA policy.

The short story of the case is as follows:

Our insured had a planned trip to Pittsburgh from his home in Delaware. However, his company was having difficulty with a supplier in Pittsburgh, so our insured, who was a member of senior management, took it upon himself to make an appointment with the supplier while he was here in Pittsburgh. The information that we have on file indicates that on two separate days while he was here of vacation, he also had appointments with the supplier. Although, I can't see that it would matter, both of the meetings were cancelled on a last minute basis.

The insured was returning home with his sons in his van. As they passed through Lancaster Pa, a truck ran a stop light and killed our insured.

The beneficiary spouse claims that as he had conducted some business on their planned vacation, that he should be covered under the BTA policy. She also maintains that as a senior manager that he always has his laptop and cell phone and is always on call.

We denied this claim originally as the employer stated that our insured was not on a business trip. However, the person who provided that statement to us is no longer employed with the group. I am attempting to reach another representative at the group to verify that they are comfortable with their original statement.

The policy contains the standard BTA Schedule 4. Personal deviations and commuting are not covered.

In my opinion, the fact that the insured attempted to attend two afternoon meetings during a week-long planned vacation, would not render the trip "business travel." Do you agree?

1

AR0079

# EXHIBIT J

CIGNA Group Insurance
Life • Accident • Disability

# CFS
# TELEPHONE LOG

Date: March 1, 2005
Time: 8:29 AM

In / Out
Outgoing: Felicia Johnson
ER

Relationship to Insured: HR @

Phone Number: 800-600-6641 ext. 3944

| Re: Daniel Roarty | Policyholder: Tyco |
|---|---|
| Phone#: | Policy #: ABL 661690 |

I called her to verify that Tyco continues to maintain that Daniel Roarty was not on a company authorized business trip at the time of the claimed accident. I reached her voice mail. She is out of the office until 3/3. I left a message for a return call.



Robert Killmer

AR0078

# EXHIBIT K



**CIGNA** Group Insurance
Life • Accident • Disability

# CFS
# TELEPHONE LOG

Date: March 11, 2005
Time: 12:44 PM

In / Out
Incoming: Felicia Johnson                    Relationship to Insured: HR @ ER
  Phone Number: 800-600-6641 ext. 3944

| Re: Daniel Roarty | Policyholder: Tyco |
|-------------------|--------------------|
| Phone#:           | Policy #: ABL 661690 |

She called me regarding my request for confirmation that Mr. Roarty was not on an approved business trip at the time of his automobile crash and death. She stated again that Mr. Roarty was not on business travel at that time. However, she stated that she has contacted the office where he worked and has asked that they fax another statement to confirm the fact that he was on a personal vacation at the time of the claimed accident. She stated that I should expect to receive that letter within the next week or so.



Robert Killmer

AR0076

# EXHIBIT L

Robert Killmer
Technical Specialist
Life & Accident Claims Services

**CIGNA** Group Insurance

Life • Accident • Disability
1600 West Carson St. Suite 300
Pittsburgh, PA 15219-3419
Telephone 1-800-238-2125
Facsimile 412-402-3316

March 11, 2005

Kelly Roarty
319 Palomino Dr.
Newark, DE 19711

**Insured Name:**            **Daniel R. Roarty**
**Date of Birth:**           **4/5/1961**
**Policy Number:**           **ABL 661690**
**Underwriting Company:**    **Life Insurance Company of North America**

Dear Mrs. Roarty:

I am writing in regard to your appeal for Business Travel Accidental Death benefits for Daniel Roarty.

Currently, I am awaiting some additional information from Tyco International regarding Daniel Roarty's status as of the date of the claimed accident that took his life. Once I have the requested information, I will again review the information in your file and the applicable policy. If for any reason I cannot reach a decision on your claim within the next 30 days, I will write to you again to explain the delay.

Mrs. Roarty, if you have any questions, please call me. You can reach me at our toll free number 1.800.238.2125 extension 3219 from 8:30 a.m. to 5:00 p.m. Eastern, Monday, Wednesday and Friday, or 6:30 a.m. to 3:00 p.m. Eastern Time, Tuesday and Thursday or email me at Robert.Killmer@CIGNA.com. If you call and get my voice mail, leave a message and your call will be returned within one business day.

Sincerely,

*Robert Killmer*

Robert Killmer

CIGNA Group Insurance products and services are provided exclusively by underwriting subsidiaries of CIGNA Corporation, including Life Insurance Company of North America, CIGNA Life Insurance Company of New York, and Connecticut General Life Insurance Company. "CIGNA" is used to refer to these subsidiaries and is a registered service mark.

# EXHIBIT M

**Brian Billeter**
**Accident Claims Manager**
**Accident & Specialty Claims Department**

**CIGNA** Group Insurance
Life • Accident • Disability
PO Box 22328
Pittsburgh, PA 15222-0328
Telephone 1-800-238-2125
Facsimile 412-402-3316

March 24, 2005

Kelly Roarty
319 Palomino Drive
Newark, DE 19711

| | |
|---|---|
| **Insured Name:** | **Daniel R. Roarty** |
| **Date of Birth:** | **4/5/61** |
| **Policy Number:** | **ABL 661690** |
| **Underwriting Company:** | **Life Insurance Company of North America** |

Dear Mrs. Roarty:

I am writing to you regarding the appeal of Mr. Roarty's Business Travel Accident benefits under the above captioned Life Insurance Company of North America (LINA) business travel accident insurance policy ("Policy"). I reviewed your letter of appeal of our initial claim denial, which was received in our office on February 15, 2005. After review of the additional information provided, we maintain our initial position that no accidental death benefits are due.

In an effort to help you understand the basis of this decision, I have provided the applicable policy provisions. A copy of these policy provisions was enclosed with our initial denial letter dated December 17, 2004. In order to be eligible for benefits, you must satisfy the policy provisions as stated below.

## Policy Provision

The Tyco, International policy states:

*"Scope of Coverage* – In exchange for the payment of premiums, we agree to pay benefits to all eligible persons:

    a) who suffer injury to the body in any of the types of accidents described in Schedule IV, which happens while he is covered by this policy; and

    b) who, as a direct result of the injuries, and from no other cause, suffer a covered loss.

## *Schedule IV Hazards Insured Against*

We will pay the benefits described in the policy for any accident which occurs anywhere in the world while a covered person, on a business trip, is traveling or making a short stay:

    a) away from your premises in his city of permanent assignment, and

    b) on business for you, and in the course of your business.

CIGNA Group Insurance products and services are provided exclusively by underwriting subsidiaries of CIGNA Corporation, including Life Insurance Company of North America, CIGNA Life Insurance Company of New York, and Connecticut General Life Insurance Company. "CIGNA" is used to refer to these subsidiaries and is a registered service mark

AR0065

# EXHIBIT N

All such trips must be authorized by you."

## Evidence Evaluated

I have reviewed the claim file as a whole, including the following documents, in making this determination:

- Group/Association Proof of Loss form.
- Commonwealth of Pennsylvania Certificate of Death.
- Police Crash Reporting Form.
- Letter from Nicole Gibian, Human Resources, Tyco International.
- Telephone conversation with Felicia Johnson at Tyco International.
- Our initial denial letter dated December 17, 2004.
- Your letter of appeal received in our office February 15, 2005, along with e-mail chains from Tyco.
- Business Travel Accident policy ABL 661690, business travel accident benefits through Tyco International.

## Summary of Evidence

According to the information reviewed, on August 8, 2004, Daniel Roarty died as a result of injuries suffered in a motor vehicle accident. The police incident report indicated that a driver of a truck failed to stop at a stop sign, and struck Mr. Roarty's minivan, causing injuries to Mr. Roarty and his three children, all of whom were in the minivan. Mr. Roarty was not at fault in this accident.

Tyco International has verified on several occasions that Mr. Roarty was not on business travel at the time of his death, through both a letter from Nicole Gibian and our telephone conversations with Felicia Johnson, both of whom are with Tyco International Human Resources. Based upon this assertion, Mr. Roarty's claim for Business Travel Accident Benefits was denied on December 17, 2004.

You have appealed our December 17, 2004 decision, asserting that Mr. Roarty was on business travel at the time of his death. Specifically, you have indicated that Mr. Roarty, as of August 2, 2004, was on his way to Pittsburgh from your home in Delaware for both a family vacation and to visit with a customer, Bacharach, regarding some difficulties that Tyco was having with Bacharach. You have further asserted that you took a separate automobile from Mr. Roarty so that he would have the ability to travel independently once he arrived in Pittsburgh for vacation, because he was unsure as to how much time would be required to resolve business issues with Bacharach.

When Mr. Roarty arrived in Pittsburgh he was unable to meet with Bacharach due to changes in their production personnel. However, issues with Bacharach were resolved during a series of telephone calls on August 3rd or 4th, 2004. During Mr. Roarty's return trip from Pittsburgh back to Delaware, he was involved in a fatal motor vehicle accident on August 8, 2004.

Felicia Johnson from Tyco verified once more, on March 11, 2005, that Mr. Roarty was not considered to be on business travel from Tyco International at the time of his motor vehicle accident, on August 8, 2004. No expenses or accommodations appear to have been reimbursed to Mr. Roarty by Tyco for his travel.

CIGNA Group Insurance products and services are provided exclusively by underwriting subsidiaries of CIGNA Corporation, including Life Insurance Company of North America, CIGNA Life Insurance Company of New York, and Connecticut General Life Insurance Company. "CIGNA" is used to refer to these subsidiaries and is a registered service mark.