## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **KELLY ROARTY,**<br><br>            **Plaintiff(s)**<br>    **v.**<br><br>**TYCO INTERNATIONAL, LTD.**<br>**GROUP BUSINESS TRAVEL**<br>**ACCIDENT INSURANCE PLAN AND**<br>**LIFE INSURANCE COMPANY OF**<br>**NORTH AMERICA,**<br><br>            **Defendants.** | **Civil Action No:**<br><br>**06-0195-GMS** |

### DEFENDANT'S RE-FILED MOTION AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT OF PROTECTIVE ORDER LIMITING DISCOVERY AND ADMISSIBLE EVIDENCE TO THE ADMINISTRATIVE RECORD

Defendants Tyco International, Ltd. Group Business Travel Accident Insurance Plan ("Plan") and Life Insurance Company of North America ("LINA") hereby move for a protective order to limit discovery and the evidence admissible at trial to the Administrative Record before the claim fiduciary at the time of the its decision with regard to Plaintiff's claim for benefits.

Defendants have incorporated herein their supporting memorandum of law that sets forth the arguments and legal authorities upon which they rely in support of their motion for a protective order.

As the scope of discovery and admissible evidence is determined by the standard of review, the issue before the court is the selection of the appropriate standard. This determination is based upon the extent to which a conflict of interest exists. Where there is

evidence of structural conflict or procedural bias inherent in the decision making process, the court may employ a heightened standard of review. Heightened scrutiny is not warranted here because the entity that made the crucial factual determination had no financial stake in the outcome. The insurer had no control over that factual determination and accepted it.

In short, because there is no evidence of conflict or bias, the fiduciary is entitled to deferential review which limits the scope of discovery to the administrative record before Life Insurance Company of North America when it determined that Plaintiff was not entitled to business travel accident plan benefits.

## I.  **STATEMENT OF FACTS**

On August 8, 2004, Daniel Roarty died in a car accident while driving home from a family vacation. At the time, he was employed by Tyco subsidiary Scott Health & Safety and participated in employee benefit plans sponsored by Tyco International (US), Inc. Among the benefits that Tyco sponsored and maintained for its employees were life insurance benefits for accidental death ("AD&D") and a separate insurance that covered employees who died accidentally while traveling on company business, commonly known as business travel accident or "BTA" coverage.

In September 2004, Plaintiff made a claim for AD&D and BTA insurance benefits in regard of her husband's death. See Administrative Record at AR0144-45.[1] LINA promptly paid $168,000 in AD&D benefits to Plaintiff. See AR0134. However, considering information received from Tyco, LINA denied Plaintiff's BTA claim.

---

[1] For brevity, citation to the Administrative Record is made by reference to specific page numbers therein and are attached hereto collectively at Exhibit "A."

Entitlement to BTA benefits had several mandatory elements outlined in the language of the plan. The plan stated in pertinent part as follows:

The Tyco (US) Plan:

> ... will pay the benefits described in the policy for any accident which occurs anywhere in the world while a covered person, on a business trip, is traveling or making a short stay:
> a) away from your premises in his city of permanent assignment; and
> b) on business for you, and in the course of your business.
> All trips must be authorized by you.

*See* Exhibit One (AR0002).

The Policy that underwrites the Tyco (US) plan identifies "you" to mean Tyco. See AR0001.

Thus, in order to invoke "BTA" coverage, first, the decedent employee had to be a covered person under the Plan. Second, the employee had to be engaged in a trip or short stay away from Tyco's premises in his city of permanent assignment. Third, the employee had to have been traveling on business for Tyco and in the course of Tyco's business. Fourth, the Tyco had to approve of the trip. Finally, the employee had to die as the result of an accident while engaged in business travel for Tyco.

When it received the BTA claim, LINA sought to confirm each of these necessary elements. LINA was able to confirm that Mr. Roarty had died in a tragic car accident; indeed, it paid the claim quickly. However, Tyco informed LINA in writing that Mr. Roarty had not been traveling on business on its behalf when he died. *See* AR0130. Tyco advised LINA on December 15, 2004 as follows:

Please use this letter as clarification that Mr. Roarty was NOT on business travel at the time of the accident that caused his death. If you need additional information, please contact Felicia Johnson at the ARSC, 800-924-8515.

On December 17, 2004, Accident Claims Specialist Marcy Miller, writing for LINA, informed Plaintiff that her BTA claim had been denied based on Tyco's December 15th statement, and told her what Tyco had said. On February 12, 2005, Plaintiff submitted an appeal from LINA's initial claim denial. In support of her claim, Plaintiff submitted a series of emails to suggest that her husband had been traveling on Tyco business when he died.

In support of her appeal, Plaintiff explained that she and her husband had planned on traveling to the Pittsburgh area for a family wedding in the days just before Monday, August 2, 2004. *See* AR0087. On Friday, July 29, 2004, Mr. Roarty intervened in a significant customer problem arising out of Scott's inability to obtain sensors from its supplier in order to fill a customer's order. *See* AR0093-98.

In the attempt to obtain the sensors from an alternate source and fill the order, Mr. Roarty volunteered, while on vacation, to visit the sensor manufacturer which, by chance, was located nearby where he was staying in the Pittsburgh area. *See* AR0090.

However, as Plaintiff admits, the meeting that Mr. Roarty sought with the supplier was at best tentative. Scott employee Regis Wyse was responsible for arranging the meeting. *Id.* As things turned out, the meeting was first postponed and then cancelled when Wyse resolved the parts issue on his own and without Mr. Roarty's involvement. *See* AR0088. What is beyond debate is that Daniel Roarty was never called upon to depart from his planned vacation and family wedding and his potential meeting with the supplier never happened. On August 8, 2004, while driving in rural Lancaster County, Pennsylvania, on his

way home from the vacation, Mr. Roarty died when an oncoming truck failed to heed a red light and struck his car.

LINA considered Plaintiff's appeal and Technical Specialist Robert Killmer contacted Tyco representative Felicia Johnson on March 1, 2005 to confirm again that Mr. Roarty had not been traveling on business for Tyco when he died. *See* AR0078. Ms. Johnson returned Mr. Killmer's call on March 11, 2005 and confirmed that Mr. Roarty had not been traveling on business for Tyco when he died. She advised that a second written confirmation of this fact would be prepared and forwarded to LINA. *See* AR0076. At the same time, Mr. Killmer sought the advice of LINA in-house counsel with regard to his consideration of Plaintiff's appeal. Considering the Plan provisions at issue and applicable law, LINA in-house counsel concluded that Mr. Roarty had traveled primarily for the purposes of a family wedding and vacation, and was available for a business trip that never materialized. *See* AR0068-71. When Tyco solved its parts problem without his help, any business need for Mr. Roarty to visit the parts supplier ended and his vacation proceeded never having been interrupted as if the issue had never arisen. *Id.* at AR0071.

On March 24, 2005, LINA denied Plaintiff's appeal. See AR0065-67. As part of its basis to do so, LINA stated:

> Felicia Johnson from Tyco verified once more, on March 11, 2005, that Mr. Roarty was not considered to be on business travel from Tyco International at the time of his motor vehicle accident, on August 8, 2004. No expenses or accommodations appear to have been reimbursed to Mr. Roarty by Tyco for his travel.

*See* AR0066. LINA made that decision in reliance on Ms. Johnson's statement and issued its decision without further delay.

The ERISA insurance policy contains the terms of the Plan, which includes the following statement:

> The Plan Administrator of the Employer's employee welfare benefit plan (the Plan) has applied the Insurance Company as the Plan fiduciary under federal law for the review of claims for benefits provided by this Policy and for deciding appeals of denied claims, In this role the Insurance Company shall have the authority, in its discretion, to interpret the terms of the Plan documents, to decide questions of eligibility for coverage or benefits under the Plan, and to make any related findings of fact. All decisions made by the Insurance Company in this capacity shall be final and binding on participants and beneficiaries of the Plan to the full extent permitted by law.
>
> The Insurance Company has no fiduciary responsibility with respect to the administration of the Plan except as described above. It is understood that the Insurance Company's sole liability to the Plan and to the Participants and Beneficiaries under the Plan shall be for the payment of benefits provided under this Policy.

*See* AR0036.

While LINA was insurer to the Plan and paid covered claims from its own assets, LINA had no control over the factual determination of whether Plaintiff's claim was covered. Tyco, who had no financial interest in the outcome of the claim, made the determination that Mr. Roarty had not been engaged in business travel on its behalf when he died. Had Tyco reported that Mr. Roarty had been on a business trip, Plaintiff would argue that a failure to accept Tyco's position would be *per se* unreasonable.

Faced with Tyco's unequivocal position that Mr. Roarty had not been traveling on its business when he died, LINA had no reasonable choice other than to deny the claim.

## II.    ARGUMENT

### A.    The Standard for Issuance of a Protective Order

Federal Rule of Civil Procedure 26 states that a party "may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action ···" Fed.R.Civ.P. 26(b)(1).  The Court is empowered to limit the scope of that discovery if "the burden or expense of the proposed discovery outweighs its likely benefit ···" Fed.R.Civ.P. 26(b)(2).  With regards to protective orders, a court may "make any order which justice requires to protect a party or person from ··· undue burden or expense, including ··· that certain matters not be inquired into, or that the scope of the disclosure or discovery be limited to certain matters ···" Fed.R.Civ.P. 26(c)(4).

### B.    The Discovery Sought Exceeds That Allowed Under Third Circuit Precedent.

In ERISA benefit claim cases, the scope of discovery depends on the standard of review.  *Amitia v. Metropolitan Life Ins. Co.*, No. 4:05CV569, 2006 WL 1094586, *4 (M.D.Pa. Apr. 25, 2006) (copy attached as Exhibit 10).  If a plan provides discretionary authority to its claim fiduciary, a court reviews the fiduciary's decisions by applying an deferential arbitrary and capricious standard. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 111-12, 115 (1989); *Mitchell v. Eastman Kodak Co.*, 113 F.3d 433, 437 (3d Cir.1997).   The Plan's provision here that grants LINA claims discretion authority is of the type that the Third Circuit has held sufficient to establish such discretionary authority.   *See, e.g., Mitchell v. Eastman Kodak Company,* 113 F.3d 433, 438 (3d Cir. 1997) ("In reviewing the claim of any participant, the Plan Administrator shall have full discretionary authority to determine all questions arising in the administration, interpretation and application of the plan.  In all such cases, the Plan

Administrator's decision shall be final and binding on all parties."); *see also Dinote v. United of Omaha Life Ins. Co.,* 331 F. Supp.2d 341, 345, n. 2 (E.D. Pa. 2004).

The arbitrary and capricious standard employed to analyze a discretionary claims decision is a deferential one. As such, to avoid replacing its own logic for that of the claims administrator, the court limits its review to the administrative record which was before the claims decision maker at the time the decision was made. The administrative record cannot be supplemented during litigation. *Kosiba v. Merck & Co.,* 384 F.3d 58, 67 n. 5 (3d Cir.2004) (citing *Mitchell,* 113 F.3d at 440).]

However, even where claims discretion exists, the Eastern District employs a "sliding scale" approach whereby it may heighten the standard of review to address a structural conflict of interest or procedural bias. A conflict has been found to exits where the claim fiduciary is an insurer that both decides claims, and pays benefits from its own assets. In such situations, the arbitrary and capricious review is heightened and thus determined on the sliding scale. *Pinto v. Reliance Standard Life Ins. Co.,* 214 F.3d 377, 379 (3d Cir. 2000). This heightened scrutiny derives from the Third Circuit's concern that an insurer would not have the "strong incentives" that the employer company would have to keep its employees satisfied by granting meritorious claims. *Id.* at 388.

### I. No Structural Conflict of Interest Exists

Of course, in this case Tyco, who had no financial incentive to deny the claim, made the crucial factual determination that Mr. Roarty was not engaged in business travel at his death. In the face of Tyco's determination, it was not possible for all of the elements made mandatory by the Plan for eligibility for BTA benefits to be met. As the concerns of insurer

self-interest that the Third Circuit espoused in Pinto are absent in this case, there is no need for a heightened standard of review. Thus, the appropriate standard is arbitrary and capricious.

As stated above, the arbitrary and capricious standard limits the evidence before the court to the administrative record, limited discovery is available when a reviewing court is deciding whether to employ the deferential standard or a more heightened standard of review. In that circumstance, the court may consider evidence of potential biases and conflicts of interest that are not found in the administrator's record. *Id.*

## II. There is No Evidence of Procedural Bias.

It is Plaintiff who bears the burden of proving procedural bias or bad faith on LINA's part in its role as claim fiduciary by presenting the Court with specific evidence of bias or bad faith. *Bill Gray Enters, Inc. Employee Health & Welfare Plan v. Gourley*, 248 F.3d 206, 216 (3d Cir.2001) ("Unless specific evidence of bias or bad-faith has been submitted, plans ⋯ are reviewed under the traditional arbitrary and capricious standard"). Plaintiff has not met this burden.

Rather, the administrative record is clear beyond reasonable challenge that the operative facts upon which the claim was denied were supplied by Tyco, not LINA. Had Tyco supported Plaintiff's claim, no doubt she would argue that hypothetical fact as conclusive in her favor. This case presents no factual basis for the Court to view LINA's claim decision with suspicion, considering the role that Tyco has played.

In practical fact, Plaintiff does not contend that, considering Tyco's factual determination, LINA was unreasonable in its claim decision but that Tyco got it wrong. In

support of her argument, Plaintiff introduced into the Administrative Record a series of Tyco emails among and between Tyco employees and a dissatisfied customer. Those emails show Tyco's efforts to satisfy a customer by locating an obsolete sensor that Tyco's supplier had failed to provide. As outlined above, the problem came to a head just before Mr. Roarty's trip to Pittsburgh for a family wedding which happened to be in an area close to where the parts supplier was located. Mr. Roarty was prepared to take time from his vacation to visit the parts supplier if a meeting could be arranged. In fact, the meeting was never finalized.

Instead, all Plaintiff showed was that Mr. Roarty had volunteered to potentially to attend a business meeting as Tyco's representative *if one could be arranged* but that, in fact, one never was. The only travel that remained was Mr. Roarty's trip, accompanied by Plaintiff and their children, to attend a wedding. The Administrative Record contains multiple statements, written and oral, by Tyco representatives, confirming that Mr. Roarty was not traveling on Tyco business when he died.

### III. Analysis Employed to Determine the Standard of Review is Not a Decision on the Merits.

Defendants suggest that what is not before the Court is a separate *de novo* investigation of whether <u>Tyco</u> conducted an adequate investigation. Neither is Tyco's business judgment as to what is (and what is not) business travel by its employees on its behalf. What is properly before the Court is whether *LINA's* claim decision was a reasonable one, supported by substantial evidence and not erroneous as a matter of law. *Abnathya v. Hoffman-LaRoche, Inc.*, 2 F.3d 40, 45 (3d Cir. 1993). Ironically, Plaintiff's attack on Tyco's factual determination fails to change the result.

11

In coming to its factual determination, Tyco was acting as a non-conflicted employer. LINA -- not Tyco -- funded the Plan's BTA benefits and Tyco had no financial interest at state when it decided that Mr. Roarty was not engaged in business travel. An employer has "incentives to avoid the loss of morale and higher wage demands that could result from denials of benefits." *Nazay v. Miller*, 949 F.2d 1323, 1335 (3d Cir. 1991). As a result, the Third Circuit has "therefore repeatedly stated" that a well-funded employer ERISA plan "does not create the sort of conflicts of interest that demand a heightened arbitrary and capricious review." *Vitale v. Latrobe Area Hospital*, 420 F.3d 278, 283 (3d Cir. 2005). Plaintiff has never contended that the Tyco plan is under-funded and LINA was more than capable of funding Plaintiff's claim, had she been able to establish all of her claim's essential elements.

The very recent decision by the Third Circuit in *Post v. Hartford Insurance Company*, ___ F.3d. ___, 2007 WL 2669825 (3d Cir. Sept. 13, 2007) (copy attached as Exhibit "B") supports Defendants' arguments. In *Post*, the Third Circuit revisited the extent to which the Court should defer to an ERISA plan claim fiduciary's denial decision. It identified two circumstances that might trigger the Court's concern: (1) "when a plan is funded on a case-by-case basis," and (2) "when [a plan] is funded and administered by an outside insurer." *Id.* at *6. These concerns do not apply in this case because while LINA underwrote the plan, it did not control the factual process. Tyco did. The claim process hinged on Tyco's agreement that Mr. Roarty had been traveling on its behalf when he died. Tyco has never varied from its written statement that he was not.

The *Post* court also reminded that the court must look at the process by which the claim fiduciary came to its decision to determine whether there is evidence of bias. *Id.* at *7. The kinds of irregularities that the Third Circuit thought suggestive of bias were reversals of position with an evidentiary basis, self-serving selectivity in use of evidence, disregarding recommendations to pay benefits and engaging in further investigation when the claim file contains evidence of entitlement. *Id.*   None of those irregularities happened here.

LINA obtained and considered all information that Plaintiff provided.  It obtained information as well from Tyco.   At least once in writing and several more times orally, Tyco representatives confirmed that Mr. Roarty had not been engaged in business travel when he died.

Plaintiff does not content that LINA was materially remiss in its claim handling nor does she contend that LINA was ever informed other than that Mr. Roarty had not been traveling on Tyco's business when he died.  Nor does Plaintiff seriously contend that no reasonable insurer could have come to the conclusion that LINA reached on the facts before it.

Plaintiff's sole argument rests on the fact that LINA elected not to wait for a second written confirmation from TYCO, having already received multiple prior confirmations, that Mr. Roarty had not been engaged in business travel on its behalf when LINA denied her claim on appeal.   LINA's denial was consistent with what Tyco had said from the beginning of the claim, and continues to say today: Mr. Roarty was on vacation and not traveling on its business when he died.  Plaintiff argues that LINA's decision to conclude the claim at that point was an irregularity; however, considering the undisputed fact that LINA acted

consistently with every other confirmation of the same fact by Tyco, the Court should conclude that doing so was not material to the denial decision.

### IV. A Structural Conflict Can be Mitigated by Independent Claim Review.

Under these circumstances, Defendants submit that the Court need not heighten its scrutiny as none of the concerns reflected in Post operate here.    Even if a technical structural conflict of interest existed, which Defendants strenuously argue did not, the Court would be correct to heighten its scrutiny "only slightly" because there was "independent claim review" and "no evidence of procedural bias."  Id. at *7.

What becomes clear, Defendants suggest, is that this is a case where a deferential review of the claim denial decision is appropriate under the most recent precedent of the Third Circuit, and that this is so regardless whether the Court focuses on LINA or Tyco. Heightened scrutiny is not needed because the entity that was obliged to pay benefits was not the entity that made the critical decisions that controlled whether benefits could be paid.

Under these circumstances, discovery and the admissibility of evidence at trial is appropriately limited to the Administrative Record.

### III.    <u>CONCLUSION</u>

Defendants Tyco International, Ltd. Group Business Travel Accident Insurance Plan and Life Insurance Company of North America respectfully submit that the discovery Plaintiffs seek is not permitted under clear precedent of the Third Circuit, and the Court should grant Defendants' proposed protective order which orders that such discovery not be had.

**NELSON LEVINE de LUCA & HORST, LLC**

BY: _____

HERBERT MONDROS, ESQUIRE (#~~2403~~ 3308)
Margolis Edelstein
750 South Madison Street
Suite 102,
Wilmington, DE 19801
(302) 888-1112
jmartin@margolisedelstein.com

and

MARK STEPHENSON, ESQUIRE
Four Sentry Parkway – Suite 300
Blue Bell, PA 19422
(610) 862-6575
mstephenson@nldhlaw.com

Attorneys for Defendants Tyco International,
Ltd. Group Business Travel Accident Insurance
Plan and Life Insurance Company of North
America

Dated: October 18, 2006

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

**KELLY ROARTY,**

              **Plaintiff(s)**

    **v.**

**TYCO INTERNATIONAL, LTD.**
**GROUP BUSINESS TRAVEL**
**ACCIDENT INSURANCE PLAN AND**
**LIFE INSURANCE COMPANY OF**
**NORTH AMERICA,**

         **Defendants.**

**Civil Action No:**

**06-0195-GMS**

## ORDER

**AND NOW, this _____ day of _____, 2007,** upon consideration of Defendant's Re-Filed Memorandum Of Law In Support Of Protective Order Limiting Discovery And Admissible Evidence To The Administrative Record, it is hereby **ORDER** and **DECREED** that the discovery Plaintiffs seek is not permitted under clear precedent of the Third Circuit, and it is hereby **GRANTED** that Defendants' proposed protective order which orders that such discovery not be had and that the admissible evidence is limited to the Administrative Record.

**BY THE COURT:**

_____
                                 **_J._**

# EXHIBIT A

10

**BLANKET ACCIDENT POLICY**

| | |
|---|---|
| Policyholder: Tyco International Ltd. | Schedule Date: July 1, 2002 |
| Part of Policy No. ABL 661690 | Applies To Classes: 1, 2 & 3 |

**SCHEDULE IV**
**HAZARDS INSURED AGAINST**

**24 HOUR COVERAGE WHILE TRAVELING ON BUSINESS AWAY FROM THE PREMISES OF THE POLICYHOLDER (Owned Aircraft Not Covered)**

We will pay the benefits described in the policy for any accident which occurs anywhere in the world while a covered person, on a business trip, is traveling or making a short stay:

    a)    away from your premises in his city of permanent assignment; and
    b)    on business for you, and in the course of your business.

All such trips must be authorized by you.

This coverage does not include:

    a)    commuting between the covered person's home and place of work; or
    b)    during personal deviations made by the covered person.

"Personal deviation" as used here, means an activity that is not reasonably related to your business, and not incidental to the business trip.

This coverage will start at the actual start of a trip. It does not matter whether the trip starts at the covered person's home, place of work, or other place. This coverage will end when the covered person:

    a)    arrives at his home or place of work, whichever happens first; or
    b)    makes a personal deviation.

If a covered person travels to another city, and is expected to remain there for more than 60 days, this shall be deemed a change in his city of permanent assignment.

**Exposure And Disappearance**--This coverage includes exposure to the elements, after the forced landing, stranding, sinking, or wrecking of a vehicle in which the covered person was traveling on business for you.

A covered person will be presumed to have died, for purposes of this coverage, if:

    a)    he is in a vehicle which disappears, sinks, or is stranded or wrecked, in the course of a trip which would be covered by the policy; and
    b)    his body is not found within a year of the accident.

**Aircraft Restrictions**--If the accident happens while a covered person is riding in, or getting on or off of, an aircraft, we will pay benefits, but only if:

    a)    he is riding as a passenger only, and not as a pilot or member of the crew; and
    b)    the aircraft has a valid certificate of airworthiness; and
    c)    the aircraft is flown by a pilot with a valid license; and
    d)    the aircraft is not being used for: (i) crop dusting, spray ing, or seeding; fire fighting; sky writing; sky diving or hang gliding; pipeline or power line inspection; aerial photography or exploration; racing, endurance tests, stunt or acrobatic flying; or (ii) any operation which requires a special permit from the FAA, even if it is granted (this does not apply if the permit is required only because of the territory flown over or landed on).

**Owned Aircraft Not Covered**--We will not pay benefits if the aircraft is owned, leased or controlled by you, or any of your subsidiaries or affiliates. An aircraft will be deemed to be "controlled" by you if you may use it as you wish for more than 10 straight days, or more than 15 days in any year.

Unless otherwise provided, we will pay benefits only once for any one covered loss, even if it was caused by more than one covered hazard.

LM-9D84

[2229]

U.S.D.C. -- District of Delaware
Roarty v. Tyco Int'l Ltd., Group BTA Plan, et al.
Docket No.: 06-0195-GMS
Exhibit No.: 1

AR0002

2.  Under the *Claim Provisions* section, the following changes are made.

A.  The provision titled Proof of Loss is replaced with the following.

Proof of Loss
Written or authorized electronic proof of loss satisfactory to Us must be given to Us at Our office, within 90 days of the loss for which claim is made. If (a) benefits are payable as periodic payments and (b) each payment is contingent upon continuing loss, then proof of loss must be submitted within 90 days after the termination of each period for which We are liable. If written or authorized electronic notice is not given within that time, no claim will be invalidated or reduced if it is shown that such notice was given as soon as reasonably possible.

The Plan Administrator of the Employer's employee welfare benefit plan (the Plan) has selected the Insurance Company as the Plan fiduciary under federal law for the review of claims for benefits provided by this Policy and for deciding appeals of denied claims. In this role the Insurance Company shall have the authority, in its discretion, to interpret the terms of the Plan documents, to decide questions of eligibility for coverage or benefits under the Plan, and to make any related findings of fact. All decisions made by the Insurance Company in this capacity shall be final and binding on Participants and Beneficiaries of The Plan to the full extent permitted by law.

The Insurance Company has no fiduciary responsibility with respect to the administration of The Plan except as described above. It is understood that the Insurance Company's sole liability to the Plan and to Participants and Beneficiaries under The Plan shall be for the payment of benefits provided under this Policy.

B.  The provision titled Payment of Claims is replaced with the following.

Payment of Claims
All benefits will be paid in United States currency. Benefits for loss of life will be payable in accordance with the Beneficiary provision and these Claim Provisions. All other proceeds payable under this Policy, unless otherwise stated, will be payable to the covered Employee or to his estate.

If We are to pay benefits to the estate or to a person who is incapable of giving a valid release, We may pay up to an amount not exceeding $1,000 to a relative by blood or marriage whom We believe is equitably entitled. Any payment made by Us in good faith pursuant to this provision will fully discharge Us to the extent of such payment and release Us from all liability.

3.  Under the *General Provisions* section, the following changes are made.

A.  The provision titled Incontestability is replaced with the following.

Incontestability
1.  Of This Policy or Participation Under This Policy
All statements made by the Subscriber to participate under this Policy are considered representations and not warranties. No statement will be used to deny or reduce benefits or be used as a defense to a claim, or to deny the validity of this Policy or of participation under this Policy unless a signed copy of the instrument containing the statement is, or has been, furnished to the Subscriber.

After two years from the Policy Effective Date, no such statement will cause this Policy to be contested except for fraud.

2.  Of A Covered Person's Insurance
All statements made by a Covered Person are considered representations and not warranties. No statement will be used to deny or reduce benefits or be used as a defense to a claim, unless a signed copy of the instrument containing the statement is, or has been, furnished to the claimant.

U.S.D.C. – District of Delaware
Roarty v. Tyco Int'l Ltd., Group BTA Plan, et al.
Docket No.: 06-0195-GMS
Exhibit No.: 2

AR0036

**Brian Billeter**
**Accident Claims Manager**
**Accident & Specialty Claims Department**

**CIGNA** Group Insurance
Life • Accident • Disability
PO Box 22328
Pittsburgh, PA 15222-0328
Telephone 1-800-238-2125
Facsimile 412-402-3316

March 24, 2005

Kelly Roarty
319 Palomino Drive
Newark, DE 19711

| | |
|---|---|
| **Insured Name:** | **Daniel R. Roarty** |
| **Date of Birth:** | **4/5/61** |
| **Policy Number:** | **ABL 661690** |
| **Underwriting Company:** | **Life Insurance Company of North America** |

Dear Mrs. Roarty:

I am writing to you regarding the appeal of Mr. Roarty's Business Travel Accident benefits under the above captioned Life Insurance Company of North America (LINA) business travel accident insurance policy ("Policy"). I reviewed your letter of appeal of our initial claim denial, which was received in our office on February 15, 2005. After review of the additional information provided, we maintain our initial position that no accidental death benefits are due.

In an effort to help you understand the basis of this decision, I have provided the applicable policy provisions. A copy of these policy provisions was enclosed with our initial denial letter dated December 17, 2004. In order to be eligible for benefits, you must satisfy the policy provisions as stated below.

### Policy Provision

The Tyco, International policy states:

**"*Scope of Coverage* –** In exchange for the payment of premiums, we agree to pay benefits to all eligible persons:

    a)  who suffer injury to the body in any of the types of accidents described in Schedule IV, which happens while he is covered by this policy; and

    b)  who, as a direct result of the injuries, and from no other cause, suffer a covered loss.

### *Schedule IV Hazards Insured Against*

We will pay the benefits described in the policy for any accident which occurs anywhere in the world while a covered person, on a business trip, is traveling or making a short stay:

    a)  away from your premises in his city of permanent assignment, and

    b)  on business for you, and in the course of your business.

CIGNA Group Insurance products and services are provided exclusively by underwriting subsidiaries of CIGNA Corporation, including Life Insurance Company of North America, CIGNA Life Insurance Company of New York, and Connecticut General Life Insurance Company. "CIGNA" is used to refer to these subsidiaries and is a registered service mark.

U.S.D.C. – District of Delaware
Roarty v. Tyco Int'l Ltd., Group BTA Plan, et al.
Docket No.: 06-0195-GMS
Exhibit No.: 9

AR0065

All such trips must be authorized by you."

## Evidence Evaluated

I have reviewed the claim file as a whole, including the following documents, in making this determination:

- Group/Association Proof of Loss form.
- Commonwealth of Pennsylvania Certificate of Death.
- Police Crash Reporting Form.
- Letter from Nicole Gibian, Human Resources, Tyco International.
- Telephone conversation with Felicia Johnson at Tyco International.
- Our initial denial letter dated December 17, 2004.
- Your letter of appeal received in our office February 15, 2005, along with e-mail chains from Tyco.
- Business Travel Accident policy ABL 661690, business travel accident benefits through Tyco International.

## Summary of Evidence

According to the information reviewed, on August 8, 2004, Daniel Roarty died as a result of injuries suffered in a motor vehicle accident. The police incident report indicated that a driver of a truck failed to stop at a stop sign, and struck Mr. Roarty's minivan, causing injuries to Mr. Roarty and his three children, all of whom were in the minivan. Mr. Roarty was not at fault in this accident.

Tyco International has verified on several occasions that Mr. Roarty was not on business travel at the time of his death, through both a letter from Nicole Gibian and our telephone conversations with Felicia Johnson, both of whom are with Tyco International Human Resources. Based upon this assertion, Mr. Roarty's claim for Business Travel Accident Benefits was denied on December 17, 2004.

You have appealed our December 17, 2004 decision, asserting that Mr. Roarty was on business travel at the time of his death. Specifically, you have indicated that Mr. Roarty, as of August 2, 2004, was on his way to Pittsburgh from your home in Delaware for both a family vacation and to visit with a customer, Bacharach, regarding some difficulties that Tyco was having with Bacharach. You have further asserted that you took a separate automobile from Mr. Roarty so that he would have the ability to travel independently once he arrived in Pittsburgh for vacation, because he was unsure as to how much time would be required to resolve business issues with Bacharach.

When Mr. Roarty arrived in Pittsburgh he was unable to meet with Bacharach due to changes in their production personnel. However, issues with Bacharach were resolved during a series of telephone calls on August 3rd or 4th, 2004. During Mr. Roarty's return trip from Pittsburgh back to Delaware, he was involved in a fatal motor vehicle accident on August 8, 2004.

Felicia Johnson from Tyco verified once more, on March 11, 2005, that Mr. Roarty was not considered to be on business travel from Tyco International at the time of his motor vehicle accident, on August 8, 2004. No expenses or accommodations appear to have been reimbursed to Mr. Roarty by Tyco for his travel.

CIGNA Group Insurance products and services are provided exclusively by underwriting subsidiaries of CIGNA Corporation, including Life Insurance Company of North America, CIGNA Life Insurance Company of New York, and Connecticut General Life Insurance Company. "CIGNA" is used to refer to these subsidiaries and is a registered service mark.

<u>**Summary**</u>

Based upon the information provided above, there is not sufficient support for finding that Mr. Roarty was engaged in business travel at the time of his accident. It appears that Mr. Roarty resolved the issues with Bacharach in a series of phone calls during August 3rd and 4th. There is no indication that Mr. Roarty traveled whatsoever with regard to the customer, Bacharach, and every indication that he was engaged in travel as part of his vacation. As the side trip to visit a customer had been cancelled, the only trip Mr. Roarty took related to his vacation, clearly not on the business of his employer. This policy pays benefits for loss which occurs while on an authorized business trip as indicated above. As Mr. Roarty was on vacation, and not on an authorized business trip, at the time of his death, no benefits are payable under policy ABL 661690.

Nothing contained in this letter should be construed as a waiver of any rights of defenses under the policy. The determination has been made in good faith and without prejudice under the terms and conditions of the contract, whether or not specially mentioned herein. Please be advised that you have exhausted your administrative remedies under this policy. No further appeals will be considered.

We encourage you to either contact the Tyco International's employee benefits department or review the insurance booklet, certificate or coverage information made available to you, to determine if you are eligible for additional benefits.

Mrs. Roarty, if you have any questions, please call me. You can reach me at our toll free number 1.800.238.2125 extension 3249 from 7:30 a.m. to 4:00 p.m. Eastern Time, Monday through Friday. If you call and get my voice mail, leave a message and your call will be returned within one business day.

Sincerely,

*Brian Billeter*

Brian Billeter

CIGNA Group Insurance products and services are provided exclusively by underwriting subsidiaries of CIGNA Corporation, including Life Insurance Company of North America, CIGNA Life Insurance Company of New York, and Connecticut General Life Insurance Company. "CIGNA" is used to refer to these subsidiaries and is a registered service mark.

# *Interoffice Memo*



**CIGNA**

| | |
|---|---|
| **Date :** | March 21, 2005 |
| **To :** | Robert Killmer, FCO Pittsburgh |
| **From :** | Marian A. Luongo, Esq., Group Litigation Dept. TL48G |
| **Telephone :** | 215-761-1981 |
| **Facsimile :** | 215-761-5512 |
| **Subject :** | Daniel Roarty-Tyco International |

**Attorney Client Communication**
**Privileged and Confidential**

You have inquired whether the Insured was engaged in a personal deviation and was therefore not covered under a group business accident policy, issued to his employer, when he was killed in a motor vehicle accident while on vacation. This policy is governed by ERISA. The Insured was a resident of Delaware, and we have looked primarily to the federal common law of ERISA as decided in the Third Circuit in considering this claim. The benefit amount is $500,000.

## Background

Tyco sponsors a program of employee benefits that includes a death benefit for its employees who die accidentally while traveling with Tyco's authorization and on its business. Daniel Roarty was a Tyco employee and participated in this benefit plan. The file materials indicate that Mr. Roarty apparently was a Senior Product Manager for Tyco. We note the February 12, 2005 letter from Kelly Roarty, the Insured's spouse, that outlines a narrative with regard to the Insured's August 2004 Newark, DE to Pittsburgh, PA trip, and return. For the purposes of the appeal, we take Ms. Roarty's narrative in its most favorable light.

Ms. Roarty advises that the Insured had traveled to Pittsburgh for vacation. We note her confirmation of this fact by the Insured's July 30, 2004 email, which she attached to her February 12th letter. In the July 30th email, among other things Mr. Roarty writes: "I will be in Pittsburgh next week on vacation." According to Ms. Roarty, the Insured drove to Pittsburgh separately so that he would be able to visit the customer site without inconveniencing his family. While en route, circumstances at the customer's site made a planned August 3, 2004 meeting became not feasible and the Insured resolved the issue by telephone over August 3 and 4, 2004. We assume that with the resolution of the problem, the Insured returned to his vacation. On or about August 8, 2004, the Insured was returning home from Pittsburgh when he was killed in a motor vehicle accident.

On December 15, 2004, Tyco advised in writing that: "Please use this letter as clarification that Mr. Roarty was NOT on business travel at the time of the accident that caused his death."

## Policy Language

We have been provided only limited portions of business accident policy No. ABL 6616890, while receiving a full copy of group accident policy No. OK 826564. The business accident policy contains the following provisions:

AR0068

March 21, 2005
Page 2

## THIS IS AN ACCIDENT ONLY POLICY.
## IT DOES NOT PAY BENEFITS FOR LOSS CAUSED BY SICKNESS.
## THIS IS A LIMITED POLICY.
## READ IT CAREFULLY.

**Scope of Coverage** – In exchange for the payment of premiums (as set forth in Schedule III), we agree to pay benefits to all eligible persons (as defined in Schedule I):

    a) who suffer injury to the body in any of the types of accidents described in Schedule IV, which happens while he is covered by this policy; and

    b) who, as a direct result of the injuries, and no other cause, suffers a covered loss (as defined in the Description of Coverage).

This coverage is subject to the exclusions shown on a later page, and to all of the other terms of this policy. This is an accident only policy. It does not pay benefits for loss caused by sickness. Read your policy with care.

## SCHEDULE IV
## HAZARDS INSURED AGAINST

### 24 HOUR COVERAGE WHILE TRAVELING ON BUSINESS AWAY FROM THE PREMISES OF THE POLICYHOLDER (Owned Aircraft Not Covered)

We will pay the benefits described in the policy for any accident which occurs anywhere in the world while a covered person, on a business trip, is traveling or making a short stay:

    a) away from your premises in his city of permanent assignment; and

    b) on business for you, and in the course of your business.

All such trips must be authorized by you.

*This coverage does not include:*

    a) commuting between the covered person's home and place of work; or

    b) during personal deviations made by the covered person.

"Personal deviation" as used here, means an activity that is not reasonably related to your business, and not incidental to the business trip.

This coverage will start at the actual start of a trip. It does not matter whether the trip starts at the covered person's home, place of work, or other place. This coverage will end when the covered person:

    a) arrives at his home or place of work, whichever happens first; or

    b) makes a personal deviation.

If a covered person travels to another city, and is expected to remain there for more than 60 days, this shall be deemed a change in his city of permanent assignment.

We do not have the General Provisions, including the claim provisions, for the business accident policy, and note the following provision of the group accident policy.

## CLAIM PROVISIONS

AR0069

March 21, 2005
Page 3

## Proof of Loss

... The Plan Administrator of the employer's employee welfare benefit plan (the Plan) as appointed the Insurance Company as the Plan fiduciary under federal law for the review of claims for benefits provided by this Policy and for deciding appeals of denied claims. In this role the Insurance Company shall have the authority, in its discretion, to interpret the terms of the Plan documents, to decide questions of eligibility for coverage or benefits under the Plan, and to make any related findings of fact. All decisions by the Insurance Company in this capacity shall be final and binding on Participants and Beneficiaries of The [sic] Plan to the full extent permitted by law. ...

## Analysis

We begin our consideration of the legal issues presented by this claim by noting that the claim presents facts that are the inverse of those typical made against a business travel accident policy. Ordinarily, the insured is traveling on behalf of his employer and makes a side trip for personal reasons, often called a "personal diversion or deviation. At issue is whether the insured remains covered should he die while still in the midst of the side trip, or after he returns to his original travel path. This claim presents exactly the opposite.

The Insured had intended to travel to Pittsburgh from Newark, Delaware for purposes of a vacation before any perceived need to meet with the Western Pennsylvania-based customer arose. As his vacation neared, the Insured announced that he intended to meet with the customer while in Pittsburgh on his vacation. Here then, the side trip is the alleged business travel and the trip from Newark, Delaware to Pittsburgh and return was the original and principal travel path. We apply the Policy language quoted above to characterize the Newark-Pittsburgh trip as personal deviation and any trip to the customer site as a trip that potentially could have been business related.

In fact there never was a trip that might be characterized as a "business trip." Regardless whether Mr. Roarty intended a side trip from his vacation to meet with the customer, in fact the customer had no time to meet with him. Mr. Roarty resolved the issue in what appear to have been a series of telephone calls over August 3 and 4, 2004. There is no indication that Mr. Roarty traveled whatsoever with regard to the customer, and every indication that he was engaged in travel as part of his vacation. We note that he was killed in a motor vehicle accident near Lancaster, Pennsylvania on his return from his vacation. The side trip to see the customer having been cancelled, the only trip that Mr. Roarty took related to his vacation, clearly not on the business of his employer. In light of these facts, the employer's statement that it did not authorize Mr. Roarty's trip as part of its business makes ample sense.

Considering the somewhat unique factual setting, our research has disclosed no case directly on point but several that are helpful. In *McGrath v. Home Ins. Co.*, 813 F. Supp. 276 (D. Del. 1993), an ERISA case, the insured was killed by a truck when he was riding his bicycle in a charity fund raising event as part of his employer's corporate cycling team. The court noted numerous ways in which the employer took public and internal credit for this activity but noted that no one testified that anyone cycling for the employer considered himself to be on business travel. *Id.* at 279. No one asked for employer authorization to participate nor did the employer request anyone to do so. The court upheld the Policy's provisions as clear and unambiguous, concluding that there was no evidence that the insured was traveling "on assignment or at the direction of" his employer. Coupled with evidence that confirmed this, the court concluded that the insured's accidental death fell outside the scope of coverage.

AR0070

March 21, 2005
Page 4

*Garber v. Provident Life and Accident Ins. Co.*, 1999 U.S. App. LEXIS 11280 (6th Cir. 1999), also an ERISA case, provides an example where coverage existed because the employer did authorize a personal deviation. The insured made a trip from California to Chicago on business. With his employer's approval, he routed his return through Pittsburgh and Akron-Canton in order to see his parents. The plane crashed while in flight from Chicago to Pittsburgh, and the insured was killed. The insurer declined coverage on the grounds that the insured was not engaged in business travel at the time of his death, making an argument that each section of the trip should separately be characterized by purpose and contending that the discrete portion of travel when the insured time was beyond the scope of coverage. The policy specifically excluded travel during "vacation."

The court concluded that the *Garber* insured's side trip was akin to a planned stop over at an airport between flights to meet friends, and could not constitute a vacation, considering its brevity. In an aside, the court agreed that if the insured would have abandoned his trip if he had stopped his travel for a week of skiing. At most, the court concluded, had the insured reached Canton (and his parents), his vacation might have begun, but it had not begun while he remained in transit.
We conclude from these cases that two factors are critical. First, the employer must have authorized (or at least not have refused to authorize) the travel in which the insured was engaged. Second, the employee must have intended that his trip be to the benefit of his employer – either in whole or in part. We take the position that the facts of this claim support neither factor. Mr. Roarty's employer states that it did not authorize him to travel to Pittsburgh or from there to the customer on its behalf. Next, after Mr. Roarty learned that there would be no trip to the customer, his only purpose to continue to Pittsburgh was his vacation. The conclusion that we reach is that he died while on vacation, an event not covered by the Policy.

We suggest therefore that the FCO consider denying the claim. If there are questions or we can be of other help, please let me know.

N. Biggs
K. Fortune
D. Mabilog

CC:

AR0071



**CIGNA** Group Insurance
Life • Accident • Disability

# CFS
# TELEPHONE LOG

Date: March 11, 2005
Time: 12:44 PM

In / Out
Incoming: Felicia Johnson                    Relationship to Insured: HR @ ER
    Phone Number: 800-600-6641 ext. 3944

| Re: Daniel Roarty | Policyholder: Tyco |
|---|---|
| Phone#: | Policy #: ABL 661690 |

She called me regarding my request for confirmation that Mr. Roarty was not on
an approved business trip at the time of his automobile crash and death. She
stated again that Mr. Roarty was not on business travel at that time. However, she
stated that she has contacted the office where he worked and has asked that they
fax another statement to confirm the fact that he was on a personal vacation at
the time of the claimed accident. She stated that I should expect to receive that
letter within the next week or so.



Robert Killmer

U.S.D.C. – District of Delaware
Roarty v. Tyco Int'l Ltd., Group BTA Plan, et al.
Docket No.: 06-0195-GMS
Exhibit No.: 8

AR0076



**CIGNA** Group Insurance
Life • Accident • Disability

# CFS
# TELEPHONE LOG

Date: March 1, 2005
Time: 8:29 AM

In / Out
   Outgoing: Felicia Johnson                    Relationship to Insured: HR @
ER
   Phone Number: 800-600-6641 ext. 3944

| Re: Daniel Roarty | Policyholder: Tyco |
|---|---|
| Phone#: | Policy #: ABL 661690 |

I called her to verify that Tyco continues to maintain that Daniel Roarty was not
on a company authorized business trip at the time of the claimed accident. I
reached her voice mail. She is out of the office until 3/3. I left a message for a
return call.



Robert Killmer

5) When Dan was finally brought into the loop he immediately took action to solve the most critical customers problems first at least temporarily and then went immediately to work on the problem.

6) This problem was brought to Dan's attention by e-mail and at a very inconvenient time – right before Dan was taking a vacation.

7) Dan e-mailed or copied 10 people as to his intent to visit the Bacharach plant while he was in Pittsburgh on vacation. Several of these people, Bob Bierzynski, Ron Unruh and Trent Smith were in positions of authority and at levels higher than Dan's position in the company.

8) Not one of these people in authority who had been notified by Dan of his intent to go on site at Bacharach contacted Dan to indicate that his intended visit was not authorized.

9) Dan was a professional and felt a keen sense of responsibility to Scott Instruments and it's customers. He worked very creatively to temporarily solve the problem of the missing sensors. Ron Unruh, also senior management helped Dan locate additional sensors and knew of Dan's intent to visit Bacharach during his vacation.

10) Dan also took personal responsibility for the boxes of products that now were without sensors and could not be sold. On each box he put a note stating: "Missing sensor 51-1865. See Dan Roarty NYC DEP 07/30/04. Dan now has ownership of this problem.

11) In all this time no one had yet to successfully resolve the source of the problem that has threatened Scott Instruments and their customers. Once again **Phone calls had not been successful. A visit was required and since Dan now had ownership of this problem it was important that Dan visit Bacharach in Pittsburgh, PA.**

As mentioned in Dan's e-mails, he had intended to come to Pittsburgh for his vacation. When Dan left the office July 30, 2004, he went home for the start of his vacation. The intent of part of that vacation was to help me get the house ready to put on the market. TYCO had transferred Dan to Scott Health & Safety in Monroe, NC. We were scheduled to move there in 2 months. We had already purchased a home in Monroe, NC. The days were packed with trying to do house repairs and general maintenance around the house so that when we came back from our family wedding the house would be ready to go on the market. In fact, in our absence, the interior of our house was being painted. Our departure date was originally flexible because we were unclear as to how much time we would need to get the general maintenance done and the house set up for painting. Our plans changed when Dan came home and said he needed to be in Pittsburgh for a meeting with Bacharach. We had to leave for Pittsburgh, Monday, August 2, 2004 so that Dan could meet with Regis Wyse and together they would go to the Bacharach plant and try to resolve this production problem that had not been resolved over the phone or by e-mails. At this time, Dan and I decided to take two vehicles to Pittsburgh. Taking two vehicles would enable Dan to spend as much time as necessary at the Bacharach plant without stranding his family. He wasn't quite sure what would be involved but he wanted to be able to have a certain amount of travel independence so he could respond to Bacharach and Scott Instrument's needs.

A meeting was planned for August 3, 2004 with Dan, Regis Wyse, The Regional Manager for Scott Instruments and Jim Elliott and Jim Flume from Bacharach to discuss delivery and production difficulties.

While Dan was driving out to Pittsburgh, for the meeting, the Bacharach plant had a major shake up and changes in their production personnel so they could not meet Tuesday. Dan and Regis Wyse rescheduled to meet with Bacharach on Thursday 08/04/04. Sometime between August 3, 2004 and August 4th, Regis Wyse had spoken with Bacharach and had reached an agreement on production dates and so the face-to-face meeting was cancelled, but telephone calls between Regis and Dan continued.

As anyone who works in sales knows, there are many times when you present yourself at a client, potential customer's or supplier's door, only to learn that those people had been called away on other business. Your intentions hadn't changed. You would be frustrated at the waste of time the effort expended but nevertheless, the trip would still be considered a business trip. Through no fault of Dan's the face to face portion of the trip was cancelled. The reason for Dan's trip had not changed. And the entire time that Dan was in Pittsburgh he continued to make calls, take calls and answer his e-mails.

As Lanny Tomberlin, HR Manager for Scott Health and Safety, explained to me in a call I made to him in August 04 shortly after Dan's death, Senior Management is on call all the time regardless of vacation. Dan wasn't on a time clock. He would be expected to work what ever hours were required to "take care of business." Dan had in his possession during this "vacation" his laptop, his cell phone and his briefcase. Dan loved Scott Instruments and his work as Senior Product Manager. He was willing to sacrifice his vacation time and time with his family to help solve a production problem that left unresolved could result in a loss of business for Scott Instruments.

In order to make this business trip Dan had to drive from Newark, Delaware to Pittsburgh, PA and back again. He changed his personal plans to accommodate his business needs and he informed his management team and sales staff of his plan. Trent Smith, Bob Bierzynski and Ron Unruh were all aware of Dan's plans to visit Bacharach on his vacation. Dan was on an authorized business trip as proven by the content of the enclosed e-mails, his management team was aware of his plans and Dan was unfortunately killed on his way home from his business trip. He is covered by The Group Business Travel Accident Insurance policy and payment should be made accordingly.

Respectfully submitted,

Kelly J. Roarty
Wife of Daniel R. Roarty

-----Original Message-----
From: Roarty, Daniel
Sent: Friday, July 30, 2004 3:35 PM
To: Levangie, Lori; Jim Hampson (E-mail)
Cc: Unruh, Ronald; Wyse, Regis; Smith, Trent; Bierzynski, Bob;
Karagianis, Georgia; DeMeritt, MaryAnne; Franco, John; Levangie, Lori;
Cherubin, Chris
Subject: RE: Hunts Point

Lori:
After receiving this e-mail I called Jim Hampson and determined that the
hottest fire is for NYC DEP to get 3 p/n 51-1861 sensors.  The reason they
were so upset is that they have three existing transmitters that they
couldn't get sensors for.  Getting three sensors is a whole lot easier than
coming up with seventy one (71).



Bacharach is telling us that maybe they will have some unknown qty of
sensors by the end of August.  Ron Unruh had the great idea of seeing if
this sensor is part of another product which we have in stock. Bryon Gordon
pulled up all the assemblies that use this part and I dug into the inventory
and came up with four (4) sensors.  Talk about a team effort! We have at
least another dozen sensors.  But not 71 as requested in your e-mail.
I will be in Pittsburgh next week on vacation.  Regis is going to set up a
day for me to go into the Bacharach plant and find out why the sensor is
taking so long to build.
I will let you know what I find.

Jim Hampson:
I have left you a phone message asking where these sensors should be sent
to.  The sensors are sitting on Chris Cherubin's desk.

Regards,
Dan Roarty

-----Original Message-----
From: Levangie, Lori
Sent: Friday, July 30, 2004 7:23 AM
To: Karagianis, Georgia; Bierzynski, Bob; Smith, Trent
Cc: Unruh, Ronald; Wyse, Regis; DeMeritt, MaryAnne; Franco, John;
Roarty, Daniel; Lori Levangie (E-mail)
Subject: RE: Hunts Point



Received another call from NYC DEP with another threat to throw us out of

AR0090

Georgia

-----Original Message-----
From: Smith, Trent
Sent: Thursday, July 29, 2004 10:56 AM
To: Levangie, Lori; Ron Unruh (E-mail); Karagianis, Georgia
Subject: RE: Hunts Point



Please educate me briefly on what Bacharach equipment this is for and who at
Scott places these orders and with whom at Bacharach.

Trent Smith
National Sales Manager
Scott Health & Safety
tresmith@tvcoint.com
(p)704-291-8423

www.scotthealthsafety.com

-----Original Message-----
From: Levangie, Lori
Sent: Wednesday, July 28, 2004 9:32 AM
To: Trent Smith (E-mail); Ron Unruh (E-mail)
Subject: FW: Hunts Point
Importance: High



Hi Guys.

Bacharach is getting the best of us. I have done everything I can, so has
Georgia, Marianne, etc.

Lori Levangie
Northeast Regional Manager
Fixed Instruments Division
Tyco / Scott Instruments
Cell - 610-662-9477
Fax - 484-214-0137
www.scottinstruments.com

-----Original Message-----
From: Gabriel Farkas [mailto:gabriel@advantechcorp.com]

AR0093

Sent: Wednesday, July 28, 2004 10:29 AM
To: Levangie, Lori; Karagianis, Georgia
Cc: Gennady Farberov; 'Gabe Hauer'; Joe Stelmack; Jim Hampson
Subject: RE: Hunts Point
Importance: High

Lori,

I understand that they don't have the units in stock. What I don't
understand that they cannot make a commitment for a date when they will have
them. I also do not understand why this takes so long, this process started
in April, three months ago.



One cannot tell a customer forever to just be patient, eventually the
merchandise will arrive. At least AdvanTech's customers do not accept this.

I assume Scott is interested in doing further business with the New York
City DEP, this kind of customer service is not a very good way of assuring
that.

Thanks,

Gabriel Farkas, PMP
Project Manager
AdvanTech Corporation
27 Daniel Rd. West
Fairfield, NJ 07004
Phone: 973-808-8550 Extension 21
Fax:  973-808-2923


> -----Original Message-----
> From: Levangie, Lori [mailto:llevangie@tycoint.com]
> Sent: Wednesday, July 28, 2004 10:12 AM
> To: gabriel@advantechcorp.com; Levangie, Lori; Karagianis, Georgia
> Cc: Gennady Farberov; 'Gabe Hauer'; Joe Stelmack; Jim Hampson
> Subject: RE: Hunts Point
>
>
> Hi Gabriel.
>

> I spoke to Georgia who has been inquiring daily.  Bacharach still does not
> have these in stock.  She and I are doing everything we can to
> "push" them.
> We sincerely regret any inconvenience.  We will keep checking.

AR0094

>
>
> Lori Levangie
> Northeast Regional Manager
> Fixed Instruments Division
> Tyco / Scott Instruments
> Cell – 610-662-9477
> Fax – 484-214-0137
> www.scottinstruments.com
>
>
> -----Original Message-----
> From: Gabriel Farkas [mailto:gabriel@advantechcorp.com]
> Sent: Wednesday, July 28, 2004 9:40 AM
> To: Levangie, Lori; Karagianis, Georgia
> Cc: Gennady Farberov; 'Gabe Hauer'; Joe Stelmack; Jim Hampson
> Subject: RE: Hunts Point
>
>
> OK, four days later still ... checking ...., for how long?
>
> Gabriel Farkas, PMP
> Project Manager
> AdvanTech Corporation
> 27 Daniel Rd. West
> Fairfield, NJ 07004
> Phone: 973-808-8550 Extension 21
> Fax:  973-808-2923
>
>
> > -----Original Message-----
> > From: Levangie, Lori [mailto:llevangie@tycoint.com]
> > Sent: Saturday, July 24, 2004 10:12 AM
> > To: gabriel@advantechcorp.com; Karagianis, Georgia
> > Cc: Gennady Farberov; 'Gabe Hauer'; Levangie, Lori; Joe Stelmack; Jim
> > Hampson
> > Subject: RE: Hunts Point
> >
> >
> > ....checking.....
> >
> > Lori Levangie
> > Northeast Regional Manager
> > Fixed Instruments Division
> > Tyco / Scott Instruments
> > Cell – 610-662-9477

AR0095

```
>> Fax - 484-214-0137
>> www.scottinstruments.com
>>
>>
>> -----Original Message-----
>> From: Gabriel Farkas [mailto:gabriel@advantechcorp.com]
>> Sent: Thursday, July 22, 2004 8:03 AM
>> To: Karagianis, Georgia
>> Cc: Gennady Farberov; 'Gabe Hauer'; Levangie, Lori; Joe Stelmack; Jim
>> Hampson
>> Subject: RE: Hunts Point
>>
>>
>> Georgia,
>>
>> Any news on the last three sensors? July is almost over...
>>
>> Thank you,
>>
>> Gabriel Farkas, PMP
>> Project Manager
>> AdvanTech Corporation
>> 27 Daniel Rd. West
>> Fairfield, NJ 07004
>> Phone: 973-808-8550 Extension 21
>> Fax:   973-808-2923
>>
>>
>>> -----Original Message-----
>>> From: Karagianis, Georgia [mailto:GKaragianis@tycoint.com]
>>> Sent: Thursday, July 01, 2004 10:12 AM
>>> To: 'gabriel@advantechcorp.com'; Karagianis, Georgia
>>> Cc: Gennady Farberov; 'Gabe Hauer'; Levangie, Lori; Joe Stelmack; Jim
>>> Hampson
>>> Subject: RE: Hunts Point
>>>
>>>
>>> Gabriel,
>>> Last I heard, end of July.
>>> I am doing everything possible to obtain a better date.
>>> Thanks
>>> Georgia
>>>
>>> -----Original Message-----
>>> From: Gabriel Farkas [mailto:gabriel@advantechcorp.com]
>>> Sent: Thursday, July 01, 2004 9:37 AM
```

AR0096

>>> To: Karagianis, Georgia
>>> Cc: Gennady Farberov; 'Gabe Hauer'; Levangie, Lori; Joe Stelmack; Jim
>>> Hampson
>>> Subject: RE: Hunts Point
>>> Importance: High
>>>
>>>
>>> Georgia,
>>>
>>> Thank you for your help. However, if we don't have all the
>>> required sensors,
>>> the situation is almost identical to not having any, because
>> the job will
>>> not be completed and accepted by the owner.
>>>
>>> When do you expect to have the other three units?
>>>
>>> Thank you,
>>>
>>> Gabriel Farkas, PMP
>>> Project Manager
>>> AdvanTech Corporation
>>> 27 Daniel Rd. West
>>> Fairfield, NJ 07004
>>> Phone: 973-808-8550 Extension 21
>>> Fax:  973-808-2923
>>>
>>>
>>>> -----Original Message-----
>>>> From: Karagianis, Georgia [mailto:GKaragianis@tycoint.com]
>>>> Sent: Wednesday, June 30, 2004 5:51 PM
>>>> To: Karagianis, Georgia; 'gabriel@advantechcorp.com'
>>>> Cc: 'Gabe Hauer'; Levangie, Lori
>>>> Subject: RE: Hunts Point
>>>>
>>>>
>>>> Gabriel
>>>> I just received word that I will receive 7 on Friday, which I will
>>>> immediately ship.
>>>> The remaining 3 are still on back order and I will do my best to
>>>> expedite.
>>>> I apologize for any inconvenience this has caused.
>>>> Your patience is greatly appreciated.
>>>> Thanks
>>>> Best Regards
>>>> Georgia

AR0097

>>>>
>>>>
>>>> -----Original Message-----
>>>> From: Karagianis, Georgia
>>>> Sent: Tuesday, June 29, 2004 6:46 PM
>>>> To: 'gabriel@advantechcorp.com'
>>>> Cc: Gabe Hauer; Levangie, Lori
>>>> Subject: RE: Hunts Point
>>>>
>>>>
>>>> Gabriel,
>>>> I just spoke with our vendor, they are making every effort to
>>>> expedite your
>>>> request.
>>>> They will advise me of a delivery date tomorrow afternoon.
>>>> I will contact you as soon as I have a response.
>>>> I apologize for the delay and any inconvenience this has caused.
>>>> Your understanding is greatly appreciated.
>>>> Thank you,
>>>> Georgia
>>>>
>>>> -----Original Message-----
>>>> From: Gabriel Farkas [mailto:gabriel@advantechcorp.com]
>>>> Sent: Tuesday, June 29, 2004 3:24 PM
>>>> To: Georgia Karagianis
>>>> Cc: Gabe Hauer
>>>> Subject: Hunts Point
>>>>
>>>>
>>>> Georgia,
>>>>
>>>> Any news on the sensor delivery?
>>>>
>>>> Thanks,
>>>>
>>>> Gabriel Farkas, PMP
>>>> Project Manager
>>>> AdvanTech Corporation
>>>> 27 Daniel Rd. West
>>>> Fairfield, NJ 07004
>>>> Phone: 973-808-8550 Extension 21
>>>> Fax:   973-808-2923
>>>>
>>>
>>
>

AR0098



*tyco*

*Fire &*
*Security*

*Tyco Fire and Security*
*One Town Center Road*
*Boca Raton, FL 33486*

*Telephone: 561-988-3600*
*Fax: 561-988-3631*

## Interoffice Memorandum

*This correspondence may contain confidential information intended for the use of the individual or entity to whom it is addressed. If the reader is no the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination of copying is strictly prohibited.*

| | |
|---|---|
| *Date* | 12/15/04 |
| To | Cigna |
| From | Nicole Gibian |
| Subject | Daniel Roarty |

Please use this letter as clarification that Mr. Roarty was NOT on business travel at the time of the accident that caused his death.    If you need additional information, please contact Felicia Johnson at the HRSC, 800-924-8518.

**U.S.D.C. – District of Delaware**
**Roarty v. Tyco Int'l Ltd., Group BTA Plan, et al.**
**Docket No.: 06-0195-GMS**                    AR0130
**Exhibit No.: 5**

## Miller, Marcy L 250

| | |
|---|---|
| **From:** | Miller, Marcy L 250 |
| **Sent:** | Tuesday, December 14, 2004 10:13 AM |
| **To:** | 'Johnson, Felicia' |
| **Subject:** | RE: BTA - Roarty |

Felicia,

Thank you for checking into this.  I paid the AD&D claim today, so just the BTA is pending.

Marcy L. Miller
Accident Claim Specialist
CIGNA Group Insurance
PH: 800.238.2125 ext. 3224
FX: 412.402.3316
E-Mail: Marcy.Miller@cigna.com

> -----Original Message-----
> **From:** Johnson, Felicia [mailto:feljohnson@adt.com]
> **Sent:** Tuesday, December 14, 2004 9:51 AM
> **To:** Gibian, Nicole
> **Cc:** Gallman, Audrey Y
> **Subject:** RE: BTA - Roarty
>
> Please have HR Jennifer Napier contact me regarding this account this is one of numerous of times on this one account I have been waiting or requested information. I have not received the fax from Jennifer for Cigna's request.  If there is no proof that the employee was on business travel she needs a letter.  The spouse is very frustrated on the time frame for the status on her claim.
>
> Felicia Johnson
> ADT/Tyco
> HRSC Benefits Specialist/Life Claims Coordinator
> 800-600-6641 ext. 3944
> Fax 904-620-7952
>> -----Original Message-----
>> **From:** Miller, Marcy L 250 [mailto:Marcy.Miller@CIGNA.com]
>> **Sent:** Tuesday, December 14, 2004 9:05 AM
>> **To:** Johnson, Felicia
>> **Subject:** BTA - Roarty
>>
>> Hi Felicia,
>>
>> I am just following up on some information for Daniel Roarty's BTA claim.  Has Mr. Roarty's manager or HR Department provided you with confirmation that he was on a work trip at the time of his death?  The last e-mail you sent said the HR Dept was going to fax you something.
>>
>> Thanks,

12/14/2004

**U.S.D.C. -- District of Delaware**
**Roarty v. Tyco Int'l Ltd., Group BTA Plan, et al.**
**Docket No.: 06-0195-GMS**
**Exhibit No.: 4**

AR0134

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| KELLY ROARTY<br>        Plaintiff<br><br>    v.<br><br>TYCO INTERNATIONAL, LTD. GROUP<br>BUSINESS TRAVEL ACCIDENT<br>INSURANCE PLAN AND LIFE<br>INSURANCE COMPANY OF NORTH<br>AMERICA<br>        Defendants. | Civil Action No:  06-0195-GMS |

## CERTIFICATE OF SERVICE

I, Herbert Mondros, Esquire, hereby certify that I caused the foregoing Defendants'
Re-filed Memorandum of Law in Support of Protective Order Limiting Discovery and
Admissible Evidence to the Administrative Record to be electronically filed today with the
Clerk of Court using the Court's CM/ECF system, which will send a Notice of Electronic
Filing to Richard R. Wier, Jr., Esquire, Two Mill Road, Suite 200, Wilmington, DE 19806.

A true and correct, courtesy copy of Defendants' Reply has also been served today
upon Mr. Wier by United States Mail, postage prepaid.

                                    MARGOLIS EDELSTEIN

BY:        _____
                                    HERBERT MONDROS, ESQUIRE (#2407)
                                    Margolis Edelstein
                                    750 South Madison Street        *3308*
                                    Suite 102,
                                    Wilmington, DE 19801
                                    (302) 888-1112
                                    jmartin@margolisedelstein.com

Date: October 18, 2007