# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

KELLY ROARTY                                    :
                                                :
      Plaintiff,                             :
                                                :
    v.                                         :        C.A. No.  06-0195-GMS
                                                :
TYCO INTERNATIONAL LTD. GROUP    :
BUSINESS TRAVEL ACCIDENT            :
INSURANCE PLAN, an employee              :
welfare benefit plan, and                       :
LIFE INSURANCE COMPANY OF           :
NORTH AMERICA, Plan Administrator,    :
                                                :
      Defendants.                            :


       This matter having come before the court at a pretrial conference held pursuant to Federal

Rule of Civil Procedure, and Richard R. Wier, Jr. and Michele D. Allen having appeared as counsel

for plaintiff and Herbert W. Mondros and Mark C. Stephenson having appeared as counsel for

defendants, the following actions were taken:

(1)     This is an action for employee welfare benefits under sections 502(a)(1)(B) and (a)(3) of the

        Employee Retirement Income Act of 1974 ("ERISA"), as amended, 29 U.S.C. §

        1132(a)(1)(B) to recover denied business travel accidental death benefits and breach of

        fiduciary duty, which issues are raised in the Complaint.  Jurisdiction is not disputed.

(2)     The following stipulations and statements were submitted and are attached to and made a

        part of this Order.

       (a)    **Statement of All Uncontested Facts**

           1.    Tyco International, Ltd. ("Tyco") sponsors and maintains an employee

                welfare benefit plan (the "BTA plan") within the meaning of 29 U.S.C.

                §1002(1) that provides covered employees with a death benefit pursuant to

                the terms of the Plan, should they die as the result of an accident while

engaged in business travel on Tyco's behalf.

2.    The BTA Plan provides in relevant part that:

[The Plan] will pay the benefits described in the policy for any accident which occurs anywhere in the world while a covered person, on a business trip, is traveling or making a short stay:
   a) away from your premises in his city of permanent assignment; and
   b) on business for you, and in the course of your business.
All trips must be authorized by you.

This coverage does not include:
   a) commuting between the person's home and place of work; or
   b) during personal deviations made by the covered person.
Personal deviation" as used here, means an activity that is not reasonably related to your business, and not incidental to the business trip.

This coverage will start at the actual start of a trip. It does not matter whether the trip starts at the covered person's home, place of business, or other place. The coverage will end when the covered person:
   a) arrives at his home or place of work, which ever happens first; or
   b) makes a personal deviation.

3.    The BTA plan delegates discretionary authority to the plan's claim fiduciary,

and states:

The Plan Administrator of the Employer's employee welfare benefit plan (the Plan) has applied the Insurance Company as the Plan fiduciary under federal law for the review of claims for benefits provided by this Policy and for deciding appeals of denied claims, In this role the Insurance Company shall have the authority, in its discretion, to interpret the terms of the Plan documents, to decide questions of eligibility for coverage or benefits under the Plan, and to make any related findings of fact. All decisions made by the Insurance Company in this

capacity shall be final and binding on participants and
beneficiaries of the Plan to the full extent permitted by
law.

The Insurance Company has no fiduciary responsibility with
respect to the administration of the Plan except as described
above. It is understood that the Insurance Company's sole
liability to the Plan and to the Participants and Beneficiaries
under the Plan shall be for the payment of benefits provided
under this Policy.

3.    Daniel Roarty was employed by Scott Instruments, a Tyco subsidiary, as
Senior Product Manager and was a covered employee in the BTA plan.

4.    Plaintiff Kelly Roarty is the widow of Daniel Roarty, and his beneficiary
pursuant to the BTA plan.

5.    On August 8, 2004, Daniel Roarty died as the result of a motor vehicle
accident in Lancaster County, Pennsylvania while returning his home to Newark, Delaware from
Pittsburgh, Pennsylvania.

6.    As a covered employee in the BTA plan, upon the event of Daniel Roarty's
death in a manner covered by the BTA plan, his beneficiary would become entitled to a benefit of
$500,000.

7.    Life Insurance of Company of North America ("LINA") was underwrote the
BTA plan's benefits, and was claim fiduciary to the BTA plan within the meaning of 29 U.S.C.
§1002(21)(A)(iii).

8.    On or about August the 10th or 11th, 2004, Robert Bierzynski, a co-worker of
Daniel Roarty, went to Hershey Medical Center for the purpose of advising Kelly Roarty of the
employee benefits that would become due to her as the result of her husband's death.

9.    In August, 2004, Lanny Tomberlin was the Tyco human resources director
assigned to Scott Instruments.

10.    Prior to his visit with Kelly Roarty, Tomberlin told Bierzynski that Daniel Roarty's death would be covered under the BTA plan because that plan covered employees 24 hours, 7 days a week.

11.    Kelly Roarty filed a claim for benefits on or about September the 3rd, 2004 and provided supporting documentation.

12.    Tyco benefit representative Felicia Johnson spoke with Kelly Roarty b y telephone to discuss questions that Mrs. Roarty had with regard to her claim for life insurance benefits.

13.    On November 18, 2004, Johnson contacted Tyco human resources representative Jennifer Napier to request a statement as to whether Daniel Roarty was engaged in business travel at his death.

14.    On November 18, 2004, Tyco representative Johnson forwarded Kelly Roarty's claim to LINA.

15.    On December the 17th, 2004, LINA, as claim fiduciary to the BTA plan, denied the claim for business travel accident benefits made by Kelly Roarty.

16.    On February 12th, 2005, Ms. Roarty filed an appeal of the decision denying her the business travel accident benefits.

17.    On March the 24th, 2005, LINA informed Ms. Roarty by letter that her appeal from the denial of her claim had been denied.

18.    In August 2004, the Scott facility where Daniel Roarty worked had no formal travel policy, plan, or procedures.

19.    Bob Bierzynski was not Daniel Roarty's supervisor.

20.    In August, 2004, Daniel Roarty was authorized to approve his own business travel.

21.     Mr. Bierzynski was aware that Mr. Roarty had intended to visit the Bachrach Plant in August, 2004.

22.     Mr. Roarty was authorized to visit the Bachrach Plant, if required by his job to do.

23.  In early 2004, Tyco contracted with a production plant in Pittsburgh, Pennsylvania, for the production of sensor equipment.  The sensors were to be delivered to Tyco on April the 20th, 2004 so that it could distribute them to its customers.

24.  In late June, 2004, one of Tyco's customers began complaining that the sensors that had been ordered from the Bachrach Plant were overdue.  Tyco was unable to obtain satisfactory answers as to the lateness from the Bachrach Plant regarding the sensors.

25.  In July, 2004, the situation was brought to the attention of Bob Bierzynski.

26.  Prior to July 2004, Daniel Roarty had planned to vacation in Pittsburgh in order to attend a family wedding, with his last work day being Friday, July 30, 2004, and returning Monday, August 9, 2004.

27.  On or about July 30th, 2004, Mr. Roarty advised Bob Bierzynski and others in senior management positions for Scott Instruments that he intended to visit the Bachrach Plant to find out why it was taking so long to build the sensors.

28.  On Friday, July 30, 2004, his last work day, Mr. Roarty told Tyco sales manager Lori Levangie and others:

> *I will be in Pittsburgh next week on vacation.*  Regis [Wyse] is going to set up a day for me to go into the Bacharach plant and find out why the sensor is taking so long to build.

29.     Scott Instruments employee Regis Wyse made arrangements to visit the Bachrach Plant with Daniel Roarty.

30.     Regis Wyse arranged a meeting with Bachrach personnel for Daniel Roarty and himself to be held on Tuesday, August the 3rd, 2004.

31.     On August 2, 2004, while Daniel Roarty was en route to the Pittsburgh area, the August 3rd meeting was cancelled and rescheduled for Thursday, August 5th, 2004.

32.     On August 4, 2004, Scott Instrument and Bachrach management, reached an agreement that resolved the sensor issue, such that the August 5, 2004 meeting was cancelled without a new date.

33.     During his week of vacation in Pittsburgh, Mr. Roarty did not travel from his vacation residence to the Bachrach plant.

34.     On August 7, 2004, Daniel Roarty attended his niece's wedding.

35.     On August the 8th, 2004, Mr. Roarty returned home from his vacation when his vehicle was struck by a truck that failed to stop at a stop sign.

36.     Mr. Roarty was pronounced dead at the scene of the collision.

37.     LINA paid Plaintiff the full amount of her claims for life insurance and accidental death insurance, which totaled $144,000 without dispute and promptly.

**(b)     Contested Issues of Fact**

i).     Plaintiff:

1.     Whether or not Mr. Roarty was on a traveling on his employer's business at the time of his death.

2.     Whether or not the business travel accident plan covered Mr. Roarty's travel to Pittsburgh in August, 2004.

3.     Whether the Plan covered Mr. Roarty 24/7 regardless of whether he was on a business trip.

4.     Whether Mr. Roarty's trip was authorized.

ii).    **Defendants**

1.    Whether Daniel Roarty traveled to Pittsburgh for family vacation and to attend a wedding.

2.    Whether Daniel Roarty ever commenced a business trip in light of the cancellation of the meetings which would have required such travel.

3.    Whether Daniel Roarty was traveling home from his planned vacation and attendance at his niece's wedding when he died in an automobile accident?

**Contested Issues of Law**

**i.)    Plaintiff**

**Plaintiff cites the Court to its Motion for Summary Judgment for authority supporting the following legal issues.**

1.    The Standard of Review which the Court should apply is.

a.    A *de novo* review

b.    At a minimum, the Court should review the decisions to deny any benefits will a heighten scrutiny.

2.    Under either standard of review the Court should consider evidence outside the administrative record.

3.    Whether the denial of benefits was unreasonable and whether or not the decision was supported by substantial evidence.

4.    Whether Defendants breached their fiduciary duties.

5.    Whether the failure to amend the Summary Plan Description and notify Mr. Roarty of any change in the Plan estops Defendants from denying the death benefit to Ms. Roarty.

6.    Whether Defendants misled Ms. Roarty and denied her claim without exhausting its review.

7.     Whether Tyco breached its fiduciary duty to investigate the claim and provide accurate information to LINA.

**B.     Defendants**

**Defendants cite the Court to their Motion for Summary Judgment for authority supporting the following legal issues.**

1.     In light of the BTA plan's clear grant of discretionary authority to LINA as its claim fiduciary, should the Court review the decision to deny Plaintiff's claim under a deferential standard of review?   Defendants contend that the Court should defer to LINA's decision to the extent that the Court finds it a reasonable one.   Defendants have relied in their motion for summary judgment upon the following authorities in regard to this issue of law.

> *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 111-12, 115 (1989);
> *Bill Gray Enters, Inc. Employee H&W Plan v. Gourley*, 248 F.3d 206, 216 (3d Cir. 2001); *Skretvedt v. E.I. DuPont de Nemours and Co.*, 268 F.3d 167, 173-74 (3d Cir.2001); *Pinto v. Reliance Standard Life Ins. Co.*, 214 F.3d 377 (3d Cir. 2000);
> *Mitchell v. Eastman Kodak Co.*, 113 F.3d 433, 438 (3d Cir.1997);
> *Cord v. Reliance Standard Life Ins. Co.*, 362 F. Supp. 2d 480, 484 (D. Del. 2005);
> *Dinote v. United of Omaha Life Ins. Co.*, 331 F. Supp.2d 341 (E.D. Pa. 2004).

2.     In the absence of any evidence of bias or conflict in LINA's decision making process, should the Court apply heightened scrutiny to LINA's claim decision and even if so, should such scrutiny be only very slightly heightened?   Defendants contend that any conflict that might have existed with regard to LINA's decision is purely structural and not actual. Defendants submit that should the Court find any basis for scrutiny, that scrutiny should be very slight in the absence by Plaintiff of biased or conflicted conduct that affected the outcome of her claim.   .   Defendants have relied in their motion for summary judgment upon the following authorities in regard to this issue of law.

> *Post v. Hartford Ins. Co.*, 501 F.3d 154 (3d. Cir 2007); *Stratton v. E.I. DuPont De Nemours & Co.*, 363 F.3d 250, 255 (3d Cir.2004); *Bill Gray Enters, Inc. Employee H&W Plan v. Gourley*, 248 F.3d 206, 216 (3d Cir. 2001); *Pinto v. Reliance Standard Life Ins. Co.*, 214 F.3d 377 (3d Cir. 2000).

3.    Whether the Court should allow into evidence alleged facts that are not part of the administrative record.  Defendants contend that the Court should not.  While the Court might allow such evidence if Plaintiff demonstrates clear evidence of biased or conflicted behavior by Defendants, she has not done so in this case.   The clear precedent of the Court of Appeals in this circumstance is that the alleged facts offered by Plaintiff that do not arise from the administrative record should not be allowed.  Defendants have relied in their motion for summary judgment upon the following authorities in regard to this issue of law.

*Kosiba v. Merck & Co.,* 384 F.3d 58, 67 n. 5 (3d Cir. 2004)
*Mitchell v. Eastman Kodak Co.,* 113 F.3d 433, 438, 440 (3d Cir.1997).

4.    Was LINA's decision that Daniel Roarty had not been engaged in business travel as he drove home from vacation a reasonable decision that the Court should affirm? Defendants contend that under all of the circumstances as established by the administrative record, the Court should conclude that the conclusion reached that Daniel Roarty was returning from a vacation and wedding when he died and not from a business trip was reasonable.   Even if the Court allows evidence beyond the administrative record, Defendants submit that their decision remains a reasonable one that the Court should affirm.   Defendants have relied in their motion for summary judgment upon the following authorities in regard to this issue of law.

Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 111-12, 115 (1989);
Lifson v. INA Life Insurance Co. of New York, 333 F.3d 349 (2d Cir. 2003);
Skretvedt v. E.I. DuPont de Nemours and Co., 268 F.3d 167, 173-4 (3d Cir.2001); Garber v. Provident Life Ins. Co., 181 F.3d 100 (6th Cir. 1999) (Table); Mitchell v. Eastman Kodak Co., 113 F.3d 433, 437 (3d Cir.1997); McGrath v. Home Insurance Co., 813 F. Supp. 276 (D. Del. 1993).

5.    Whether Plaintiff's claim of breach of fiduciary duty under ERISA §502(a)(3) is subsumed in her claim to recover denied benefits under ERISA §502(a)(1)(B) as the claims seek identical relief upon identical allegations of fact.  Previously, the Court has declined to dismiss Plaintiff's claim of breach of fiduciary duty under ERISA §502(a)(3) under Federal Rule of

Civil Procedure 12(b)(6), and has allowed Plaintiff opportunity to discover whether facts exist to support her claim. Defendants submit that Plaintiff has adduced no evidence of breach of fiduciary duty by any defendant in this matter other than their denial of her claim. Defendants submit that under circumstances that now exist a plaintiff should not be allowed to seek "other equitable relief" under Section 502(a)(3) where she seeks a remedy for precisely the same alleged wrong under Section 502(a)(1)(B), and ask the Court to dismiss the claim. Defendants have relied in their motion for summary judgment upon the following authorities in regard to this issue of law.

> *Varity Corporation v. Howe*, 516 U.S. 489, 515 (1996);
> *Skretvedt v. E.I. Dupont de Nemours*, 372 F.3d 193, 205 (3d Cir. 2004);
> *Harrow v. Prudential Life Ins. Co.*, 279 F.3d 244, 254-55 (3d Cir. 2002);
> *Caffey v. Unum Life Ins. Co.*, 302 F.3d 576, 583-84 (6th Cir. 2002)
> *Smith v. Sydnor*, 184 F.3d 356, 362 (4th Cir. 1999); *Ranke v. Sanofi-Synthelabo*, 2004
> WL 2473282 (E.D.Pa. 2004); *Tannenbaum v. UNUM Life Ins. Co.*, No. 03-1410,
> 2004 WL 1084658 (E.D.Pa. 2004); *Weinreb v. Hospital for Joint Diseases Orthopaedic
> Institute*, 285 F.Supp.2d 382, 388 (S.D.N.Y. 2003); *Blum v. Spectrum Rest. Group
> Empl. Grp. Life and Suppl Life Plan*, 2003 WL 302218 (E.D. Tex. 2003); *Hartman v.
> Wilkes-Barre General Hospital*, 237 F. Supp. 2d 552 (M.D. Pa. 2002).

(c)    LIST OF EXHIBITS

)i.    **Plaintiff's Exhibits;**

A listing of Plaintiff's exhibits are hereto as Schedule  C

Defendants object to Plaintiff Exhibits No. V through FF as not documents among those that comprise the administrative record.

B.    **Defendants' Exhibits:**

1.    Administrative Record (AR0001-206)

2.    Tyco benefits call center notes (DEF0207-244)

3.    Tyco benefits center claim file (DEF0245-279)

4.    All exhibits identified by Plaintiff, not objected to or as may

otherwise be determined to be admissible by the Court.

Defendants respectfully advise the Court that the documents that comprise their Exhibits Nos. 2 and 3 are not part of the Administrative Record. Defendants object to the allowance of these documents into evidence; however, they have identified them as potential exhibits, should the Court determination that the scope of admissible evidence in this matter would allow admission of these documents.

d)    **LIST OF WITNESSES**

i).    **Plaintiff's witnesses**

Plaintiffs intend to call the following persons as witnesses, either in person or by deposition, at the trial of this case.

1.    Kelly Roarty - 319 Palomino Drive, Newark, Delaware 19711;

2.    Bob Bierzynski, Scott Health and Safety, 4320 Goldmine Road, Monroe, North Carolina 28110 (by deposition).

3.    Lanny Tomberlin - Charlotte, North Carolina

4.    Gerry LaFond a co-worker of Mr. Roarty.

5.    Children who were on the trip.

Defendants object to testimony offered by Gerry LaFond and Plaintiff's children as not admissible. The appropriate standard of review by the Court in this matter should be an arbitrary and capricious one, and admissibility of evidence should be limited to the facts put before the claim fiduciary. Plaintiff has never offered evidence from her children until time of trial on any issue before the Court. Plaintiff has provided documents that mention Mr. LaFond without consequence, namely a single email from Mr. LaFond to himself without content (AR0089), effectively leaving Mr. LaFond silent in the administrative record and offering no support to Plaintiff's claim. Defendants submit that the Court should decline to admit this evidence at trial, which was not provided during the claim process.

ii).    **Defendants' Witnesses**

Defendants intend to call some or all of the following persons as witnesses, either in person or by deposition, at the trial of this case.

1.    Marcy Miller, c/o Life Insurance Company of North America, 1601 Chestnut Street, Philadelphia, PA.

2.    Robert Killmer, c/o Life Insurance Company of North America, 1601 Chestnut Street, Philadelphia, PA.

3.    Brian Billiter, c/o Life Insurance Company of North America, 1601 Chestnut Street, Philadelphia, PA.

4.    All witnesses identified by Plaintiff, as may be determined by the Court to be admissible.

### iii).    **Expert Witnesses**

Neither party intends to introduce expert testimony at trial.

g)    Damages

The parties agree that the amount of damages at issue is the BTA plan death benefit of $500,000.   Plaintiff seeks an award for Defendants' breach of fiduciary duty and of attorney fees and costs.

(l)    All parties have completed discovery, including the depositions of expert witnesses.

(3)    Trial of this case is expected to take two to three days.

(4)    This matter is a NON-JURY trial.

(5)    (Not applicable).

(6)    This order shall control the subsequent course of the trial and may not be amended except by consent of the parties and the court, or by order  of the Court to prevent manifest injustice.

(7)    Possibility of settlement of this case was considered by the parties.

Dated: _____, 2008

_____
CHIEF UNITED STATES DISTRICT JUDGE


___/s/ Richard R. Wier, Jr.
Richard R. Wier, Jr.(#716)
Michele D. Allen (#4359)
Richard R. Wier, Jr, P.A.
Two Mill Road, Suite 200
Wilmington, DE 19806


Attorneys for Plaintiff

___/s/ Herbert W. Mondros___
Herbert Mondros (#3308)
Margolis Edelstein
750 South Madison Street, Suite 102
Wilmington, DE 19801
(302) 777-4680

and


Mark C. Stephenson, Esquire
Nelson Levine deLuca & Horst, LLC
518 Township Line Road
Blue Bell, PA 19422
(215) 358-5175

Attorneys for Defendants

**Schedule "C"**

**Plaintiff's Exhibits**

1.      The following exhibits were offered by plaintiff, received in evidence and marked as indicated:

A.      #AR0002 - Blanket accident policy describing the terms of the business travel accident plan.

B.      #AR0014- General definitions to the plan.

C.      #AR0022- Claim provisions

D.      #AR0036- Changes to the claims provision

E.      #AR0065- A letter dated March 24th, 2005 to Kelly Roarty from Brian Billeter, which is the denial of Ms. Roarty's appeal regarding Mr. Roarty's business travel accident benefits

F.      #AR0075- Letter to Kelly Roarty from Robert Killmer, dated March 11th, 2005 stating that he is waiting for additional information from Tyco International in order to rule on the appeal.

G.      #AR0076 which is a telephone message dated March the 11th, 2005.

H.      #AR0078 which is a telephone log call dated March the 1st, 2005.

I.      #AR0084 thru  #AR0098 which is the letter from Kelly Roarty to Lynn George, dated February 12th, 2005, appealing the initial decision of denial of benefits.

J.      #AR0104 thru #AR0113 which is the police report regarding Dan Roarty's death.

K.      #AR0115 thru #AR0117 which is a letter dated December 17th, 2004 to Kelly Roarty from Marcie L. Miller denying the benefits of Mr. Roarty under the business travel accident benefits plan.

L.      #AR0244 is an e-mail stating that the business travel accident plan was never updated in the summary plan description.

M.     #AR0001 thru #AR0047- The accident plan by LINA for Tyco International in its entirety.

N.     #AR0082- A letter dated February 15th, 2005 from Lynn N. George to Ms. Roarty stating that they have received her appeal and that it would be referred to Robert Killmer.

O.     #AR0083- Certificate of death.

P.     #AR0114- Telephone log message dated 1/5/04.

Q.     #AR0122- A letter dated December 17th, 2004 from Marcie Miller to Kelly Roarty regarding an initial denial of the benefits under the business travel accident plan.

R.     #AR0130- Interoffice memorandum dated 12/15/04 from Nicole Gibian.

S.     #AR0134 thru #AR0135- Series of e-mails between Felicia Johnson and Marcie Miller and Nicole Gibian.

T.     #AR0143 E-mail from Marcie Miller to Felicia Jones, dated November the 24th, 2004.

U.     #AR0144 thru #AR0145- The claim that was actually filed.

V.     #AR0216- E-mail dated 9/15/04

W.     #AR0217- E-mail from Nicole dated 9/16/04

X.     #AR0218- E-mails dated 9/22/04

Y.     #AR0224- E-mail dated 11/14/04

Z.     #AR0227- E-mail dated 12/6/04

AA.     #AR0228- E-mail dated 2/14/04

BB.     #AR0229- E-mail dated 12/16/04

CC.     #AR0237- E-mail dated 3/3/05

DD.     #AR0239- E-mail dated March 9th, 2005

EE.     #AR0241- E-mail dated 4/7/05

FF.    #AR0253- Letter from Kelly Roarty dated October 10th, 2004

GG.    Summary Plan Description

2.    The following exhibits were offered by Plaintiff and marked for identification.

Defendants objected to their receipt in evidence on the grounds stated:

3.    The following exhibits were offered by Defendants, received in evidence and marked as

indicated:

4.    The following exhibits were offered by Defendants and marked for identification.  Plaintiff

objected to their receipt in evidence on the grounds stated:

**Schedule (j):**

**Plaintiff's Findings of Fact:**

       1.     Kelly Roarty is the widow of Daniel Roarty, and the beneficiary of the ERISA plan for Mr. Roarty.

       2.     Mr. Roarty was the Senior Product Manager for Scott Instruments.

       3.     On August 8, 2004, Mr. Roarty was struck and killed by a negligent driver in Pennsylvania while returning home to Newark, Delaware from Pittsburgh, Pennsylvania.

       4.     Tyco International Ltd. Business Travel Accident Insurance Plan ("the Plan") is an employee welfare benefit plan within the meaning of ERISA, which is provided by (Tyco).

       5.     As an employee of Tyco, Mr. Roarty was a participant in the Plan, which provided for an accidental death benefit for its employees who die accidentally while traveling on business in the amount of $500,000.

       6.     Life Insurance of Company of North America, ("LINA") was the underwriting company of the Plan and the Plan's claims fiduciary.

       7.     LINA admits that its claim services are provided exclusively through its underwriting subsidiaries, including LINA.

       8.     On or about August the 10th or 11th, Bob Bierzynski came to Hershey Medical Center to discuss the benefits that would be due to Ms. Roarty due to Mr. Roarty's death.

       9.     In August, 2004, Lanny Tomberlin was the Tyco Human Resources Director and he told Mr. Bierzynski that Mr. Roarty would be covered under the business travel accident plan, because that plan covered employees 24 hours, 7 days a week regardless of whether they were on business.

      10.     Mr. Bierzynski stated that Mr. Roarty would be receiving basic life

insurance, accidental and death, dismemberment and business travel accident.

11.    Kelly Roarty filed a claim for benefits on or about September the 3rd, 2004 and provided certain documentation.

12.    Felicia Johnson at Tyco forwarded Ms. Roarty's claim to LINA on or about November 18th, 2004.

13.    Approximately two weeks later, Ms. Roarty was contacted by Lanny Tomberlin, who was the Tyco Human Resources manager responsible for Scott and the Exton facility where Ms. Roarty is employed.  Mr. Tomberlin contacted Ms. Roarty to apologize for the confusion by Tyco benefits but that there had been a change to the business travel accident plan and Mr. Roarty would only be eligible for benefits if he was engaged in business travel at the time of the accident on an authorized business trip.

14.    The Tyco Summary Plan Description,, at the time of Mr. Roarty's death provided coverage 24 hours a day, 7 days a week, anytime, anywhere.  No amendment to that Summary Plan Description was provided to Mr. Roarty or Tyco employees prior to Mr. Roarty's death.

15.    Lanny Tomberlin admits that he was unaware that the business travel accident plan had been changed and that the Summary Plan Description had not been changed in his office.

16.    On December the 17th, 2004, Ms. Roarty was denied the business travel accident benefits of Mr. Roarty.  On February 12th, 2005, Ms. Roarty filed an appeal of the decision denying her the business travel accident benefits.  On March the 24th, 2005, Brian Billeter, the accident claims manager, informed Ms. Roarty that the appeal was being denied.

17.    In August 2004, Scott facility in Exton, where Mr. Roarty had worked, had no formal travel policy, plan, or procedures.

18.     Bob Bierzynski was not Mr. Roarty's supervisor.

19.     There was no need to have written approval to go on business trips.

20.     In August, 2004, Dan Roarty was authorized to approve his own business travel.

21.     The summary plan description was never updated to reflect any change in the business travel accident plan, changing it from 24 hours, 7 day a week coverage.

22.     Mr. Bierzynski was aware that Mr. Roarty had intended to visit the Bachrach Plant in August, 2004.

23.     Mr. Roarty was authorized to visit the Bachrach Plant.  In early 2004, Tyco contracted with a production plant in  Pittsburgh, Pennsylvania, for the production of sensor equipment.  The sensors were to be delivered to Tyco on April the 20th, 2004 so that it could distribute them to its customers.

24.     In late June, 2004, one of Tyco's customers began complaining that the sensors that had been ordered from the Bachrach Plant were overdue.  Tyco was unable to obtain satisfactory answers as to the lateness from the Bachrach Plant regarding the sensors.

25.     In July, 2004, the situation was brought to the attention of Bob Bierzynski and it was agreed that Mr. Roarty would attempt to rectify the problem by visiting the Bachrach Plant.

26.     On or about July 30th, 2004, Mr. Roarty advised Bob Bierzynski and others in senior management positions for Tyco that he was going to visit the Bachrach Plant to find out why it was taking so long to build the sensors.

27.     Mr. Roarty made arrangements to visit the Bachrach Plant the following week since he would be in Pittsburgh on vacation.

28.     In order to visit the Bachrach Plant, Mr. Roarty altered his vacation plans.

Mr. Roarty took a separate car from his family and left for Pittsburgh on or about August the 2nd, 2004, which was earlier than planned for the vacation.

29. Mr. Roarty brought with him his laptop and cell phone.

30. A meeting had been arranged for Mr. Roarty to attend the Bachrach Plant on August the 3rd, 2004. The meeting was scheduled with Mr. Roarty, other Tyco employees, the regional manager for Scott Instruments, and two members of the Bachrach Plant.

31. While en route to the meeting in, Pittsburgh, the meeting was rescheduled for August the 5th, 2004.

32. On or about August the 4th, 2004, an agreement was reached and there was no longer a need to physically visit the Bachrach Plant, however, Mr. Roarty continued to work by making business phone calls.

33. On August the 8th, 2004, Mr. Roarty resumed his travel home from his business trip when his vehicle was struck by a truck that failed to stop at a stop sign.

34. Mr. Roarty was pronounced dead at the scene of the collision.

**Plaintiff's Conclusions of Law:**

**The Standard of Review which the Court should apply in the is case.**

In deciding this case the Court should apply a de novo review. "The Supreme Court has instructed [Courts] to review the determinations of a plan administrator de novo unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101,115 (1989). Although, LINA as the administrator was given fiduciary discretion in accordance with the Firestone Tire & Rubber Co. they failed to execute that discretionary standard and therefore the default de novo standard of review should apply. Moreover, "Whether terms in an ERISA Plan document are ambiguous is a question of law. A term is 'ambiguous if it is subject to reasonable

alternative interpretations.'"<u>Bill Gray Enterprises, Inc. Health and Welfare Plan v. Gourley</u>, 2001 U.S. App.. LEXIS 7922, at *26 (3d Cir. 2001). [I]f the plain language leads to two reasonable interpretations, courts may look to extrinsic evidence to resolve any ambiguities in the plan document." <u>Id.</u> The terms in the Plan are ambiguous and were subject to alternative interpretations. As stated in the findings of fact there were no policies, or procedures in place to determine what would be classified as a business trip. Without any definition, policies or procedures in place there will always be ambiguity in the interpretation of the policy. <u>Bill Gray Enterprises, Inc. Health and Welfare Plan</u>, 2001 U.S. App.. LEXIS 7922, at *26. Therefore, the Court must look to extrinsic evidence to determine whether Mr. Roarty was on a business at the time of his death.

However, if Court does find that a de novo standard of review applies the case must be reviewed with heightened scrutiny because the benefit plan gives the administrator and fiduciary discretionary authority to determine eligibility for benefits and to construe the terms of the plan. <u>Firestone Tire & Rubber Co.</u>, 489 U.S. at 115. The heightened scrutiny standard applies "where the administrator's decision is potentially clouded by a conflict of interest , such as where a plan administrator also funds the plan it administers," <u>Freccia v. Conectiv</u>, 2004 U.S. Dist. LEXIS 23894, at *8 ( D. Del. 2004). Even under that standard, which is applicable to this case, since LINA had a conflict of interest in that it funded the plan and administered the plan, <u>Pinto v. Reliance Standard Life Insurance Company</u>, 2000 U.S. App. LEXIS 11983, at *3 ( 3d Cir. 2000), assuming <u>arguendo</u> that the <u>de novo</u> standard does not apply, " the court...must 'look not only at the result-whether it is supported by reasons- but at the process by which the result was achieved.'" <i>Freccia,</i> 2004 U.S. Dist. LEXIS 23894, at *11. If the court determines that the administrator acted improperly than it will determine the case on the merits itself. <u>Post v. Hartford Insurance Company</u>, 2007 U.S. App. LEXIS 21911 *17 (3d Cir.).

**Defendants breached their fiduciary duty.**

Defendants owed Plaintiff a fiduciary duty and breached that duty. Section 404(a)(1) of the Employee Retirement act provides that "a fiduciary shall discharge its duties with respect to plan solely in the interest of the participants and beneficiaries." 29 U.S.C.S. § 1104(a)(1). A person under ERISA who exercises discretionary authority in managing or administering the plan is a "fiduciary". 29 U.S.C.S. § 1002(21)(A). Clearly LINA acted as a fiduciary in this case. A fiduciary in exercising it duties "may not materially mislead those to who the duties of loyalty and prudence are owed." Fischer v. Phila. Elec. Co.,994 F.2d 130,135 (3d Cir.) In accordance with ERISA it is important for fiduciaries to inform plan participants and beneficiaries of important specific information. Local 56, United Food And Commercial Workers Union, et. al. v. Campbell Soup Company, et. al. 898 F.Supp. 1118, 1140 (D.N.J. 1995). The Third Circuit has concluded that "where a plan administrator . . . fails to provide information when it knows that its failure to do so might cause harm, the plan administrator has breached its fiduciary duty to [plan participants and beneficiaries]." Id.; citing In Re Unisys Retiree Medical Benefit "ERISA" Litigation, 58 F.3d 896, 1995 WL 380983 * at 6 (Unisys A).

The fiduciary breach is based on the disclosure requirements in ERISA, 29 U.S.C. § 1102, 1021, and 1022. Unisys A, at *5, which include that a "a summary plan description of employee benefit plan is to be furnished to plan participants . . . which shall be sufficiently accurate and comprehensive to reasonable apprise such participants and beneficiaries of their rights and obligations under the plan." Id.; 29 U.S.C § 1022(a)(1). Information that must be included in a summary plan document are "the name and type of administration of the plan . . . circumstances which may result in disqualification, ineligibility, or denial or loss of benefits; the source of financing of the plan and the identity of any organization through which benefits are provided . . . ." Id; 29 U.S.C § 1022(b). A summary plan description "must not have the effect [of] misleading, misinforming or failing to inform participants and beneficiaries." Id. at 67; citing Unisys A, at *5.

The summary plan documents provide essential tools for fiduciaries to use in order to communicate changes in the plan or inform the participants or beneficiaries of the status of the plan.  Id. Defendants breached their fiduciary duty when they failed to update the summary plan description.

Moreover, in the context of ERISA, a fiduciary's duty of loyalty requires that the fiduciary deal fairly and honestly with beneficiaries.  Vanity Corp. v. Howe, 516 U.S. 489, 506 (1996).  For all the reasons stated supra, Plaintiff has quite clearly articulated that Defendants did not deal with Plaintiff fairly or honestly.  Defendant LINA improperly delegated its authority of investigation to Tyco.  Although Defendants stated in their Opening Brief for Summary Judgment that LINA only sought information from Tyco, however, it is clear and undisputed in the record that LINA failed to perform any independent investigation and solely relied on a one line response from Tyco without requesting any supporting documentation even when confronted with contrary information from Plaintiff.  That hardly is an investigation of fact, nor does LINA's procedure fairly and adequately deal with Plaintiff.  Additionally, Defendants further breached their fiduciary duty when they misled Plaintiff into believing they had considered additional information when they issued the appeal decision.  On February 28, 2005 the LINA decision maker in an in-house e-mail (AR0079), stated that "we denied this claim originally as the employer stated that our insured was not on a business trip. For the reasons stated supra Defendants breached their fiduciary duty.

## Schedule J

## Defendants Proposed Findings of Fact

38.          Tyco International, Ltd. ("Tyco") sponsors and maintains an employee welfare benefit plan (the "BTA plan") within the meaning of 29 U.S.C. §1002(1) that provides covered employees with a death benefit pursuant to the terms of the Plan, should they die as the result of an accident while engaged in business travel on Tyco's behalf.

39.     The BTA Plan provides in relevant part that:

> [The Plan] will pay the benefits described in the policy for any accident which occurs anywhere in the world while a covered person, on a business trip, is traveling or making a short stay:
> c)  away from your premises in his city of permanent assignment; and
> d)  on business for you, and in the course of your business.
> All trips must be authorized by you.
>
> This coverage does not include:
> a)  commuting between the person's home and place of work; or
> b)  during personal deviations made by the covered person.
> Personal deviation" as used here, means an activity that is not reasonably related to your business, and not incidental to the business trip.
>
> This coverage will start at the actual start of a trip.  It does not matter whether the trip starts at the covered person's home, place of business, or other place.  The coverage will end when the covered person:
> a)  arrives at his home or place of work, which ever happens first; or
> b)  makes a personal deviation.

40.     The BTA plan delegates discretionary authority to the plan's claim fiduciary, and states:

> The Plan Administrator of the Employer's employee welfare benefit plan (the Plan) has applied the Insurance Company as the

Plan fiduciary under federal law for the review of claims for benefits provided by this Policy and for deciding appeals of denied claims, In this role the Insurance Company shall have the authority, in its discretion, to interpret the terms of the Plan documents, to decide questions of eligibility for coverage or benefits under the Plan, and to make any related findings of fact. All decisions made by the Insurance Company in this capacity shall be final and binding on participants and beneficiaries of the Plan to the full extent permitted by law.

The Insurance Company has no fiduciary responsibility with respect to the administration of the Plan except as described above. It is understood that the Insurance Company's sole liability to the Plan and to the Participants and Beneficiaries under the Plan shall be for the payment of benefits provided under this Policy.

41.    Daniel Roarty was employed by Scott Instruments, a Tyco subsidiary, as Senior Product Manager and was a covered employee in the BTA plan.

42.    Plaintiff Kelly Roarty is the widow of Daniel Roarty, and his beneficiary pursuant to the BTA plan.

43.    On August 8, 2004, Daniel Roarty died as the result of a motor vehicle accident in Lancaster County, Pennsylvania while returning his home to Newark, Delaware from Pittsburgh, Pennsylvania.

44.    As a covered employee in the BTA plan, upon the event of Daniel Roarty's death in a manner covered by the BTA plan, his beneficiary would become entitled to a benefit of $500,000.

45.    Eligibility for BTA benefits is premised on several mandatory elements: (a) the insured must have been a Tyco employee and covered under the Plan; (b) the insured must have been engaged in a trip or short stay away from Tyco's premises in his city of permanent assignment; (c) the insured must have been traveling on business for Tyco and in the course of Tyco's business; (d) Tyco must have approved the trip; and (e) the insured

must be involved in an accident while engaged in the business travel that Tyco had approved, which accident results in death

Life Insurance of Company of North America ("LINA") was underwrote the BTA plan's benefits, and was claim fiduciary to the BTA plan within the meaning of 29 U.S.C. §1002(21)(A)(iii).

46.     On or about August the 10th or 11th, 2004, Robert Bierzynski, a co-worker of Daniel Roarty, went to Hershey Medical Center for the purpose of advising Kelly Roarty of the employee benefits that would become due to her as the result of her husband's death.

47.     In August, 2004, Lanny Tomberlin was the Tyco human resources director assigned to Scott Instruments.

48.     Prior to his visit with Kelly Roarty, Tomberlin told Bierzynski that Daniel Roarty's death would be covered under the BTA plan because that plan covered employees 24 hours, 7 days a week.

49.     The Tyco benefits center first began to deal with Plaintiff's claim on August 10, 2004.

50.     Kelly Roarty filed a claim for benefits on or about September the 3rd, 2004 and provided supporting documentation.

51.     On September 15, 2004, Tyco benefit representative Felicia Johnson spoke with Kelly Roarty b y telephone to discuss questions that Mrs. Roarty had with regard to her claim for life insurance benefits.

52.     During this conversation, Plaintiff asked Johnson to send her a copy of the BTA policy.

53.     During this conversation, Johnson informed Plaintiff that she was not eligible for BTA benefits.

54.     On September 16, 2004, Plaintiff spoke with Tyco benefits administrator Nicole

Gibian.

55.     During this conversation, Gibian advised Plaintiff that she was not eligible for BTA

benefits.

56.     After her September 16, 2004 conversation with Plaintiff, Nicole Gibian contacted

Felicia Johnson and asked Johnson to note Gibian's conversation with Plaintiff in Johnson's claim

notes.

57.     Regardless of Tyco's view of Plaintiff's claim, Tyco mailed all necessary claim forms

to her.

58.     On November 18, 2004, Johnson contacted Tyco human resources representative

Jennifer Napier to request a statement as to whether Daniel Roarty was engaged in business travel at

his death.

59.     On November 18, 2004, after her receipt of the police report and newspaper

clippings of the accident, Johnson followed up by calling Tyco human resources

representative Jennifer Napier to request a statement of whether Mr. Roarty had been

engaged in business travel at his death.

60.     On November 18, 2004, Tyco representative Johnson forwarded Kelly Roarty's

claim to LINA.

61.     On November 22, 2004, Johnson followed up again with another request for

information by Tyco Human Resources regarding Mr. Roarty's status as a Tyco business

traveler.

62.     On November 22, 2004, LINA received Plaintiff's claim and LINA Claim

Accident Specialist Marcy Miller advised Tyco benefits representative Felicia Johnson that

she, Miller, was handling the claim.

63.    Miller requested from Johnson a copy of Mr. Roarty's business travel itinerary.

64.    In addition, Miller advised that the claim should be made for $500,000, not the $50,000 in demanded in error.

65.    Also that day, Miller followed up with an introductory letter to Plaintiff.

66.    Thereafter, a series of telephone conversations, emails and faxes between Miller and Johnson tied down issues related to Plaintiff's claim.

67.    For example, on November 29, Miller called to follow up on her November 24, 2004 email and left a message to forward Mr. Roarty's benefit election form.

68.    On December 6, 2004, Johnson replied by email to advise that she had spoken with Mr. Roarty's human resources representative, who was to fax a letter to state whether he had been engaged in business travel when he died.

69.    On December 14, 2004, Miller wrote to Plaintiff to advise that her claim for accidental death benefits and a smaller seatbelt benefit had been approved, an accidental death benefit of $92,400.

70.    In total, LINA paid Plaintiff the sum of $168,000 in various AD&D benefits.

71.    On December 14, 2004, Miller pursued Johnson again with a follow-up email to inquire if there was information to confirm that Mr. Roarty had been engaged in business travel.

72.    Johnson immediately referred the question to Tyco benefits administrator Nicole Gibian, explaining the urgency in confirming Mr. Roarty's business travel at the time of his death.

73.    The next day, on December 15, 2004, Gibian wrote to advise of Mr. Roarty's status as a Tyco business traveler.

> Please take this letter as clarification that Mr. Roarty was NOT engaged on business travel at the time of the accident that caused his death.

74.    To investigate the issue, Ms. Gibian had spoken with either Bob Bierzynski, Mr. Roarty's co-worker, or Lanny Tomberlin, the human resources person responsible for Mr. Roarty's worksite to confirm that Mr. Roarty had not been engaged in business travel when he died.

75.    On December the 17th, 2004, LINA, as claim fiduciary to the BTA plan, denied the claim for business travel accident benefits made by Kelly Roarty.

76.    On December 17, 2004, Miller wrote to Plaintiff to explain that her claim for BTA benefits had been denied and why.

77.    Miller explained that Tyco had stated that Mr. Roarty had not been engaged in business travel on its behalf at the time of the accident that caused his death.

78.    On February 12, 2005, Plaintiff submitted an appeal to LINA that relied on a series of related, internal Tyco emails among, at various stages, Mr. Roarty, his co-workers and a Tyco customer, which described a supplier problem that Tyco had been having.

79.    Beginning in June 2004, Tyco had received orders for an obsolete sensor that by July 2004 had become a significant problem for Tyco when the supplier Bachrach failed to supply a customer order after significant delays.

80.    On Thursday, July 29, 2004, Bob Bierzynski, the Tyco plant "lead" manager, became involved in Tyco's inability to fill the customer order.

81.    In doing so, Bierzynski asked Mr. Roarty to become involved to see if sensors

could be located.

82.    In the process of locating sensors, Mr. Roarty volunteered to visit the

Bachrach plant, while he was nearby on vacation.

83.    On Friday, July 30, 2004, his last work day, Mr. Roarty told Tyco sales manager Lori

Levangie and others:

> *I will be in Pittsburgh next week on vacation.*  Regis [Wyse] is going to set
> up a day for me to go into the Bacharach plant and find out why the
> sensor is taking so long to build.

84.    When Mr. Roarty left work on Friday, July 30, 2004, he began a pre-planned

vacation.

85.    In the days before August 2, 2004, the Roartys had been in the process of

moving from Newark, Delaware to Monroe, North Carolina as part of his worksite's

relocation.

86.    At the same time, the Roartys had planned to travel by car to the Pittsburgh

area for a vacation and a family wedding.

87.    The Roartys returned home on Sunday, August 8, 2004.

88.    In her appeal, Plaintiff explained that her husband had decided that they

would leave for Pittsburgh on Monday, August 2, 2004, in case a meeting with Bachrach for

the next day occurred.

89.    Tyco employee Regis Wyse was responsible for making arrangements.

90.    The proposed Tuesday, August 3, 2004 meeting was cancelled while Mr.

Roarty was still en route.

91.    An attempt to reschedule for Thursday, August 5, 3004 failed and the

proposed meeting was cancelled, never to be rescheduled, after Tyco and  resolved the problem on his own.

92.    LINA Technical Specialist Robert Killmer contacted Johnson on March 1, 2005 to if she would confirm again that Mr. Roarty had not been traveling on business for Tyco when he died.

93.    Ms. Johnson returned Mr. Killmer's call on March 11, 2005 and  confirmed that Mr. Roarty had not been traveling on business for Tyco when he died.

94.     Johnson volunteered to secure a second confirmation, prepared by Mr. Roarty's local management, which LINA could expect in a week.

95.    Internally, Killmer sought the advice of LINA in-house counsel with regard to Plaintiff's appeal.

96.    Considering the Plan provisions at issue and applicable law, LINA in-house counsel concluded that Mr. Roarty primarily had traveled for the purposes of a family wedding and vacation, and had been available to take a business trip if one occurred.

97.    When Tyco solved its parts problem, any need for Mr. Roarty to travel to the supplier ended.

98.    Considering all of the circumstances, LINA found Tyco's conclusion that Mr. Roarty had not been engaged in business travel on its behalf a reasonable one.

99.    On March 24, 2005, having considered and investigated again Plaintiff's information, having repeatedly confirmed Tyco's statement that Mr. Roarty was not traveling on business for it when he died, Group Claims Specialist Brian Billeter elected not to delay the claim further only to wait for receipt of a second written confirmation of Tyco's

information and wrote to Plaintiff to advise that LINA had denied her appeal.

100. LINA explained the basis for its decision to Plaintiff:

> Felicia Johnson from Tyco verified once more, on March 11, 2005, that Mr. Roarty was not considered to be on business travel from Tyco International at the time of his motor vehicle accident, on August 8, 2004. No expenses or accommodations appear to have been reimbursed to Mr. Roarty by Tyco for his travel.

101. Johnson continued to pursue her investigation and reached Tomberlin some time on or after April 11, 2005.

102. Tomberlin re-confirmed to Johnson that Mr. Roarty was not on business travel when he died.

103. Before suit commenced, Tyco representatives confirmed to Plaintiff and/or LINA on five separate occasions that Mr. Roarty had not been engaged in business travel on its behalf when he died.

104. Tyco has consistently maintained its position after this action commenced.

105. On February 12th, 2005, Ms. Roarty filed an appeal of the decision denying her the business travel accident benefits.

106. On March the 24th, 2005, LINA informed Ms. Roarty by letter that her appeal from the denial of her claim had been denied.

107. In August 2004, the Scott facility where Daniel Roarty worked had no formal travel policy, plan, or procedures.

108. Bob Bierzynski was not Daniel Roarty's supervisor.

109. In August, 2004, Daniel Roarty was authorized to approve his own business travel.

110. Mr. Bierzynski was aware that Mr. Roarty had intended to visit the Bachrach Plant in August, 2004.

111.    Mr. Roarty was authorized to visit the Bachrach Plant, if required to do so.

112.    In early 2004, Tyco contracted with a production plant in  Pittsburgh, Pennsylvania, for the production of sensor equipment.  The sensors were to be delivered to Tyco on April the 20th, 2004 so that it could distribute them to its customers.

113.    In late June, 2004, one of Tyco's customers began complaining that the sensors that had been ordered from the Bachrach Plant were overdue.  Tyco was unable to obtain satisfactory answers as to the lateness from the Bachrach Plant regarding the sensors.

114.    In July, 2004, the situation was brought to the attention of Bob Bierzynski.

115.    Prior to July 2004, Daniel Roarty had planned to vacation in Pittsburgh in order to attend a family wedding, with his last work day being Friday, July 30, 2004, and returning Monday, August 9, 2004.

116.    On or about July 30th, 2004, Mr. Roarty advised Bob Bierzynski and others in senior management positions for Scott Instruments that he intended to visit the Bachrach Plant to find out why it was taking so long to build the sensors.

117.    On Friday, July 30, 2004, his last work day, Mr. Roarty told Tyco sales manager Lori Levangie and others:

> *I will be in Pittsburgh next week on vacation.*  Regis [Wyse] is going to set up a day for me to go into the Bacharach plant and find out why the sensor is taking so long to build.

118.    Scott Instruments employee Regis Wyse made arrangements to visit the Bachrach Plant with Daniel Roarty.

119.    Regis Wyse arranged a meeting with Bachrach personnel for Daniel Roarty and himself to be held on Tuesday, August the 3rd, 2004.

120.    On August 1, 2004, while Daniel Roarty was en route to his vacation residence in the

Pittsburgh area, the August 3rd meeting was cancelled and rescheduled for Thursday, August 5th, 2004.

121.    On August 4, 2004, Scott Instrument and Bachrach management reached an agreement that resolved the sensor issue, such that the August 5, 2004 meeting was cancelled without a new date.

122.    During his week of vacation in Pittsburgh, Mr. Roarty did not travel from his vacation residence to the Bachrach plant.

123.    On August 7, 2004, Daniel Roarty attended his niece's wedding.

124.    On August the 8th, 2004, Mr. Roarty returned home from his vacation when his vehicle was struck by a truck that failed to stop at a stop sign.

125.    Mr. Roarty was pronounced dead at the scene of the collision.

126.    LINA paid Plaintiff the full amount of her claims for life insurance and accidental death insurance, which totaled $144,000 without dispute and promptly.

## Defendants' Proposed Conclusions of Law

1.    In ERISA benefit claim cases, the scope of discovery depends on the standard of review.  If a plan provides discretionary authority to its claim fiduciary, as the Plan does here, a court reviews the fiduciary's decisions by applying an arbitrary and capricious standard. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 111-12, 115 (1989); *Mitchell v. Eastman Kodak Co.*, 113 F.3d 433, 437 (3d Cir.1997).

2.    The arbitrary and capricious standard is essentially the same as an abuse of discretion standard.  *Cord v. Reliance Standard Life Ins. Co.*, 362 F. Supp. 2d 480, 484 (D. Del. 2005) (*quoting Matsushita*, 475 U.S. at 586-87).

3.    The arbitrary and capricious standard is highly deferential and "the court is not

free to substitute its own judgment for that of the [claim fiduciary]'s in determining eligibility for benefits." *Id.*

4.      Under the "arbitrary and capricious" standard, a reviewing court must defer to the Plan's claim fiduciary unless its decision was without reason, unsupported by substantial evidence, or erroneous as a matter of law. *Skretvedt v. E.I. DuPont de Nemours and Co.*, 268 F.3d 167, 173-4 (3d Cir.2001).

5.      The BTA Plan clearly grants LINA claims discretion in language held by the Third Circuit to be sufficient for that purpose. *See, e.g., Mitchell v. Eastman Kodak Company,* 113 F.3d 433, 438 (3d Cir. 1997)("In reviewing the claim of any participant, the Plan Administrator shall have full discretionary authority to determine all questions arising in the administration, interpretation and application of the plan.  In all such cases, the Plan Administrator's decision shall be final and binding on all parties.") *See also Dinote v. United of Omaha Life Ins. Co.,* 331 F. Supp.2d 341, 345, n. 2 (E.D. Pa. 2004).

6.      The Court's deference is converted to scrutiny only where the claim fiduciary is an insurer that decides claims and pays benefits from its own assets; then, arbitrary and capricious review is heightened and determined on a sliding scale. *Pinto v. Reliance Standard Life Ins. Co.*, 214 F.3d 377, 379 (3d. Cir. 2000).

7.      This heightened scrutiny derives from the Third Circuit's concern that an insurer lacks the "strong incentives" that the employer company would have to keep its employees satisfied by granting meritorious claims.  *Id.* at 388.

8.      Plaintiff bears the burden of proof to demonstrate that a plan administrator's actions warrant this heightened standard of review. *Marciniak v. Prudential Fin. Ins. Co. of Am.*, 184

F. App'x 266, 268 (3d Cir. 2006) (*citing Schlegel v. Life Ins. Co. of N. Am.*, 269 F.Supp.2d 612, 617 (E.D.Pa. 2003).

9.      In conducting its assessment of the reasonableness of the administrator's decision, the Court is limited to the evidence that was before the administrator when it made the decision being reviewed, either under standard or heightened scrutiny, *Freccia v. Conectiv*, 379 F. Supp. 620, 626 (D.Del. 2004). (citing *O'Sullivan v. Metropolitan Life Ins. Co.*, 114 F. Supp. 2d 392, 309 (D.N.J. 2000).

10.     That record cannot be supplemented during litigation. *Kosiba v. Merck & Co.*, 384 F.3d 58, 67 n. 5 (3d Cir.2004) (citing *Mitchell*, 113 F.3d at 440).  Limited discovery is available only when a reviewing court is deciding whether to employ the arbitrary and capricious standard or a more heightened standard of review.  In that circumstance, the court may consider evidence of potential biases and conflicts of interest that are not found in the administrator's record. *Id.*

11.     It is Plaintiff who bears the burden of proving procedural bias or bad faith by presenting the court with specific evidence of bias. *Bill Gray Enters, Inc. Employee Health & Welfare Plan v. Gourley*, 248 F.3d 206, 216 (3d Cir.2001) ("Unless specific evidence of bias or bad-faith has been submitted, plans ⋯ are reviewed under the traditional arbitrary and capricious standard").

12.     Plaintiff however has not shown conduct by Defendants that warrants the Court to lessen its deference to LINA's claim decision.    Absent such showing, the Court should heighten scrutiny only slightly.  *Post v. Hartford Ins. Co.*, 501 F.3d 154 (3d. Cir 2007); *Stratton v. E.I. DuPont De Nemours & Co.*, 363 F.3d 250, 255 (3d Cir.2004); *Bill Gray Enters, Inc. Employee H&W Plan v. Gourley*, 248 F.3d 206, 216 (3d Cir. 2001); *Pinto v. Reliance Standard Life Ins. Co.*, 214 F.3d 377 (3d Cir. 2000).

13.     The undisputed record shows that LINA responded promptly to Tyco's claim. LINA immediately sought Tyco's confirmation of whether Mr. Roarty had been traveling on its business when he did.  It pursued that information without delay and obtained Tyco's written statement within thirty days that Mr. Roarty was not traveling on business.

14.     In the mean time, LINA paid all other benefits that Plaintiff was due.  But for Tyco's information, LINA would have paid BTA benefits as well.

15.     LINA necessarily had to rely on Plaintiff and Tyco with regard to the nature of Mr. Roarty's vacation travel.  LINA accepted Plaintiff's information as well as that of Tyco, reconciling the accounts of each, which were on analysis not in conflict on their facts.

16.     Looking to the record before it, LINA concluded reasonably that Mr. Roarty had pre-planned a vacation trip beginning shortly after Friday, July 30, his last working day.

17.     The purpose of Mr. Roarty's trip was to attend a family wedding in the Pittsburgh area and take some vacation with family before moving to Monroe, North Carolina.  Mr. Roarty drove to Pittsburgh on August 2, anticipating a possible meeting the day after he arrived.  It was cancelled en route, and even the possibility of a meeting was cancelled soon after.  With that, any potential chance for a business trip from Mr. Roarty's vacation residence to the supplier site and back ended.

18.     LINA reconciled these facts with Tyco's repeated confirmations that Mr. Roarty had not been engaged in business travel when he died, and concluded that that result was correct, reasonable and supported by substantial evidence.

19.     Plaintiff has no record evidence to suggest otherwise.

20.     A number of federal courts have considered claims under BTA policies and

uniformly those that have upheld eligibility for benefits have concluded that at some point business travel began and ended.

21.  For example, in *Garber v. Provident Life Ins. Co.*, 181 F.3d 100 (6th Cir. 1999) (Table), the Court upheld benefits where the insured routed his return flight from a business conference to see his parents briefly, finding that the short interruption did not substantially disrupt his business trip.  By way of comparison, the court suggested a week's vacation skiing as an example of a personal trip.  *Id.* at *4.

22.  In *Ligo v. Continental Casualty Co.*, 338 F. Supp. 519 (W.D. Pa. 1972), a bank directed one of its officers to change his route to work in order to stop at a branch to pick up bank items and bring them to the main office.  In affirming benefits, the court held that the bank's direction to the insured to alter his route for its benefit made his travel to work, otherwise excluded as commutation, a trip on its business and covered.

23.  In *McNeilly v. Lumbermens Mutual Casualty Co.*, 647 F. Supp. 1567 (E.D. Mich. 1986), the court upheld benefits where the employer directed the insured to come to work on Saturday, normally a day off, finding the trip to be a business trip outside excluded travel from home to work.  In *Morningstar v. Insurance Company of North America*, 295 F. Supp. 1342 (S.D.N.Y. 1969), a pre-ERISA case, the insured had expressed a clear intention to attend a business meeting at a customer's offices.   His trip to the meeting overlapped his ordinary route to his offices, during which time it appears he was killed.  The court looked to the clear expression of the insured's immediate interest to attend the meeting to conclude that his trip was not excluded commutation and instead was a business trip to his customer.

24.  Plaintiff cannot demonstrate Mr. Roarty's actual departure for the Tyco supplier

meeting as was the case in *Morningstar*.

25.    Neither can Plaintiff show that Tyco directed Mr. Roarty to change his route as he traveled to Pittsburgh in order to visit the Tyco supplier as in *Ligo*.

26.    Nor can Plaintiff establish that Mr. Roarty departed from his home primarily to visit the Tyco supplier as in *Garve*, supra.

27.    Plaintiff's case rests not on what Mr. Roarty did but on what she claims he planned to do.  Plaintiff and her husband planned to drive to Pittsburgh and did.  Mr. Roarty planned to visit the Tyco supplier one day later in the week and did not.  Plaintiff argues that Mr. Roarty's intention to travel is the same has having traveled, an extreme conclusion that no court appears willing to go so far to reach.

28.    There is no evidence that Tyco required Mr. Roarty to carry a cell phone and be available for business calls, or to have his laptop with him on vacation.  As Tyco lead manager Bierzynski explained, while he, Bierzynski, had received work related calls on his cell phone after business hours, Bierzynski answered the calls or not as he saw fit.  While Mr. Roarty may have brought his laptop and cell phone, the only evidence of record is that he did so for his convenience.  As such, he cannot be said to have been "on-call" to the benefit of Tyco while on vacation.  See, e.g., *Lifson v. INA Life Insurance Co. of New York*, 333 F.3d 349 (2d Cir. 2003) (employee killed on travel home was required to work from home, wear a beeper, and be available for customer calls.

29.    "[A] beneficiary who is denied benefits under an ERISA plan may seek equitable restitution under § 1132(a)(3)(B) for a breach of fiduciary duty." *Roarty v. Tyco Int'l Group Business Travel Accident Insurance Plan*, 2007 WL 2248086, *2 (D. Del. 2007) (citing *Jackson v. Chevron Corp.*

*Long-Term Disability Org., Inc.*, 2006 WL 231595, at *2 (D.N.J. Jan.30, 2006).

30.    Defendants met their fiduciary duties in regard of Plaintiff's claim such that she is not entitled to other equitable relief.

31.    In the context of ERISA, a fiduciary's duty of loyalty requires that the fiduciary deal fairly and honestly with beneficiaries. *Varity Corp. v. Howe*, 516 U.S. 489, 506 (1996).

32.    To make out a claim of breach of fiduciary duty under ERISA, a plaintiff must show:

> that the [insurer] was acting in a fiduciary capacity, (2) a misrepresentation or failure to adequately inform plan participants and beneficiaries; (3) that the misrepresentation was material; (4) resulting harm to or detrimental reliance by the [Plaintiff]."

*Int'l Union, United Auto, Aerospace & Agric. Implement. Workers of Am. v. Skinner Engine Co.*, 188 F.3d 130, 148 (3d Cir. 1999).

33.    An alleged misrepresentation is material only "if there is a substantial likelihood that it would mislead a reasonable employee in making an adequately informed decision." *Fischer v. Philadelphia Elec. Co.*, 994 F.2d 130, 135 (3d Cir. 1993); *Curcio v. John Hancock Mut. Life Ins. Co.*, 33 F. 3d 226, 237 (3d Cir. 1994).

34.    Defendants dealt with Plaintiff honestly at all times and fairly in handling her claim. LINA investigated her claim thorough and repeatedly returned to critical facts.

35.    LINA considered all facts disclosed in its investigation and informed Plaintiff of them.

36.    Where Plaintiff can show no other alleged breach of fiduciary that the denial of her benefit claim, her sole remedy is a claim to recover denied benefits under §1132(a)(1)(B). *Ranke v. Sanofi-Synthelabo, Inc.*, No. 04-1618, 2004 WL 2473282 (E.D. Pa. 2004) (included in

Exhibit "A"). *See also Tannenbaum v. UNUM Life Ins. Co.,* No. 03-1410, 2004 U.S. Dist. LEXIS 5664 at 18-19, 2004 WL 1084658 (E.D.Pa.2004) (rejecting plaintiff's demand for restitution of benefits due under a plan and unpaid because of defendant's breach of fiduciary duty as a legal, rather than equitable remedy); *Weinreb v. Hospital for Joint Diseases Orthopaedic Institute,* 285 F.Supp.2d 382, 388 (S.D.N.Y.2003) (finding that a request for an injunction directing employer to enroll plaintiff in a benefits plan was a "thinly disguised attempt" to recover compensatory damages); *Blum v. Spectrum Rest. Group Empl. Grp. Life and Suppl Life Plan,* 2003 WL 302218 (E.D. Tex. 2003) (plaintiff has no claim to recover denied insurance benefit under § 502(a)(3) if he has a remedy under § 502 (a)(1)(B); *Caffey v. Unum Life Ins. Co.,* 302 F.3d 576, 583-84 (6th Cir.2002) (rejecting plaintiff's claim for reinstatement of lost health benefits, although framed as a request for equitable restitution under ERISA § 502(a)(3), as not permitted after *Great-West*); *Hartman v. Wilkes-Barre General Hospital,* 237 F. Supp. 2d 552 (M.D. Pa. 2002) (holding that plaintiff's claim to recover denied benefits was a claim for money due and owing was not for "equitable relief").