IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| KELLY ROARTY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | )  Civil Action No. 06-195 GMS |
| TYCO INTERNATIONAL LTD. GROUP | ) |
| BUSINESS TRAVEL ACCIDENT | ) |
| INSURANCE PLAN, and LIFE | ) |
| INSURANCE COMPANY OF NORTH | ) |
| AMERICA, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM**

**I.    INTRODUCTION**

On March 23, 2006, plaintiff Kelly Roarty ("Mrs. Roarty") filed the present action against Tyco International, Ltd. Group Business Travel Accident Insurance Plan (the "Plan") and Life Insurance Company of North America ("LICNA") (collectively, the "defendants"). Mrs. Roarty brings two claims pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.* First, Mrs. Roarty claims that the defendants wrongfully denied her benefits to which she was entitled under an employee benefits plan after the death of her husband, a Tyco employee. Mrs. Roarty also claims that the defendants breached their fiduciary duties to her. Now before the court are the two motions of the defendants: one for summary judgment on these two claims, and the other for a protective order limiting discovery and admissible evidence to the administrative record. Because genuine issues of material fact

remain, the court will deny the defendants' motion for summary judgment. The court will also deny the defendants' evidentiary motion because Mrs. Roarty's claims implicate evidence extrinsic to the administrative record.

## II. BACKGROUND

### A. The Policy

Scott Health & Safety, a subsidiary of Tyco International (US), Inc. (collectively "Tyco"), sponsored a variety of benefits plans in which its employees could participate. The Plan was one of these. As a business travel accident plan, the Plan insured employees engaged in business travel against accidental death. (D.I. 48 Ex. B at 23ff. (the "Plan") (hereinafter cited as AR___).) Unlike the previous version of Tyco's business travel accident plan, which provided full-time coverage, the Plan's coverage applied only during business travel. The Plan defines its coverage in relevant part as follows:

> We[1] will pay benefits ... for any accident which occurs anywhere in the world while a covered person, on a business trip, is traveling or making a short stay:
> a) away from your premises in his city of permanent assignment; and
> b) on business for you, and in the course of your business.
> All trips must be authorized by you.

(AR2.) The Plan excludes from coverage (a) commuting between home and work, and (b) "personal deviations made by the covered person," with personal deviations defined as "an activity not reasonably related to your business, and not incidental to the business trip." (*Id.*) Trip authorization is not defined. According to the Plan, coverage begins at the "actual start of

---

[1] "We" refers to LICNA. "You" and "your" refer to Tyco.

the trip," regardless of "whether the trip starts at the covered person's home, place of work, or other place." (*Id.*) Coverage ends "when the covered person [a] arrives at his home or place of work, whichever happens first; or [b] makes a personal deviation." (*Id.*)

The Plan designates LICNA as the Plan fiduciary. As such, LICNA is granted the sole authority, in its discretion, to administer the Plan. This authority includes interpreting Plan terms, deciding questions of eligibility, and making findings of fact relating to the Plan. (AR036.)

### B. Mrs. Roarty's Claim

The record presents the following facts, which are viewed in the light most favorable to the plaintiff. Mrs. Roarty's husband, Daniel Roarty, worked for Tyco and participated in the Plan. Mrs. Roarty was his named primary beneficiary. On August 8, 2004, tragically, Mr. Roarty was killed in a car accident while traveling from Pittsburgh, Pennsylvania, to his home in Newark, Delaware.

Mr. Roarty had planned to go on vacation in Pittsburgh with his family sometime during that first week in August. But because of a problem at work, those plans changed. Mr. Roarty learned that a Tyco supplier faced difficulties with the manufacture of certain sensors at the supplier's manufacturing plant, known as the Bacharach Plant, near Pittsburgh. Tyco needed the sensors to fill orders that its customers had made. Mr. Roarty proposed that he meet with the suppliers at the Bacharach Plant to resolve the problem, since he already planned to travel to Pittsburgh on vacation. In response to Mr. Roarty's proposal, the meeting was scheduled at the Bacharach Plant on Tuesday, August 3, 2004. On Monday, August 2, 2004, Mr. Roarty began

his trip to Pennsylvania a few days earlier than he had planned to leave for his vacation. He drove his own car, apart from his family, in anticipation of attending his meeting at the Bacharach Plant. He also brought materials that he would need to conduct business during the trip, such as his laptop, briefcase, and cell phone. While Mr. Roarty was en route, the meeting was rescheduled for August 5, 2004. Then, over the next two days, Mr. Roarty and Tyco managed to resolve the problem through telephone and email communications. The resolution rendered the rescheduled meeting unnecessary, and so, on August 4, 2004, the meeting was canceled. Mr. Roarty thus attended no meetings at the Bacharach Plant, although he continued to make business calls during his time in Pittsburgh. A few days later, while returning home, Mr. Roarty suffered his automobile accident and was killed.

In the aftermath of the accident, Mrs. Roarty spoke with, Bob Bierzynski, Mr. Roarty's co-worker, about benefits to which she would be entitled under the Plan. Bierzynski erroneously informed Mrs. Roarty that the Plan covered employees full time, i.e., twenty-four hours per day, seven days per week. At deposition in this case, Bierzynski explained his mistake: he had forgotten that the old plan, which provided such coverage, was no longer in effect. In fact, non-business activity was excluded from the Plan's coverage on July 1, 2002. Mrs. Roarty also spoke with Tyco benefits administrator Nicole Gibian and Tyco benefits representative Felicia Johnson about her eligibility for various benefits. Gibian and Johnson both advised Mrs. Roarty that she was not eligible for coverage under the terms of the Plan because her husband had not been on a business trip at the time of his death. Despite their view, they worked with Mrs. Roarty to apply to LICNA for benefits under the Plan. At some point, Tyco employees

discovered that the Plan's summary plan description ("SPD") had not been updated to reflect the elimination of non-business activity from Plan coverage. Tyco made a note to update it. (AR224.) In any case, after gathering documentation, Tyco sent Mrs. Roarty's claim under the Plan to LICNA.

LICNA Claim Accident Specialist Marcy Miller processed Mrs. Roarty's claim. This process included reviewing the documentation gathered by Tyco and communicating with Tyco benefits employees about the claim. After her review, Miller concluded that Mrs. Roarty was not eligible for benefits under the Plan. Miller based this conclusion on the determination that Mr. Roarty was not on business travel at the time of his death. According to Miller's letter of December 17, 2004, she relied principally on a written statement provided by Gibian to make this determination. (AR116.) Gibian's statement read, in its entirety, as follows: "Please use this letter as clarification that Mr. Roarty was NOT on business travel at the time of the accident that caused his death. If you need additional information, please contact Felicia Johnson at the HRSC, 800-924-8518." (AR130.)

By letter of February 12, 2005, Mrs. Roarty appealed LICNA's denial of her claim. (AR084.) In her letter, Mrs. Roarty expressed her belief that Mr. Roarty had indeed been on a business trip at the time of his death. She attached to her letter certain documents, including email threads between her husband and other Tyco employees relating to the issues at the Bacharach Plant and the planned meeting. To process Mrs. Roarty's appeal, LICNA Technical Specialist Robert Killmer contacted Tyco benefits representative Felicia Johnson by telephone. According to Killmer's telephone log of March 11, 2005, Johnson told Killmer that Mr. Roarty

had not been on an authorized business trip at the time of his death. Johnson also stated that she had contacted Mr. Roarty's office and requested that office to send written confirmation to LICNA, so as to confirm whether Mr. Roarty had in fact been traveling on business. (AR076.) Later that same day, Killmer notified Mrs. Roarty that he would review her file once more after receiving the additional information as to Mr. Roarty's status from Tyco. (AR075.) Killmer also consulted with LICNA's in-house counsel and a LICNA Group Claims Specialist, Brian Billeter. LICNA denied Mrs. Roarty's appeal several days afterwards without receiving the written confirmation from Tyco.

By letter of March 24, 2005, Miller notified Mrs. Roarty that her appeal had been denied. Miller explained that Mrs. Roarty was not eligible for benefits under the Plan because LICNA had determined that her husband was not on a business trip at the time of his death. According to Miller's letter, this determination was based on Mrs. Roarty's submitted information, Miller's telephone conversations with Tyco benefits representative Johnson, and the fact that Tyco had not reimbursed Mr. Roarty for any expenses for his travel. LICNA found that Mr. Roarty had been prepared to take a business trip to the Bacharach Plant at some point during his vacation in Pittsburgh. Regardless of whether Mr. Roarty conducted business by telephone during this time, however, LICNA found that Mr. Roarty was traveling on vacation at the time of his death because no such business trip was made. Based on this factual determination, LICNA concluded that Mrs. Roarty was not eligible for benefits under the Plan.

### III.  STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) provides that a court shall grant summary

judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment under Rule 56 is appropriate only when the court, viewing the record as a whole and drawing reasonable inferences in the light most favorable to the nonmoving party, determines that the Rule 56(c) standard has been met. *See, e.g., Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986); *Boyle v. County of Allegheny,* 139 F.3d 386, 392 (3d Cir. 1998).

IV.   **DISCUSSION**

   **A. The Defendants' Motion for a Protective Order Limiting Discovery and Admissible Evidence to the Administrative Record**

   The defendants move to exclude evidence not in the administrative record from discovery, which is now closed, and from consideration at trial. "Generally, only evidence in the administrative record is admissible for the purpose of determining whether the plan administrator's decision was arbitrary and capricious." *Post v. Hartford Ins. Co.*, 501 F.3d 154, 168 (3d Cir. 2007). But the court may consider evidence beyond the administrative record when deciding how much to heighten the court's level of review of the plan administrator's decision. *Id.* (internal citations omitted). Moreover, Mrs. Roarty's breach of fiduciary claim implicates facts beyond those contained in the administrative record. The court therefore declines to grant the defendants' motion to limit admissible evidence to the administrative record.

   **B. Heightened Arbitrary and Capricious Standard of Review**

   When considering a plan administrator or fiduciary's denial of benefits under ERISA,

district courts are generally instructed to employ *de novo* review. *See Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115 (1989). But where plan terms grant discretion to the plan administrator or fiduciary to determine a claimant's eligibility for benefits, the decision is subject to review under an "arbitrary and capricious" standard. *See Post v. Hartford Ins. Co.,* 501 F.3d 154, 160-62 (3d Cir. 2007); *Mitchell v. Eastman Kodak Co.,* 113 F.3d 433, 437 (3d Cir. 1997). In other words, the court determines whether the plan administrator abused its discretion in reaching its decision. Under this deferential standard of review, the court may overturn the decision only if it is "without reason, unsupported by substantial evidence or erroneous as a matter of law." *Abnathya v. Hoffman-LaRoche, Inc.,* 2 F.3d 40, 45 (3d Cir. 1993) (citations omitted). The Third Circuit has adopted a "sliding scale" approach, in which the degree of deference varies according to the level of the administrator's conflict of interest; high levels of conflict result in most of the administrator's discretion being "stripped away." *Post,* 501 F.3d at 161. To determine the appropriate level of deference, the court must inquire into structural and procedural aspects of the case. First, the court must consider structural factors, i.e. "the financial incentives created by the way the plan is organized." *Id.* at 162. Second, the court must consider procedural factors, focusing "on how the administrator treated the particular claimant." *Id.*

In the present case, the parties agree that the Plan delegates authority and discretion to LICNA with respect to administration of the Plan. The court therefore reviews the LICNA's decision for abuse of discretion. (D.I. 48 at 4); *Mitchell,* 113 F.3d at 437. Turning to the "sliding scale," the court must determine whether it should heighten the level of its review. LICNA, an outside insurer, both funded and administered the plan in question. This structure

raises particular concern, because LICNA's financial incentives run counter to its duties as fiduciary. It therefore requires a moderately heightened level of review at the very least. *Id.* at 163, 165-66; *Pinto v. Reliance Standard Life Ins. Co.*, 214 F.3d 377, 387-390 (3d Cir. 2000). With respect to process, LICNA consistently maintained its position that Mr. Roarty was not on an authorized business trip at the time of his death, and therefore is not eligible for benefits under the Plan. This consistency does not, of itself, suggest heightening the standard of review. *Cf. Post*, 501 F.3d at 165-66. But LICNA also delegated crucial factual determinations to Tyco in a potentially uncritical and self-serving manner, particularly during the appeal. (D.I. 50 at 14-16.) Because of these structural and procedural factors, therefore, the court finds that a heightened level of arbitrary and capricious review is appropriate in this case.

### C. Applying the Heightened Arbitrary-and-Capricious Review to LICNA's Denial Benefits to Mrs. Roarty

To avoid the imposition of summary judgment as to her wrongful denial of benefits claim, Mrs. Roarty must demonstrate a genuine issue of material fact with respect to whether LICNA abused its discretion by denying her benefits.

One of Mrs. Roarty's arguments is that the defendants failed to provide an updated SPD reflecting critical changes in the terms of the Plan. "Where a summary plan description conflicts with the plan language, it is the summary plan description that will control." *Cf. Burstein et al. v. Ret. Account Plan for Employees of Allegheny Health Educ. and Research Found. et al.*, 334 F.3d 365, 378 (3d Cir. 2003). Mrs. Roarty claims, based on the testimony and documents of Tyco employees, that the Plan's SPD was not updated to reflect substantive changes in the Plan, particularly regarding whether participants engaging in non-business travel enjoyed coverage.

The defendants argue that the "terms of some prior plan" do not entitle Mrs. Roarty to benefits under the Plan because employee welfare benefits are not subject to ERISA's anti-cutback rule. This rule essentially prohibits reducing accrued benefits, i.e., annual benefits beginning at normal retirement age, but does not prohibit reducing employee welfare benefits such as the Plan's change in July 2001 to exclude non-business travel from coverage. (D.I. 51 at 9.) But the defendant's anti-cutback arguments are beside the point. Indeed, the defendants do not address at all the underlying issue: whether the SPD was in fact updated to reflect the Plan's change. (*Id.*)

Although the parties make additional arguments with respect to this claim, the court need not address them at this stage of the proceedings. Because there remain material facts in dispute at least with respect to the SPD, the court declines to grant summary judgment on Mrs. Roarty's wrongful denial of benefits claim.

### D. Whether the Defendants Breached Their Fiduciary Duty Owed to Mrs. Roarty

To avoid summary judgment on her breach of fiduciary duty claim, Mrs. Roarty must demonstrate a genuine issue remains in dispute as to whether LICNA breached a fiduciary duty owed to her when it denied her benefits under the Plan. It is not disputed that LICNA, as a plan administrator exercising discretionary authority, is a fiduciary, and that LICNA owed a fiduciary duty to Mrs. Roarty as a beneficiary of the plan.

Mrs. Roarty claims that LICNA breached its fiduciary duties when it failed to disclose material information to her. (D.I. 50 at 23ff.) Specifically, Mrs. Roarty alleges that LICNA breached its duty to inform her by failing to update the SPD as required by ERISA, and as a

consequence materially misled her as to the coverage of the Plan. *Cf. Burstein et al.*, 334 F.3d at 384-86; *Local 56, United Food and Commercial Workers Union, et al. v. Campbell Soup Co., et al.*, 898 F.Supp. 118, 1140 (D.N.J. 1995) ("a summary plan description must not have the effect [of] misleading, misinforming or failing to inform participants and beneficiaries") (internal citations omitted). As noted above, the defendants do not address the issue of whether the SPD was in fact materially inaccurate and outdated. (D.I. 51 at 9-11.) Again, the court need not further address the parties' arguments at this stage in the proceedings. Because the material issue as to the SPD remains in dispute, the defendants are not entitled to summary judgment on Mrs. Roarty's breach of fiduciary claim.

V.      **CONCLUSION**

For the reasons stated above, the defendants' motion to limit discovery and admissible evidence to the administrative record is denied. The defendants' motion for summary judgment on Mrs. Roarty's two claims is also denied because there remain genuine issues as to material facts.

Dated: March 26, 2008                              CHIEF, UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| KELLY ROARTY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 06-195 GMS |
| ) | |
| TYCO INTERNATIONAL LTD. GROUP ) | |
| BUSINESS TRAVEL ACCIDENT ) | |
| INSURANCE PLAN, and LIFE ) | |
| INSURANCE COMPANY OF NORTH ) | |
| AMERICA, ) | |
| ) | |
| Defendants. ) | |

## ORDER

For the reasons stated in the court's memorandum of this same date, IT IS HEREBY ORDERED that:

1. The defendants' motion for summary judgment (D.I. 47) be DENIED; and

2. The defendants' motion for a protective order limiting discovery and admissible evidence to the administrative record (D.I. 45) be DENIED.

Dated: March 26, 2008

CHIEF, UNITED STATES DISTRICT JUDGE