IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| KELLY ROARTY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | Civil Action No. 06-195 GMS |
| TYCO INTERNATIONAL LTD. GROUP ) | |
| BUSINESS TRAVEL ACCIDENT ) | |
| INSURANCE PLAN, and LIFE ) | |
| INSURANCE COMPANY OF NORTH ) | |
| AMERICA, ) | |
| ) | |
| Defendants. ) | |
| ) | |

**MEMORANDUM**

**I.   INTRODUCTION**

Kelly Roarty ("Mrs. Roarty") brings this action against Tyco International, Ltd. Group Business Travel Accident Insurance Plan (the "Tyco Plan")[1] and Life Insurance Company of North America ("LICNA")[2], (collectively, the "defendants"), pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq*. Mrs. Roarty claims that the defendants wrongfully denied her benefits to which she was entitled under an employee benefits plan (the "BTA Plan") after her husband's death. Mrs. Roarty also claims that the defendants breached their fiduciary duties to her during their review and subsequent denial of her claim.

The court held a one-day bench trial on April 21, 2008. On September 12, 2008, the

---

[1] The court will refer to this defendant as the "Tyco Plan," while using the "BTA Plan" to refer to the actual written plan governing Mr. Roarty's benefit rights.

[2] LICNA became the plan underwriter and designated plan fiduciary in 2002. In this capacity, LICNA was granted authority to "interpret[] plan terms, decid[e] questions of eligibility, and mak[e] findings of fact relating to the BTA Plan." (D.I. 62 at 4.)

1

court issued a memorandum opinion holding that LICNA's denial was an abuse of discretion and erroneous as a matter of law. (D.I. 62.) Specifically, the court found that Tyco International Ltd. ("Tyco"), the parent company of Mr. Roarty's employer, failed to use measures reasonably calculated to ensure Mr. Roarty's timely receipt of the required summary plan description ("SPD") or summary of material modifications ("SMM"), following the July 1, 2002 modification of the BTA Plan. (*Id.* at 8.) As such, the court concluded that the earlier 2000 SPD remained in effect, and, by its terms, Mr. Roarty enjoyed coverage "24 hours a day whether traveling or not, at home, at work, on vacation, while traveling anywhere in the world . . . ." (*Id.* at 12.) This extended well beyond the limited coverage provided by the modified BTA Plan. Applying the rule that "where a summary plan description conflicts with the plan language, it is the summary plan description that will control," the court found that the 2000 SPD continued to govern Mr. Roarty's rights, making LICNA's denial unreasonable.

On July 8, 2010, the U.S. Court of Appeals for the Third Circuit vacated the judgment and remanded this case. (D.I. 68.) The Third Circuit noted that Tyco's failure to ensure timely receipt of the summary documents did not necessarily render those documents ineffective. *Roarty v. Tyco Int'l Ltd. Grp. Bus. Travel Accident Ins. Plan*, 386 F. App'x 329, 333 (3d Cir. 2010). Rather, the 2002 SPD, as modified by the SMM, would continue to function as the operative summary document absent a showing of "extraordinary circumstances." *Id.* at 334. The Third Circuit remanded for the court to consider whether such "extraordinary circumstances" existed, and, if necessary, to examine Mrs. Roarty's claim against LICNA for breach of fiduciary duty under ERISA § 502(a)(3). *Id.*

The court now holds that no such "extraordinary circumstances" were present, that LICNA's claim denial was not an abuse of its discretion under the modified language of the BTA

2

Plan, and that LICNA did not breach any of its fiduciary duties.

## II. FINDINGS OF FACT

The court relies primarily on its previous findings of fact, set forth in its September 12, 2008 Memorandum Opinion. (D.I. 62 at 2–9.) To the extent necessary, the court makes new findings of fact consistent with undisputed evidence in the record. The parties' disputes generally surround the application of the law to these undisputed facts.

## III. CONCLUSIONS OF LAW

The court will first consider Mrs. Roarty's claim that she is owed benefits under the 2000 SPD and ERISA § 502(a)(1)(B) due to what she contends are extraordinary circumstances surrounding Tyco's failure to distribute the 2002 SPD and 2002 SMM. The court will then discuss whether LICNA abused its discretion in applying the modified BTA Plan language to Mrs. Roarty's claim. Finally, the court will turn to the issue of whether LICNA breached its fiduciary duties under ERISA § 502(a)(3).

The court will not address Mrs. Roarty's breach of fiduciary duty claim against the Tyco Plan[3] or her equitable estoppel claims against the Tyco Plan and LICNA.[4]

### A. ERISA Disclosure Obligations and "Extraordinary Circumstances"

---

[3] The Complaint does not raise a breach of fiduciary duty claim against either Tyco or the Tyco Plan. Moreover, even were the court to agree with Mrs. Roarty and find that the Tyco Plan implicitly consented to such a claim under Federal Rule of Civil Procedure 15(b)(2), that claim should have been brought against Tyco, the plan administrator, and not the Tyco Plan itself. This latter problem is more serious and cannot be addressed via a "consent" argument. While Rule 15(b)(2) can be used to "amend" and "bring the pleadings in line with the actual issues upon which the case was tried," *DRR, L.L.C. v. Sears, Roebuck & Co.*, 171 F.R.D. 162, 165 (D. Del. 1997) (internal quotation omitted), it cannot create duties and liability where none exist. Even if the court were to find that Tyco Plan implicitly consented to an amendment of the pleadings to add a claim against it for breach of fiduciary duties, that claim still must fail—all Mrs. Roarty purports to demonstrate are fiduciary duty breaches of a separate legal entity, Tyco.

[4] These claims are beyond the scope of the Third Circuit's mandate, which instructed the court to "also consider Roarty's equitable claim *for breach of fiduciary duty* under ERISA section 502(a)(3)." *Roarty*, 386 F. App'x at 334 (emphasis added). "Upon remand of a case for further proceedings after a decision by the appellate court, the trial court must 'proceed in accordance with the mandate and the law of the case as established on appeal.'" *United States v. Kikumura*, 947 F.2d 72, 76 (3d Cir. 1991) (quoting *Bankers Trust Co. v. Bethlehem Steel Corp.*, 761 F.2d 943, 949 (3d Cir. 1985)).

3

As the court has previously held, if the 2000 SPD remained the controlling statement of Mr. Roarty's benefits, LICNA's claim denial was erroneous as a matter of law and an abuse of discretion. (*Id.* at 12.) The court therefore turns its attention to whether there were, in fact, "extraordinary circumstances" that rendered the subsequent 2002 SPD and 2002 SMM ineffective and left the 2000 SPD as the operative summary document.

ERISA requires that plan administrators provide beneficiaries with a summary plan description setting forth the general terms of a benefits plan and a summary document providing notice of material modifications. 29 U.S.C. § 1024(b)(1); *see also Curtiss Wright Corp. v. Schoonejongen*, 514 U.S. 73, 83 (1995). The court previously determined that Tyco never distributed the 2002 SPD and SMM to Mr. Roarty, thereby violating these provisions. (D.I. 62 at 8.) The Third Circuit, however, has found that such a failure generally "[does] not give rise to a substantive remedy other than that provided for in section 502(a)(1)(A) of [ERISA]." *Ackerman v. Warnaco, Inc.*, 55 F.3d 117, 124 (3d Cir. 1995). In order for the court to apply the additional remedy of regarding the 2002 SPD and the modified 2002 BTA Plan as ineffective, there must be a showing of "extraordinary circumstances" in connection with the distribution failure. *Id.* at 124–25. Such circumstances may exist "where the employer has acted in bad faith, or has actively concealed a change in a benefit plan, and the covered employees have been substantially harmed by virtue of the employer's actions." *Id.* at 125; *see also Jordan v. Federal Express Corp.*, 116 F.3d 1005, 1011 (3d Cir. 1997).

Mrs. Roarty argues that both bad faith and active concealment existed here. (D.I. 73 at 29.) She first claims that the 2002 SMM was intended only to inform employees that Tyco had changed carriers and not to advise of changes to the BTA Plan. (*Id.*) Presumably, it is Mrs. Roarty's argument that such a limited intent is indicative of Tyco's broader effort to conceal the

4

Plan modifications. The court, however, is not convinced that it can infer active concealment on this basis alone. Moreover, the record does not necessarily support her contention that the 2002 SMM was intended *only* to alert employees to the new carrier. While Ms. Beauchesne, a Tyco employee responsible for the cash management of health and welfare benefits, did testify that this was the purpose of the 2002 SMM, it is not at all clear from her statement that this was the sole objective of the document. (D.I. 73-6 at 10.) Finally, the court has previously observed that the 2002 SMM *did* explain, albeit fleetingly, "that the BTA Plan would categorically no longer cover an employee engaged in non-business travel." (D.I. 62 at 5.)

Mrs. Roarty next argues that the failure of the 2002 SPD to explicitly discuss the Plan amendments suggests active concealment. (D.I. 73 at 30.) The court finds this contention similarly unconvincing. As an initial matter, the 2002 SPD *did* state that the Plan was "subject to change July 1, 2002," thereby inviting beneficiaries to reference the 2002 SMM, which explained that employees engaged in non-business travel were no longer covered. (D.I. 62 at 5.) While not particularly clear and perhaps inadequate under federal law, the summary documents provided some notice of the modification. Furthermore, adopting Mrs. Roarty's argument would come dangerously close to collapsing the "extraordinary circumstances" inquiry into the preliminary question of whether Tyco failed to provide its plan participants with adequate summary materials. The mere fact that a plan administrator failed to offer the required disclosures cannot answer the question of *why* such a failure occurred.[5] *See Ackerman*, 55 F.3d at 125 n.8 ("[A]n inference of bad faith or active concealment does not arise simply from a failure

---

[5] The court recognizes that Mrs. Roarty does not entirely repeat her original argument that a disclosure violation occurred through Tyco's failure to ensure delivery. Rather, she suggests that, even if the summary materials *were* properly delivered, their content would not have sufficiently informed Tyco employees of the Plan changes. In this way, she provides some small additional measure of evidence in support of her "extraordinary circumstances" claim, separate from the evidence underlying her "failed delivery" point. This alone, however, is not sufficient to demonstrate active concealment or bad faith.

to comply with ERISA's reporting or disclosure requirements.").

Mrs. Roarty also relies heavily on *Ackerman v. Warnaco, Inc.*, 55 F.3d 117 (3d Cir. 1995). The *Ackerman* court reversed an order granting summary judgment to the defendant plan administrator upon finding that the record below could support an inference that the defendant actively concealed changes to a severance plan in order to prevent employees from leaving. *Id.* at 125. The Third Circuit based this conclusion on "the fact that meetings that were scheduled to inform the plaintiffs of the change in policy were never held, the fact that the [a handbook noting the changes] was never distributed to the . . . employees, and the fact that a letter [from the defendant's CEO] spoke of 'changes' in (rather than the elimination of) the severance plan." *Id.* at 124. The *Ackerman* court further relied on evidence concerning the (presumably) poor "employment climate" at the plaintiffs' workplace. *Id.* at 125.

This comparison to *Ackerman* is not particularly convincing. The decision merely teaches that, given the particular facts before the Third Circuit, "a reasonable fact finder *could* infer . . . that [the defendant] actively concealed the change to its severance policy," making summary judgment inappropriate. *Id.* (emphasis added). The court does not believe that the facts in this case offer equivalent support for such an inference.[6] Regardless, it is not enough for the court to find that active concealment is within the range of reason here—at this stage, the burden rests with Mrs. Roarty to demonstrate that "extraordinary circumstances" actually were present.

Thus, Mrs. Roarty has not demonstrated that Tyco acted in bad faith or engaged in active

---

[6] First, there is no indication of a poor "employment climate" at Tyco or Scott Instruments—Tyco's subsidiary and Mr. Roarty's immediate employer—that might have motivated Tyco to conceal the Plan changes. Relatedly, the benefits modification at issue in this case is far less severe than that considered in *Ackerman*. The court ventures that an employee is more likely to react negatively to an announcement that his severance plan was eliminated than to an announcement that his business travel insurance has been scaled back. The incentives for an employer to actively conceal the latter simply are not as powerful.

concealment. As the court previously observed, while Tyco failed to distribute the 2002 SPD and SMM in accordance with federal law, "[t]he reason for Tyco's failure . . . is not apparent from the record." (D.I. 62 at 8 n.3). Accordingly, the court cannot find the requisite "extraordinary circumstances" and will not assess LICNA's claim determination under the language of the superseded 2000 SPD.

### B. ERISA Discretionary Review[7]

Since there were no "extraordinary circumstances" here, the operative summary document was the 2002 SPD, as modified by the 2002 SMM. *Roarty*, 386 F. App'x at 334. The BTA Plan therefore controlled LICNA's benefits determination, as there was no clear conflict between the 2002 SPD and the modified Plan language. *See Burstein v. Allegheny Health Educ. & Research Found.*, 334 F.3d 365, 378 (3d Cir. 2003). As such, the court must consider whether, under the new BTA Plan, LICNA abused its discretion in denying Mrs. Roarty's claim for benefits.[8]

The BTA Plan states, in pertinent part:

We[9] will pay benefits . . . for any accident which occurs anywhere in the world while a covered person, on a business trip, is traveling or making a short stay:

---

[7] While the scope of the court's review on remand is limited by the mandate and opinion of the Court of Appeals, the court believes that addressing the propriety of LICNA's claim decision under the modified BTA Plan is consistent with that mandate. The court did not reach this issue in its earlier Memorandum and Order because it found that the new Plan did not control. Operating now from the understanding that the modified Plan does, in fact, govern, the court finds it is necessary to conduct the standard abuse of discretion examination. The Third Circuit appears to have implicitly endorsed this inquiry through its reference to footnote 9 of the court's Memorandum, which preserved this issue: "Because the above findings and conclusions, the court need not address whether LICNA breached its fiduciary duties to Mrs. Roarty *or otherwise abused its discretion in denying her claim*." *Roarty*, 386 F. App'x at 334 (citing D.I. 62 at 12 n.9).

[8] Mrs. Roarty correctly notes that LICNA was subject to a conflict of interest, as it both funded and made claim determinations regarding the benefits at issue. *See Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 112 (2008); *Culley v. Liberty Life Assurance Co.*, 339 F. App'x 240, 242–43 (3d Cir. 2009). The presence of such a conflict, however, does not require that a court engage in *de novo* review of a benefits decision—the conflict functions merely as one factor in the broader abuse of discretion inquiry. *Glenn*, 554 U.S. at 115.

[9] "We" refers to LICNA. "You" and "your" refer to Tyco.

7

> a) away from your premises in his city of permanent assignment; and
> b) on business for you, and in the course of your business.
> All trips must be authorized by you.

(D.I. 73-2 at 3.) While the relevant language may well be ambiguous, the court cannot say that LICNA's interpretation and application of the BTA Plan was unreasonable.[10] The facts indicate that Mr. Roarty and his family intended to travel to Pittsburgh on August 3, 2004 to vacation and attend a wedding. (D.I. 73-4 at 7.) Mr. Roarty, however, departed for the Pittsburgh area on August 2, separately from his family and a day earlier than was planned, to meet with a client of Scott Instruments. (*Id.* at 8.) On August 4, it became clear that no face-to-face meeting would be required, but Mr. Roarty remained in the area with his family for several days and attended the wedding on August 7. (*Id.* at 10–12.) It was not until August 8, on the drive back to Newark, Delaware, that he was tragically killed. (*Id.* at 12–16.)

The court finds that LICNA reasonably viewed Mr. Roarty's trip as extending beyond the scope of the BTA Plan after August 4, since he was no longer acting in furtherance of Tyco's business at that point. (D.I. 73-8 at 11.) This interpretation is bolstered by the Plan's explicit requirements that the employee be "on business for [Tyco], and in the course of [Tyco's] business" as well as the language indicating that "coverage will end when the covered person . . . makes a personal deviation." (D.I. 73-2 at 3.)

The plaintiff's reliance on *Garber v. Provident Life Ins. Co.*, 181 F.3d 100 (6th Cir. 1999), is also misplaced. In that case, the plan administrator was called upon to apply the

---

[10] Where the language of a plan is ambiguous, the court asks whether the administrator's benefit determination was "reasonable." *Bill Gray Enters. Emp. Health & Welfare Plan v. Gourley*, 248 F.3d 206, 218 (3d Cir. 2001). Mrs. Roarty contends that any ambiguity requires the court to construe the relevant language in her favor and against LICNA. (D.I. 78 at 8–9.) This argument, however, fails to appreciate the effect of LICNA's discretionary authority to determine benefit claims. (D.I. 73 at 21.) Construction of ambiguous plan language in favor of the beneficiary is appropriate where review is *de novo*, *see Fay v. Oxford Health Plan*, 287 F.3d 96, 104 (2d Cir. 2002), but where a claim fiduciary possesses discretionary authority, the court employs a deferential abuse of discretion standard, *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 111 (2008).

following language:

> Coverage will apply to any injury sustained by an Employee when on Business for the Policyholder during any bonafide trip.
>
> Coverage for such trip begins on the later of when an Employee leaves his or her place of residence or place of regular employment for the purpose of going on such trip.
>
> Coverage ends on the earlier of when an Employee returns to his or her place of residence or place of regular employment.
>
> Definition
>
> The term "when on Business for the Policyholder" means furthering the business of the policyholder. This does not include an injury sustained during the course of travel to and from work, leave of absence or vacation.

*Id.* at *1. Given the structure of the first quoted sentence and the language in the "Definition" section, the administrator interpreted coverage to extend only to times when an employee was acting in furtherance of business. *See id.* at *3. The Sixth Circuit, however, found that it was unreasonable to impose a "furtherance of business" requirement on the scope of coverage when such an application would force the administrator to divide up a single workday into separate leisure and business phases. *Id.* at *4. Such a partition would be impractical and run counter to the otherwise broad coverage language of the plan. *Id.*

Here, there is no indication that LICNA drew so fine a line.[11]  While Mr. Roarty

---

[11] In rather conclusory fashion, the plaintiff's Joint Reply Brief discusses *Garber* as follows:

"The Court in *Garber*, held that the policy was poorly drafted and required great interpretation, which the Defendant claimed should be a very restrictive interpretation. The Court held, 'any interpretation of the policy that requires such a fine line to be drawn is not a reasonable interpretation.' Defendant [LICNA] admits that 'Plaintiff established a second reasonable interpretation of Mr. Roarty's trip . . . .' Therefore, as held in *Garber*, any interpretation by Defendant [LICNA] was unreasonable and an abuse of discretion, and therefore, Mrs. Roarty is entitled to substantive relief."

(D.I. 78 at 8–9.) Mrs. Roarty makes no attempt to address the actual "interpretation" at issue in Garber or compare it to LICNA's interpretation in this case. Moreover, the mere fact that "Plaintiff established a second reasonable interpretation" here, does not necessarily render all other interpretations unreasonable. Neither *Garber* nor basic principles of logic require such a conclusion.

9

embarked upon a business trip to attend a client meeting, the accident did not occur until after he learned that the meeting was cancelled, remained in the area with his family for several days, and attended a wedding with them. LICNA suggests that the trip lost its "business" character upon Mr. Roarty's decision to remain in the Pittsburgh area with his vacationing family on August 4. The court finds it reasonable to conclude that this shift in purpose occurred either then or at some other point in the four days prior to the accident. (D.I. 73-8 at 11.)

Finally, Mrs. Roarty contends that the investigation conducted by LICNA was inadequate, as it consisted almost entirely of questioning Tyco employees and occurred, in part, after LICNA had already made its claim decision. (D.I. 73 at 22–23.) The court does not find this argument persuasive. The record reflects that LICNA received information from Tyco suggesting that Mr. Roarty was not on a business trip both before denying Mrs. Roarty's initial claim and before denying her appeal. (D.I. 73-2 at 29; D.I. 76-2 at 42.) Furthermore, LICNA's decision was not made unreasonable by its reliance on Tyco's reports. *See Estate of Schwing v. The Lilly Health Plan*, 562 F.3d 522, 527 (3d Cir. 2009) ("There is no requirement that an ERISA administrator faced with an issue of who is to be believed must conduct an independent investigation into the veracity of each account."); *Vega v. Nat'l Life Ins. Servs., Inc.*, 188 F.3d 287, 299 (5th Cir. 1999) (en banc) ("[W]hen confronted with a denial of benefits by a conflicted administrator, the district court may not impose a duty to reasonably investigate on the administrator.").

For the foregoing reasons, the court finds that LICNA's interpretation of the BTA Plan and the Plan's application to Mr. Roarty's accident was reasonable and not an abuse of its discretion.

C. **ERISA Fiduciary Duties**

10

The court next turns to Mrs. Roarty's breach of fiduciary duty claim against LICNA. A plaintiff raising a breach of fiduciary duty claim under ERISA must demonstrate that: "(1) the defendant was acting in a fiduciary capacity; (2) the defendant made affirmative misrepresentations or failed to adequately inform plan participants and beneficiaries; (3) the misrepresentation or inadequate disclosure was material; and (4) the plaintiff detrimentally relied on the misrepresentation or inadequate disclosure." *Shook v. Avaya, Inc.*, 625 F.3d 69, 73 (3d Cir. 2010). Here, it is clear that LICNA was operating as a fiduciary with respect to its claim determination, (D.I. 53 at Uncontested Fact ¶ 7), and Mrs. Roarty alleges several misrepresentations, (D.I. 73 at 35–38). The court, however, is not convinced that these statements were actually false or that detrimental reliance resulted from any of them.

Mrs. Roarty first argues that LICNA materially misrepresented that it would conduct a proper investigation. (*Id.* at 35.) As noted above, however, LICNA *did* conduct an investigation even if it failed to await the final Tyco confirmation before deciding the appeal. (D.I. 76-2 at 17, 21, 23–25, 42, 49–51.) The court also finds that there was no detrimental reliance here. While Mrs. Roarty emphasizes that LICNA failed to await final confirmation from Tyco before making its appeal decision, there is no indication that Tyco would have provided information any different from each of its previous communications with LICNA, all of which suggested that the accident did not occur while on business.

In support of her second contention that "[LICNA] materially misrepresented that Mr. Roarty was not on an authorized business trip," Mrs. Roarty points to the testimony of Mr. Billeter, a LICNA representative. (D.I. 73 at 36.) At trial, Mr. Billeter acknowledged that Mr. Roarty was on an authorized business trip "at the outset" of his trip. (D.I. 73-9 at 12.) Mrs. Roarty appears to argue that this statement undercuts LICNA's stated rationale for denying

11

benefits—that the accident did not occur while Mr. Roarty was on a business trip. The court cannot agree. LICNA merely concluded that Mr. Roarty was not on business *at the time of the accident* on August 8, 2004. (D.I. 76-2 at 51.) Mr. Billeter's assertion that Mr. Roarty was on business until August 4 does not make that conclusion a misrepresentation. Additionally, Mrs. Roarty does not indicate how she relied on this alleged misrepresentation to her detriment. Indeed, she *cannot*—far from relying on LICNA's assertion, Mrs. Roarty contested this point throughout the claims process and the present litigation.

Mrs. Roarty next contends that LICNA misrepresented that its denial was based on a determination that Mr. Roarty's trip was not an authorized business trip while, in fact, its decision was based on a determination that the business trip was "open-ended." (D.I. 73 at 37.) The plaintiff, however, does not point to an instance in the parties' communications where LICNA claimed that no authorized business trip had *ever* existed. Again, LICNA simply concluded that Mr. Roarty was not on an authorized business trip "at the time of his accident." (D.I. 76-2 at 51.) Mrs. Roarty argues that she relied on this supposed misrepresentation in determining what information to provide LICNA during the claims process. She again fails, however, to indicate what information she could have provided that might have affected the outcome.

Finally, Mrs. Roarty insists that LICNA misled her by suggesting that its denial was based on the fact that her husband was not reimbursed for his trip. (D.I. 73 at 37.) She claims this was a fabricated rationale that did not actually enter into LICNA's calculus. (*Id.*) While the record is unclear on this point, the court finds that no detrimental reliance could have existed in any case. Mrs. Roarty argues that "if she had known that [LICNA] was denying her claim because of . . . an expense reimbursement she could have supplied a response or documentation

12

explaining the expense reimbursement concern." (D.I. 73 at 38.) As an initial matter, it is not clear that she could have provided such evidence—the expense reimbursement issue first surfaced in the appeal denial letter, which effectively closed the claims process. Moreover, Mrs. Roarty herself represents that LICNA did not base its decision on the expense reimbursement issue. (*Id.* at 37.) As such, it is unclear how documentation of expense reimbursements or Scott Instrument's reimbursement policy would have been helpful to her case.

The court therefore holds that LICNA did not breach its fiduciary duties with respect to its assessment of Mrs. Roarty's benefits claim.

## IV. CONCLUSION

For the foregoing reasons, the court will grant judgment in favor of the defendants.

Dated: September 26, 2012            CHIEF, UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| KELLY ROARTY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Civil Action No. 06-195 GMS |
| TYCO INTERNATIONAL LTD. GROUP | ) |
| BUSINESS TRAVEL ACCIDENT | ) |
| INSURANCE PLAN, and LIFE | ) |
| INSURANCE COMPANY OF NORTH | ) |
| AMERICA, | ) |
| | ) |
| Defendants. | ) |

### ORDER

For the reasons stated in the court's Memorandum of this same date, IT IS HEREBY ORDERED that:

Judgment is entered in favor of the defendants, TYCO INTERNATIONAL LTD. GROUP BUSINESS TRAVEL ACCIDENT INSURANCE PLAN and LIFE INSURANCE COMPANY OF NORTH AMERICA, and against the plaintiff, KELLY ROARTY.

Dated: September 26, 2012

CHIEF, UNITED STATES DISTRICT JUDGE